Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Alleged Classes*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC, a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOTAL MERCHANT SERVICES, LLC., a Delaware limited liability company,<br><br>Defendant. | Case No. 3:19-cv-05711<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1.      Plaintiff Abante Rooter and Plumbing, Inc. ("Plaintiff" or "Abante") brings this Class Action Complaint against Defendant Total Merchant Services, LLC ("Total Merchant Services" or "Defendant") to stop Total Merchant Services' practice of making unsolicited calls to cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA" or "Act") and to obtain redress for all persons injured by Defendant's conduct.

Plaintiff, for its Class Action Complaint, alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorneys.

**PARTIES**

2.      Plaintiff Abante is a plumbing company headquartered in Emeryville, Alameda County, California.

3.      Defendant Total Merchant Services, LLC is a Delaware limited liability company with its principal place of business in Woodland Hills, California. Total Merchant Services is registered to do business (and does business) in California and throughout the United States.

**JURISDICTION & VENUE**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") a federal statute.

5.      The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant is registered to do business in the State of California, regularly conducts business in the State of California and in this District and has its principal place of business in this District.

6.      Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims asserted here occurred in this District.

7.      Intradistrict Assignment to this Division is proper pursuant to Civil L.R. 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiff Abante's claims occurred in Alameda County.

**COMMON ALLEGATIONS OF FACT**

**A.      <u>Total Merchant Services Engages in Unsolicited Telemarketing</u>**

8.      Total Merchant Services offers various payment technologies for businesses. *See* http://totalmerchantservices.com.

9.      Total Merchant Services "is a registered ISO/MSP of Wells Fargo Bank, N.A.",
that is, it is an Independent Selling Organization/Member Service Provider of Wells Fargo Bank.

10.     In recent years, companies like Defendant have turned to unsolicited telemarketing
as a way to increase their respective customer bases.

11.     Widespread telemarketing (among other telemarketing methods) is one of the
primary methods by which Defendant recruits new customers for its payment processing systems
and services.

12.     One of Total Merchant Services' strategies for marketing its payment services
involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

13.     On information and belief, and as has been revealed through other litigation,
Defendant's ATDS featured, at times, a "Spitfire Dialer."

14.     Defendant's ATDS had the capacity to store or produce telephone numbers using a
random or sequential number generator, to receive and store lists of phone numbers, and to dial
such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized
by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers
from a database of telephone numbers, in an automatic and systematic manner. Defendant's
autodialer disseminated information *en masse* to Plaintiff and other consumers.

15.     As explained by the Federal Communications Commission ("FCC") in its 2012
order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded
telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and
Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC
12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

16.     But here's the rub: Defendant casts its marketing net too wide. That is, in an
attempt to promote its payment processing and other businesses and increase its bottom line,
Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that

features the repeated making of unsolicited phone calls to consumers' cellular telephones without consent, all in violation of the TCPA.

17.     Put simply, in naked violation of the Act, Defendant fails to obtain any prior express written consent to make autodialed and/or pre-recorded calls to cellular telephone numbers.

18.     Defendant also fails to honor phone numbers that have been placed on the national Do Not Call registry located at https://www.donotcall.gov. That is, Defendant places multiple repeated phone calls every year to numbers that have been registered on the national DNC registry for more than 30 days.

19.     Defendant also places calls using its ATDS to phone numbers after the users of those phone numbers specifically request to no longer be called.

**B.     Plaintiff's Experience with Defendant**

20.     Starting in or around 2015, Plaintiff Abante began receiving telephone calls from Defendant marketing its payment processing services. On information and belief these calls were made using Defendant's ATDS or a pre-recorded voice.

21.     Abante *never* provided any prior express consent, written or otherwise, to receive such calls.

22.     In February 2017, Abante, through its counsel, requested that the phone calls stop.

23.     Abante provided details of the calls to Defendant's General Counsel Todd Anderson, including the phone numbers that apparently made the calls as well as the phone numbers that received the calls. This included Abante's cellphone numbers ending in 3803, 1636, and 1080.

