Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Alleged Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOTAL MERCHANT SERVICES, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 3:19-cv-05711-EMC<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**<br><br>Hon. Thomas S. Hixson |

Pursuant to the Court's Discovery Standing Order, Plaintiff Abante Rooter and Plumbing, Inc. ("Plaintiff" or "Abante") hereby provides its dispute regarding Defendant Total Merchant Services, LLC's ("Defendant" or "TMS") responses to Plaintiff's discovery requests along with TMS's response. The Parties certify that they have met and conferred through counsel regarding the dispute and no agreement can be reached. The Parties remain at issue with respect to Interrogatories Nos. 3-4, 7-8, 10-12, and 15-16. (Excerpts of Interrogatories Nos. 3, 7-8, 10-12, and 15-16 and TMS's Supplemental Responses are attached hereto as Exhibit A; Excerpts of Interrogatory No. 4 and TMS's Response are attached hereto as Exhibit B.) The Parties also remain at issue with respect to Requests for Production Nos. 3-9, 18, and 21-24. (Excerpts Requests for Production Nos. 3-9, 18, and 21 and TMS's Supplemental Responses are attached hereto as Exhibit C; Excerpts Requests for Production Nos. 22-24 and TMS's Responses are attached hereto as Exhibit D.)

I.       TMS'S SCOPE OF INQUIRY

**Plaintiff's Position:** The principal source of disagreement between the Parties relates to the scope and timeliness of TMS's search for responsive documents. It is well-settled that a defendant has a responsibility to conduct a "reasonable inquiry into the factual basis of its discovery responses[.]" *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987); *see also A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189-90 (C.D. Cal. 2006). At a bare minimum, a reasonable inquiry would require "a reasonable procedure to distribute discovery requests to all employees ***and agents of the defendant*** potentially possessing responsive information, and to account for the collection and subsequent production of the information to plaintiffs." *Nat'l Ass'n of Radiation Survivors*, 115 F.R.D. at 556 (emphasis added).

Unfortunately, TMS has decided to create a self-imposed limitation on its discovery obligations. That is, TMS argues that Plaintiff's claims are confined to only the calls placed by its agent Triumph Merchant Solutions, LLC ("Triumph")—one of the two agents of TMS that Plaintiff identified in its pre-suit investigation. For this reason, TMS informed Plaintiff that it confined its inquiry to only documents and information in the possession, custody, or control of itself and Triumph. TMS has not reach out to any of its other agents. However, nothing in Plaintiff's Complaint (or the discovery requests) limits its claims to calls placed by only TMS and Triumph. Rather, Plaintiff's claims involve all calls placed by TMS or on TMS's behalf. Moreover, there is no authority to suggest that Plaintiff's claims are limited to the confines of its own pre-suit investigation.

Here, Plaintiff's pre-suit investigation identified at least ten (10) calls that it received from TMS or an agent acting on its behalf. Through its own efforts, Plaintiff identified two agents—Triumph and Quality Merchant Services, Inc.—that placed some of the calls on behalf of TMS. However, there is no evidence to suggest these agents were the exclusive callers. Of the ten calls, Plaintiff has identified ***at least*** seven at issue calls, including the following:

- November 9, 2015 from the telephone number 858-225-4580;
- November 5, 2018 from the telephone number 631-855-0000;
- November 12, 2018 from the telephone number 631-855-0000;
- November 14, 2018 from the telephone number 631-855-0000;
- March 22, 2019 from the telephone number 630-621-4982;
- June 24, 2019 from the telephone number 858-225-4580; and
- October 8, 2019 from the telephone number 858-225-4580.

Triumph was identified as the entity that placed the calls from the telephone number 858-225-4580. Plaintiff has not identified the other two numbers that placed telemarketing calls on behalf of TMS. However, given that the area codes 631 and 630 relate to New York and Chicago respectively, it is unlikely that Triumph (a San Diego based company) is responsible for these calls. Instead, it is likely that Plaintiff received calls from separate agents of TMS. Additionally, it is also possible that TMS and/or its agents placed calls beyond those identified by Plaintiff. In short, Plaintiff's request is anything but a fishing expedition. Indeed, Plaintiff has identified multiple calls from separate telephone numbers (and different area codes) that all solicited Plaintiff to purchase TMS's products and services. Given that Plaintiff has already identified at least two agents of TMS that placed calls

to Plaintiff, the Court should order TMS to conduct an inquiry into the calls place by all of its agents.

Requested Relief: As a result of TMS's failure to conduct a reasonable inquiry, Plaintiff moves the Court for an Order compelling TMS to conduct an inquiry to discover what documents or information are in the possession of **all of its agents.** Plaintiff requests that the Court issue an Order compelling TMS to supplement its responses to Interrogatories Nos. 3-4, 7-8, 10-12, and 15-16; and Requests for Production Nos. 3-9, 18, and 21-24 following the completion of its inquiry. Each of these discovery requests asks for documents and information that may be in the possession of any TMS agent.