24.     In response, in February 2017, Defendant's General Counsel, Todd Anderson, indicated that Plaintiff's "telephone numbers are on a Do Not Call list, your client's email address is not on the marketing email list, and we have reiterated to our sales partners that they must adhere to our compliance guidelines regarding telephonic and email solicitations."

CLASS ACTION COMPLAINT
-4-

25.     On July 12, 2018 Plaintiff registered its cellphone number ending in 3803 on the National Do Not Call Registry. Plaintiff's phone number ending in 1080 was registered by Plaintiff on the Do Not Call Registry on November 12, 2014. Plaintiff's phone number ending in 1636 was registered by Plaintiff on the Do Not Call Registry on July 14, 2005.

26.     Despite this, and notwithstanding Todd Anderson's representations regarding the placement of Abante's numbers on a Do Not Call list, on November 5, 2018 Plaintiff received a another call from Defendant to its cellphone number ending in 3803.

27.     On information and belief this, November 5, 2018 call was made using Defendant's ATDS (Spitfire) dialing system.

28.     On November 12, 2018 Plaintiff received another call from Defendant to his cellphone number ending in 3803 that, on information and belief, was also made using Defendant's ATDS. Plaintiff again requested on this call to no longer be called by Defendant.

29.     Despite requesting to no longer be called, on November 14, 2018 Plaintiff received another call from Defendant to its cellphone number ending in 3803 that, on information and belief, was made using Defendant's ATDS.

30.     On March 22, 2019 Defendant again called Plaintiff, this time using Plaintiff's cellphone number ending in 1636 (which Defendant's General Counsel had indicated back in February 2017 was placed on a Do Not Call list). This call was made using a pre-recorded voice message.

31.     On June 24, 2019 Defendant placed another autodialed call to Plaintiff, this time on Plaintiff's cellphone number ending in 1080. Again, this is a number that Defendant's general counsel had represented had been placed on Defendant's internal Do Not Call list.

32.     By making unauthorized calls as alleged herein, Defendant has caused Plaintiff Abante and other consumers actual harm and cognizable legal injury, including the aggravation, nuisance and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the consumers' wireless phone plans.

33.     Furthermore, the calls interfered with Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components.

34.     Defendants also caused injury to or interference with their cellphones phones by causing wear and tear on their property, consuming battery life, and, in certain instances, appropriating cellular minutes.

35.     In the present case, a consumer could be subjected to many unsolicited calls as Defendant does not honor Do Not Call requests.

36.     To redress these injuries, Plaintiff, on behalf of itself and a class of similarly situated persons, brings suit under the TCPA, 47 U.S.C. § 227 *et seq*. and its implementing regulations, 47 C.F.R. § 64.1200 et seq., which prohibit unsolicited autodialed calls to cell phones and regulates the placement of calls to persons who have registered their phone numbers on the Do Not Call list.

37.     On behalf of the Classes defined below, Plaintiff seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with pre- and post-judgment interest, costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of itself and all others similarly situated and seeks certification of the following Classes:

> **No Consent ATDS Class:** All persons in the United States who (1) received a call from Defendant, (2) on their cellular telephone, (3) from a date four years prior to the filing of the Complaint through the date notice is sent to the Class, (4) who were called using the same equipment that was used to call the Plaintiff, and (5) who provided prior express consent in the same manner as Defendant claims that Plaintiff provided prior express consent.

> **Stop Calling Subclass:** All members of the ATDS Class who asked to no longer be called but received at least one additional call from Defendant to their cellphone that was placed using the same equipment that was used to call Plaintiff Abante.