Finally, Plaintiff requests that the Court set a firm deadline for TMS to produce documents responsive to each of the identified discovery requests. Of course, litigants have a duty to provide discovery responses in a timely manner. *See, e.g., Koch v. The Burlington N. & Santa Fe Ry. Co.*, No. C05 1989 RSL, 2006 WL 2927665, at *2 (W.D. Wash. Oct. 12, 2006). In this case, TMS did not produce any responsive documents until June 18, 2020—*nearly five months after its original deadline to respond to Plaintiff's First Set of Discovery Requests.* Accordingly, Plaintiff requests that the Court order the production of all documents within 21 days from the date of its order.

**Defendant's Position:** As a threshold matter, Plaintiff neither alleged its telephone number(s) or the calling party's telephone number in its Complaint nor included its telephone number(s) or the calling party's telephone number in its discovery requests. Instead, Plaintiff's discovery requests simply assume TMS had knowledge of these telephone numbers. *See, e.g.*, Request for Production Nos. 5 ("…from whom You obtained Plaintiff's phone number…"), 6 ("…obtained Lead Information regarding the Plaintiff…"), 8 (same), 9 & 10 ("…Dialing Equipment [and the purpose of all calls that were made to Plaintiff]…"); Interrogatory Nos. 3 ("…Dialing Equipment You (or any Person acting on Your behalf or for Your benefit) used to place the calls at issue…"), 4 (same). Plaintiff is incorrect in its speculation. Indeed, it was not until April 23, 2020, that Plaintiff, after engaging in conferral efforts with TMS concerning Plaintiff's deficient responses to TMS's first set of discovery, supplemented its discovery responses and identified the purported telephone numbers that allegedly placed the telephone calls at issue. Once TMS received these telephone numbers following its conferral efforts, TMS investigated its records to determine if it or any third-parties were associated with such numbers. That investigation revealed: (1) the telephone numbers provided by Plaintiff are not used by and do not belong to TMS; and (2) the telephone numbers are not reflected in TMS's records as being used by or belonging to any third parties with whom TMS maintained a business relationship—approximately 2,000 such third-parties during the relevant time period and over 43,000 third-parties since TMS's inception. Accordingly and **based on the information provided by Plaintiff's counsel that identified Triumph as the party who placed the calls at issue**, *see, e.g.,* Plaintiff's Rule 26(a)(1) Initial Disclosures (identifying employees and agents of Triumph as the persons with knowledge); Plaintiff's written discovery correspondence dated February 20, 2020 (identifying Triumph as one of two parties responsible for the calls at issue[1] and acknowledging "Plaintiff has produced

---

[1] The other party being Quality Merchant Services, Inc. with whom TMS did not and does not maintain a relationship during the relevant time period alleged in the Complaint.

2

documents demonstrating that Triumph placed calls to Plaintiff on behalf of TMS"); Plaintiff's production "Abante000418" through "Abante000454" (email communications between Plaintiff and Triumph concerning the calls at issue); Plaintiff's Subpoenas to Produce Documents and to Testify at Deposition dated February 4, 2020 and issued to Triumph (seeking documents and testimony concerning Triumph's calling activity *before* TMS even responded to discovery), TMS inquired with the purported calling party, Triumph, in an attempt to obtain information and documents to assist TMS in responding to the propounded discovery. Triumph did not respond, TMS advised Plaintiff of such, and provided information and documents within its possession concerning its relationship with Triumph. TMS adhered to its discovery obligations.

Plaintiff now seeks to argue that TMS somehow shirked its discovery obligations in conducting an internal investigation of its records in an attempt to identify which, if any, third-party may be associated with the telephone numbers identified by Plaintiff in its April 23, 2020 supplemental discovery responses. In so doing, Plaintiff seeks to expand discovery well beyond the needs of this case to include an investigation into every single third-party with which TMS maintained a relationship in an attempt to determine: (1) which third-party, if any, may be associated with the telephone numbers identified by Plaintiff; and (2) which third-party, if any, may have placed a telephone call to any of Plaintiff's multiple telephone numbers despite Plaintiff being unaware of any such telephone calls. This is unduly burdensome.[2] TMS maintained relationships with approximately 2,000 third-parties during the relevant time period and over 40,000 third-parties since TMS's inception.[3] Any of these third-parties theoretically could be associated with the telephone numbers identified in Plaintiff's supplemental discovery responses. Thus, in addition to TMS having already investigated its own records, Plaintiff seeks to require TMS to investigate each of the approximate 2,000 third-parties during the relevant time period, if not all of the 40,000+ third-parties since TMS's inception, to first determine if any such third-parties are associated with the telephone numbers identified in Plaintiff's supplemental discovery responses and to then venture to determine if such third-parties engaged in calling activity to Plaintiff (who maintains, at a minimum, five different telephone numbers to receive calls). Further, Plaintiff expects TMS to conduct such an investigation before TMS could even attempt to endeavor to obtain information requested by Plaintiff's propounded discovery. TMS should not be so burdened to conduct such an investigation into the theoretically-possible calling activity of, at least, approximately 2,000 third-

---

[2] TMS objected to Plaintiff's overly broad and unduly burdensome definition of "TMS" and "You" contained in its discovery requests and further advised "TMS will only respond with information concerning Total Merchant Services, LLC (*i.e.,* not concerning TMS's 'present or former directors, managers, employees, **agents**, corporate parents, subsidiaries, divisions, subdivisions, **affiliates**, predecessors, successors, or joint ventures or **anyone acting on behalf of any of them**.')." (Emphasis added).