> **DNC Registry Class:** All persons in the United States who (1) from a date four

years prior to the filing of the Complaint through the date notice is sent to the Class, (2) received at least two calls from Defendant in any twelve month period, (3) on their cellphones, (4) where their cellphone numbers had been registered on the National Do Not Call list for at least thirty (30) days, (5) who Defendant claims provided consent to be called in the same manner as Defendant claims it had consent to call Abante.

39.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

40.     Plaintiff anticipates the need to amend the class definitions following discovery regarding the size and scope of the alleged classes, including Defendant's dialer and the manner by which Defendant claims it obtained prior express consent to call Abante.

41.     On information and belief, there are hundreds, if not thousands, of members of the Classes such that joinder of all members is impracticable. Class membership can be ascertained by reference to objective criteria, including Defendant's business records.

42.     There are several questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions go to the very heart of the dispute and predominate over any questions that may affect individual members of the Classes.

43.     Common questions for the Class members that may be answered in a single stroke include but are not limited to the following:

        a.      whether Defendant's conduct constitutes a violation of the TCPA;

        b.      whether Defendant utilized an automatic telephone dialing system to make the calls at issue to members of the Classes and Subclass;

        c.      whether members of the Classes are entitled to treble damages based on the

1   willfulness of Defendant's conduct;

2       d.    whether Defendant obtained prior express consent to contact any class

3               members;

4       e.    whether the calls were for telemarketing purposes;

5       f.    whether Defendant made repeated calls (within a twelve-month time span)

6               to numbers that had been registered on the National Do Not Call registry

7               for at least 30 days;

8       g.    whether any third party made calls on behalf of Defendant; and

9       h.    whether Defendant made autodialed calls to persons who asked to no

10              longer be called.

11      44.    The factual and legal bases of Defendant's liability to Plaintiff and to the other

12  members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other

13  members of the Classes, including the annoyance and aggravation associated with such calls as

14  well as the loss of data and temporary inability to enjoy and use their cellphones, as a result of the

15  transmission of the spam calls alleged herein.

16      45.    Plaintiff and the other members of the Classes have all suffered harm and damages

17  as a result of Defendant's unlawful and wrongful conduct of making such unsolicited calls.

18  Plaintiff's claims are typical of the claims of the members of the Classes as all members of the

19  Classes are similarly affected by Defendant's wrongful conduct. Plaintiff, like other members of

20  the Classes, received unsolicited spam calls from Defendant. Plaintiff is advancing the same

21  claims and legal theory on behalf of himself and all absent members of the Classes.

22      46.    Plaintiff will fairly and adequately represent and protect the interests of the other

23  members of the Classes. Plaintiff's claims are made in a representative capacity on behalf of the

24  other members of the Classes. Plaintiff has no interests antagonistic to the interests of the other

25  members of the proposed Classes and is subject to no unique defenses. Plaintiff has retained

26  counsel with substantial experience in prosecuting complex litigation and TCPA class actions.

27

28

CLASS ACTION COMPLAINT
-8-

1  Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the

2  members of the Classes and have the financial resources to do so. Neither Plaintiff nor its counsel

3  has any interest adverse to those of the other members of the Classes.

4        47.    The suit may be maintained as a class action under Federal Rule of Civil Procedure

5  23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable

6  to the Classes, thereby making appropriate final injunctive relief. As the calls continue to be made

7  in spite of Plaintiff's and the Class Members' requests to no longer be called, injunctive relief is

8  necessary and appropriate to require Defendant to discontinue making the unsolicited calls at

9  issue in this case. Likewise, Defendant has acted and fails to act on grounds generally applicable

10  to the Plaintiff and the other members of the Classes in making the autodialed calls at issue,

11  requiring the Court's imposition of uniform relief to ensure compatible standards of conduct

12  toward the members of the Classes.