[3] Pursuant to this Court's Discovery Standing Order, TMS is not filing an affidavit in support of the unduly burdensome nature of Plaintiff's discovery requests at this time but is prepared to supplement the record with such an affidavit should the Court so request. *See* Discovery Standing Order for Magistrate Judge Thomas S. Hixson, Meet and Confer Requirements at ¶ 2 ("The joint letter shall not be accompanied by exhibits or affidavits other than relevant excepts of discovery requests and responses, privilege logs, deposition testimony, and meet and confer correspondence.").

parties. Instead, Plaintiff should conduct a modicum of diligence, including, but not limited to, issuing subpoenas to certain telephone service providers in an attempt to identify the subscribers of the telephone numbers identified in Plaintiff's April 23, 2020 supplemental discovery responses.

At bottom, the class Plaintiff seeks to certify is, by its express terms, limited to the alleged calling activity of Triumph—the only alleged calling party identified through the parties' respective investigations. *See* Complaint, ¶¶ 38 ("…using the same equipment that was used to call the Plaintiff…and who provided consent to be called in the same manner…") and 40 ("need to amend the class definitions" to reflect the dialer and manner of consent). Similarly, the discovery propounded by Plaintiff is, by its own language, limited to the calling activity of Triumph—and rightfully so. *See, e.g.,* Requests for Production Nos. 3-4 ("…for the same purposes Plaintiff was called, using the same Dialing Equipment that was used to call the Plaintiff…"), 7-8 (same); Interrogatory Nos. 7 ("…using the same Dialing Equipment that was used to call Plaintiff, for the same purposes Plaintiff was called…"), 8-9 (same). As is Plaintiff's entire Second Set of Discovery propounded on TMS. *See* Second Set of Interrogatories; *see also* Second Set of Request for Production. This all makes sense as Plaintiff purports to be aware of the identity of the calling party—Triumph—but now seeks to expand its discovery beyond the purported facts at issue in an attempt to overly burden TMS and, perhaps, to seek new claims for this prolific TCPA Plaintiff. This is the definition of a fishing expedition that should not be permitted. *See Mora v. Zeta Interactive Corp.*, No. 1:16-cv-00198-DAD-SAB, 2017 WL 1187710 (E.D. Cal. Feb. 10. 2017) ("Plaintiff's requested discovery for all of the call logs of Defendant is a fishing expedition. Courts do not have to allow discovery whose purpose is a 'fishing expedition.'"); *see also Sirazi v. Panda Express, Inc.*, No. 08C2345, 2009 WL 4232693, at *3 (N.D. Ill. Nov. 24, 2009) ("without some reason to conclude that the pond might be stocked, one cannot demand to 'fish'"). Particularly where, as here, such information is not relevant to these proceedings. *See, e.g., Mora*, 2017 WL 1187710, at * 5; *Mey v. Enterprise Financial Grp.*, No. 2:15-cv-463-FtM-99MRM, 2016 WL 9110357 (M.D. Fla. July 27, 2016).

Respectfully submitted,

Dated: July 10, 2020           /s/ *Taylor T. Smith*

Steven L. Woodrow (*admitted pro hac vice*)
swoodrow@woodrowpeluso.com
Patrick H. Peluso (*admitted pro hac vice*)
ppeluso@woodrowpeluso.com
Taylor T. Smith (*admitted pro hac vice*)
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: 720-907-7628

*Attorneys for Plaintiff and the Classes*

Dated: July 10, 2020                    /s/ Lawren A. Zann

Beth-Ann Krimsky (*pro hac vice admission*)
beth-ann.krimsky@gmlaw.com
Lawren A. Zann (*pro hac vice admission*)
lawren.zann@gmlaw.com
Greenspoon Marder, LLP
200 East Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954.527.2427
Facsimile: 954.333.4027

*Attorneys for Defendant*

### SIGNATURE CERTIFICATION

Pursuant to Civil L.R. 5-1(i)(3) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to counsel for Defendant and that I have obtained authorization to affix his or her electronic signature to this document.

By: /s/ Taylor T. Smith
Taylor T. Smith

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was served upon counsel of record by filing such papers via the Court's ECF system on July 10, 2020.

<u>/s/ Taylor T. Smith</u>