13        48.    In addition, this suit may be maintained as a class action under Federal Rule of

14  Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the

15  fair and efficient adjudication of this controversy. Absent a class action, most members of the

16  Classes would find the cost of litigating their claims to be cost-prohibitive, and would  have no

17  effective remedy. The class treatment of common questions of law and fact is also superior to

18  multiple individual actions or piecemeal litigation in that it conserves the resources of the courts

19  and the litigants and promotes consistency and efficiency of adjudication. The claims asserted

20  herein are applicable to all customers throughout the United States who received unsolicited spam

21  calls from Defendant. The injury suffered by each individual class member is relatively small in

22  comparison to the burden and expense of individual prosecution of the complex and extensive

23  litigation necessitated by Defendant's conduct.

24        49.    It would be virtually impossible for members of the Classes individually to redress

25  effectively the wrongs done to them. Even if the members of the Classes could afford such

26  litigation, the court system could not. Individualized litigation presents a potential for inconsistent

27

28

1    or contradictory judgments. Individualized litigation increases the delay and expense to all

2    parties, and to the court system, presented by the complex legal and factual issues of the case. By

3    contrast, the class action device presents far fewer management difficulties, and provides the

4    benefits of single, consistent adjudication, economy of scale, and comprehensive supervision by a

5    single court.

6          50.     Adequate notice can be given to the members of the Classes directly using

7    information maintained in Defendant's records, through notice by publication, or through other

8    reasonable methods.

9          51.     In a prior class action, Total Merchant Services received a release for its autodialed

10   calls made prior to June 2018. This case deals only with calls made on or after July 1, 2018.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227, *et. seq.*)**
**(On Behalf of Plaintiff and the No Consent ATDS Class)**

13         52.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

14   herein.

15         53.     Defendant and/or its agent transmitted unsolicited calls to cellular telephone

16   numbers belonging to Plaintiff and the other members of the Class using a Spitfire Dialer or

17   similar equipment that, upon information and belief, had the capacity to store or produce

18   telephone numbers to be called, using a random or sequential number generator, and/or receive

19   and store lists of phone numbers, and to dial such numbers, *en masse*, without human

20   intervention. The telephone dialing equipment utilized by Defendant and/or its agent, which is

21   substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a

22   database of telephone numbers, in an automatic and systematic manner.

23         54.     On information and belief, for certain calls Defendant used pre-recorded voice

24   technology.

25         55.     These calls were made *en masse* without human intervention and without the prior

26   express consent of the Plaintiff and the other members of the Class to receive such calls.

56.     At no time did Defendant obtain prior express consent from the Plaintiff orally or in writing to receive autodialed or pre-recorded voice calls. At no time did Defendant obtain prior express consent that contained the required disclosures, including any disclosure that Plaintiff agreed to be called using an ATDS or pre-recorded voice informing Plaintiff or any other consumer that agreeing to receive autodialed calls was not a condition of the purchase or use of any good or service.

57.     The autodialed calls at issue with respect to Abante include the calls made on November 5, 2018, November 12, 2018, and November 14, 2018 to Abante's cellphone ending in 3803, as well as the June 24, 2019 autodialed call to Abante's cellphone number ending in 1080.

58.     The pre-recorded calls at issue in this case with respect to Abante include the March 22, 2019 call to Abante's cellphone number ending in 1636.

59.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

60.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227, *et. seq.*)**
**(On Behalf of Plaintiff and the Stop Calling Subclass)**

61.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

62.     Defendant and/or its agent made unsolicited calls to cellular telephone numbers belonging to Plaintiff and the other members of the Stop Calling Subclass using its Spitfire dialer or other equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive

and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

63.    The telephone dialing equipment utilized by Defendant and/or their agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

64.    On information and belief, at least one of the calls was also made using a pre-recorded voice.

65.    These calls were made *en masse* and without the consent of the Plaintiff and the other members of the Stop Calling Subclass to receive such calls. Indeed, consent had been revoked by everyone since they each had asked to no longer be called.

66.    The calls to Plaintiff and the Stop Calling Subclass were made without any initial consent or, at the very least, after any initial consent supposedly obtained had been expressly revoked.

67.    Any calls made using an ATDS or pre-recorded voice that were made to Plaintiff after Plaintiff asked not to be called in 2017 violate the TCPA's prohibition against making autodialed or pre-recorded voice calls without prior express consent.

68.    As a result, and based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

69.    Additionally, because the messages steadily continue despite multiple requests that Defendant stop making them, the violations are capable of repetition, even if Defendant was to temporarily place them on hold.

70.    As a result of such conduct, Plaintiff and the other members of the Stop Calling Subclass are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

71.    In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable

by Plaintiff and the other members of the Class.

72.    Defendant received the requests to stop calling and similar opt out instructions and therefore was on notice that its calls were being transmitted in violation of the TCPA.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227, *et. seq.*)**
**(On Behalf of Plaintiff and the DNC Registry Class)**

73.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

74.    47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

75.    The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *See* 47 C.F.R. § 64.1200(c).

76.    47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons

described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[1]

77.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1)     Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2)     Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3)     Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4)     Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may

---

[1] 68 Fed. Reg. 44143, 44166 (July 25, 2003).

not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5)     Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6)     Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

78.     Defendant and/or its agent made more than one unsolicited telemarketing call to Plaintiff Abante the other members of the DNC Registry Class within a 12-month period without having prior written express consent to place such calls.

79.     Each such call was directed to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

80.     Abante and the other members of the DNC Registry Class did not provide consent to receive such telemarketing calls from Defendant or its agents.

81.     Neither Defendant nor its agents have any record of consent to place such telemarketing calls to Plaintiff or the other members of the DNC Registry Class.

82.     Defendant violated 47 C.F.R. §§ 64.1200(d) and (e) by causing calls to be initiated for telemarketing purposes to wireless telephone subscribers, such as Plaintiff Abante and the members of the DNC Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a do not call policy and a list of persons who request not to receive telemarketing calls.

83.     Defendants violated 47 U.S.C. § 227(c)(5) with respect to Plaintiff and the

members of the DNC Registry Class because Plaintiff and the members of the DNC Registry

Class received more than one telephone call in a 12-month period made by or on behalf of

Defendant in violation of 47 C.F.R. § 64.1200, as described above.

84.    Additionally, on information and belief Defendant fails to have a written do not

call policy that is available on request. On further information and belief Defendant fails to train

its employees and personnel involved in telemarketing in the existence and use of its do not call

policy or do not call list. Defendant also fails to honor do not call requests for at least 5 years.

With respect to Abante, the do not call request was received and acknowledged in February 2017

yet Defendant persisted in calling Abante multiple times before February 2022.

85.    As a result of Defendant's conduct as alleged herein, Plaintiff and the members of

the DNC Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each

entitled to, *inter alia*, receive at least $500 in damages for each such violation of 47 C.F.R. §

64.1200.

86.    To the extent Defendants' misconduct is determined to have been willful and

knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory

damages recoverable by Plaintiff and the members of the DNC Registry Class.

**WHEREFORE**, Plaintiff Abante, on behalf of himself and the class, prays for the

following relief:

1.    An order certifying this case as a class action on behalf of the Classes as
      defined above; appointing Plaintiff Abante as the representative of the
      Classes and appointing its attorneys' as Class and Subclass Counsel;

2.    An award of actual and statutory damages to be paid into a common fund
      for the benefit of the Classes;

3.    An injunction requiring Defendant to cease all unsolicited calls and to
      honor requests by consumers not to be called, and otherwise protecting the
      interests of the Classes;

4.   An award of pre- and post-judgment interest, reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

5.   A declaration that Defendant's conduct violated the TCPA and that its dialing equipment constitutes an ATDS under the TCPA; and

6.   Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: September 11, 2019

ABANTE ROOTER & PLUMBING, INC. individually, and on behalf of all others similarly situated,

By: _/s/ Rebecca Davis_
One of Plaintiff's Attorneys

Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Classes*

*\*pro hac vice admission to be filed*