GREENSPOON MARDER LLP
BETH-ANN KRIMSKY (*pro hac vice admission*)
beth-ann.krimsky@gmlaw.com
LAWREN A. ZANN (*pro hac vice admission*)
lawren.zann@gmlaw.com
200 East Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954.527.2427
Facsimile: 954.333.4027

NOSSAMAN LLP
JAMES H. VORHIS (SBN 245034)
jvorhis@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:   415.398.3600
Facsimile:   415.398.2438

Attorneys for Defendant TOTAL MERCHANT SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC, a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOTAL MERCHANT SERVICES, LLC., a Delaware limited liability company,<br><br>Defendant. | Case No:  3:19-cv-05711-EMC<br><br>**NOTICE OF MOTION AND MOTION TO STAY PENDING THE SUPREME COURT'S DECISION IN *FACEBOOK, INC. V. DUGUID*, CASE NO. 19-511 EXPECTED THIS TERM**<br><br>Date: December 3, 2020<br>Time: 1:30 p.m.<br>Dept: Courtroom 5, 17th Floor<br><br>Date Action Filed: September 11, 2019 |

## NOTICE OF MOTION AND MOTION TO STAY

PLEASE TAKE NOTICE that on December 3, 2020 at 1:30 p.m., or at such other date selected by the Court as soon as the matter may be heard, before the Honorable Edward M. Chen, United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, 17th Floor, Courtroom 5, Defendant, Total Merchant Services, LLC ("TMS"), shall and hereby does move to stay this action pending the United States Supreme Court's anticipated decision in *Facebook, Inc. v. Duguid*, Case No. 19-511 ("*Duguid II*"), which will directly impact this litigation by potentially resolving the claims of both Plaintiff and the putative class by addressing a circuit court split regarding the definition of the term "Automatic Telephone Dialing System" ("ATDS") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") central to this action.[1]

The Supreme Court's ruling in *Duguid II* and expected interpretation of the definition of an ATDS, central to this litigation, is likely to simplify the issues before this Court, narrow any further discovery in this action, and provide much needed clarity to the parties, as well as this Court, concerning a necessary element of Plaintiff's purported TCPA claim (*i.e.*, whether the alleged calls were placed via an ATDS as alleged by Plaintiff). For these reasons, continued litigation in this action during the pendency of the Supreme Court's decision in *Duguid II* would be an unnecessary waste of judicial and party resources.

The balance of hardships likewise weighs in favor of a stay. A stay will benefit both parties by limiting expensive and time-consuming class action discovery and motion practice, which could be futile if the Supreme Court reverses the Ninth Circuit in *Duguid II*. TMS should not be required to litigate issues that may be dismissed or significantly streamlined within the next year. In contrast, minimal damage would result to Plaintiff or the putative class from the granting of a stay.

This Motion is made pursuant to the Federal Rules of Civil Procedure and the Court's

---

[1] Generally, the Ninth, Second, and Sixth Circuit have adopted a more expansive definition of the term ATDS whereas the Third, Seventh, and Eleventh Circuits have adopted a more narrow definition of such term. *See* Section II(C), *infra*.

inherent power to control its own docket. This Motion is supported by this notice of motion and motion, the memorandum of points and authorities submitted herewith, the pleadings, records and files in this action, and such other written or oral argument as may be presented at or before the time this Motion is taken under submission by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

As this Court recently did in *Aleisa v. Square, Inc.*, No. 20-cv-00806-EMC, 2020 WL 5993226 (N.D. Cal. Oct. 9, 2020) (Chen, J.), this Court should stay this TCPA action pending the Supreme Court's decision in *Duguid II*, which is expected to ultimately define the term ATDS. To prevail on its asserted claims (both individually and on behalf of the putative class), Plaintiff must prove the alleged calls at issue were made using an ATDS without prior express consent. Proving that TMS used an ATDS to call Plaintiff and the putative class is an essential element of the claims asserted by Plaintiff. While TMS denies the use of an ATDS, the definition of the term ATDS is far from settled as a result of district courts and circuit courts across the country adopting varying definitions.

As a result of the circuit court split, on July 9, 2020, the Supreme Court granted a writ of certiorari limited to the following question arising from the Ninth Circuit's decision in *Duguid v. Facebook Inc.*, 923 F.3d 1146 (9th Cir. 2019): "**Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator**." *See Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252, at *1 (U.S. July 9, 2020) (emphasis added). This issue is central to the applicability of the TCPA to the alleged calls made by a non-party that Plaintiff seeks to hold TMS responsible for in this case. The Supreme Court is anticipated to issue its decision before the end of its next term (*i.e.*, by the spring or early summer of 2021).

Under its inherent power, this Court should stay this action pending a decision in *Duguid II*. First, discovery is still ongoing in this action and a trial date has not been set. Second, a stay will not only simplify the issues and narrow further discovery, but also potentially dispose of— or at least define—a necessary element of Plaintiff's purported claims. Third, a stay will not

1  cause any significant prejudice to Plaintiff, who seeks potential statutory damages that are not
2  ongoing, as a decision in *Duguid II* is expected in the current Supreme Court term and no later
3  than the first half of 2021. Fourth, the balance of hardships and equities favors a stay. Indeed, a
4  stay of this action will conserve the resources of this Court and the parties, and avoid the risk of a
5  ruling by this Court on the meaning of an ATDS that may not be amenable to a later ruling in
6  *Duguid II*. Accordingly, the Court should stay this action pending the Supreme Court's decision
7  in *Duguid II*.

## DISCUSSION

## I. LEGAL STANDARD

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–255 (1936)). This discretion "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. Deciding whether to stay proceedings involves balancing the interests of the parties and the Court. *Id.* at 254–55; *see also United States v. Garcia-Gomez*, No. 14-cr-00120-EMC-5, 2019 WL 331279, at *1 (N.D. Cal. Jan 25, 2019) (Chen, J.) (As "the Supreme Court explained in [*Landis*], a district court possesses the inherent power to control its docket and promote efficient use of judicial resources by staying proceedings."). "To determine whether a *Landis* stay should be implemented, courts consider: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* (internal quotations omitted). "The proponent of a stay bears the burden of establishing its need." *Clinton*, 520 U.S. at 708 (citation omitted).

## II. THE CIRCUIT COURT SPLIT REGARDING THE TCPA'S STATUTORY DEFINITION OF AN ATDS

As alleged in this action, "[t]he three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) **using an automatic telephone dialing system**; (3)

without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012) (emphasis added). An ATDS, in turn, is statutorily defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

### A. The FCC's Interpretation of an ATDS

In July 2015, the FCC issued a declaratory ruling that defined an ATDS in an overly expansive manner. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (July 10, 2015) ("2015 Order"). There, the FCC ruled that an ATDS included any equipment with the **potential capacity** to generate random or sequential telephone numbers—"even if it is not presently used for that purpose, including when the caller is calling a set list of consumers." *Id.* at 7971-72, ¶ 10. "Capacity" was thus broadly defined to include present and "potential functionalities." *Id.* at 7974, ¶¶ 15–16.

### B. The D.C. Circuit Set Aside the 2015 Order's Interpretation of an ATDS

The 2015 Order is no longer good law with respect to the FCC's interpretation of an ATDS. Indeed, on March 16, 2018, the D.C. Circuit issued an opinion setting aside the 2015 Order's definition of an ATDS finding the FCC's exceedingly broad interpretation of the term "capacity" to be "utterly unreasonable." *See ACA Int'l v. FCC*, 885 F.3d 687, 696 (D.C. Cir. 2018). Particularly as the "Commission's approach" rendered every smartphone an "autodialer." *Id.* at 697; *accord id.* at 698 (declaring it "untenable to construe the term 'capacity' in the statutory definition of an ATDS in a manner that brings within the definition's hold the most ubiquitous type of phone equipment known, used countless times each day for routine communications by the vast majority of people in the country").

The 2015 Order was further found to have fallen "short of reasoned decisionmaking" as a result of the FCC "espous[ing]…competing interpretations in the same order" concerning the FCC's interpretation of the "random or sequential number generator" requirement of the TCPA. *Id.* at 701-702 (citation omitted). In addressing the "basic question raised by the statutory definition" as to "whether a device must **itself** have the ability to generate random or sequential

telephone numbers to be dialed" or if it is "enough if the device can call from a database of telephone numbers generated elsewhere[,]" the D.C. Circuit concluded that the FCC impermissibly "appears to be of two minds on the issue." *Id.* (emphasis in original).

On the one hand, "the [2015 Order] conveys that equipment needs to have the **ability to generate random or sequential numbers that it can then dial**" in order meet the TCPA's definition of an ATDS. *Id.* at 701-02; *accord id.* (citing 2015 Order, 30 FCC Rcd. at 7972-7974, ¶¶ 10, 15) (the 2015 Order "treats the ability to 'dial random or sequential numbers' as the ability to **generate** and then dial 'random or sequential numbers.'" (emphasis in original)). This is consistent with earlier FCC declaratory rulings. *See Id.* at 702 (noting that in such prior rulings, the FCC "saw a difference between calling from a list of numbers, on the one hand, and 'creating and dialing' a random or arbitrary list of numbers, on the other hand."); *accord id.* (citing 2015 Order, 30 FCC Rcd. at 8077) (Comm'r Pai, dissenting) ("Or as the Commission has elsewhere said, numbers that are 'randomly or sequentially generated' differ from numbers that 'come from a calling list.'"). On the other hand, the 2015 Order "also suggests a competing view: that equipment can meet the statutory definition even if it lacks that capacity." *Id.*

As a result of the foregoing, the Court in *ACA Int'l* set aside the FCC's interpretation of an ATDS in its entirety. *Id.* at 703.

**C.    Post-*ACA Int'l* Circuit Courts Are Split on Their Interpretations of an ATDS**

Post-*ACA Int'l*, the Third, Seventh, and Eleventh Circuits issued narrow interpretations of the definition of an ATDS. Specifically, these circuit courts recognized that "to be an auto-dialer, the equipment must (1) store telephone numbers using a random or sequential number generator and dial them or (2) produce such numbers using a random or sequential number generator and dial them." *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020); *see also Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 460 (7th Cir. 2020) (equipment that dials numbers from a customer database does not qualify as an ATDS because the numbers are not "generated using a random or sequential number generator"); *Dominguez on Behalf of Himself v. Yahoo, Inc.,* 894 F.3d 116, 121 (3d Cir. 2018) (finding the functionality of an ATDS to be "randomly or sequentially generating telephone numbers, and dialing those numbers"). The

Ninth, Second, and Sixth Circuits disagree. *See Allan v. Penn. Higher Educ Assistance Agency*, 968 F.3d 567, 578–79 (6th Cir. 2020) (holding that an ATDS is an equipment that can automatically dial stored telephone numbers even if it does not store those numbers using an automated or sequential number generator); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 (2d Cir. 2020) (finding that a device that automatically dials from a stored list of phone numbers to be an ATDS); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043, 1053 (9th Cir. 2018) (same).

Here, Plaintiff alleges that "[o]ne of [TMS'] strategies for marketing its payment services involves the use of an automatic telephone dialing system ("ATDS") to solicit business." Complaint, ¶ 12; *accord id.*, ¶ 13 ("Defendant's ATDS featured, at times, a 'Spitfire Dialer.'"); ¶ 19 ("Defendant also places calls using its ATDS . . .'); ¶ 20 ("these calls were made using Defendant's ATDS . . ."), and ¶¶ 27–29. Specifically, Plaintiff alleges "[t]he telephone dialing equipment utilized by Defendant, also known as a predictive dialer, **dialed numbers from a list, or dialed numbers from a database of telephone numbers**…." *Id.*, ¶ 14 (emphasis added). Plaintiff seeks to assert its claims on behalf of a nationwide putative class who Plaintiff alleges received calls via an ATDS. *Id*, ¶ 38. The Supreme Court's decision in *Duguid II* should provide a necessary, uniform definition of an ATDS that directly addresses Plaintiff's allegation that TMS is liable for using a "predictive dialer" to "dial[] numbers from a list or…a database of telephone numbers"[2]—numbers that are neither randomly nor sequentially generated. This, in turn, will dispose of—or at least define—a necessary element of Plaintiff's purported claims. Indeed, whether an ATDS was used to place the alleged calls will depend on how the Supreme Court defines this term.

---

[2] Plaintiff concedes its number was purportedly contained on a list of numbers obtained from "InfoFree." *See* Plaintiff's Motion for Extension of All Remaining Discovery Deadlines (Dkt. No. 57) at ¶ 12.

### III.     THIS ACTION SHOULD BE STAYED PURSUANT TO THE COURT'S INHERENT POWER

#### A.     A Stay Will Simplify and May Eliminate the Issues in This Case

"The exercise of discretion [to stay a case] is appropriate when the resolution of another matter will have a direct impact on the issues before the court, substantially simplifying issues presented." *In re Sequenom, Inc. Stockholder Litig.*, No. 16-cv-02054-JAH-BLM, 2019 WL 1200091, at *1 (S.D. Cal. Mar. 13, 2019). "Efficiency and simplification resulting from the abatement of a federal action may weigh in favor of a stay." *Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, No. 5:13-cv-05430 EJD, 2014 WL 2759571, at *3 (N.D. Cal. June 17, 2014); *see also, e.g.*, *Garcia-Gomez*, 2019 WL 331279, at *2 (finding the third *Landis* factor favored a stay where there was a circuit split on whether the terms in a statute were unconstitutionally vague and noting that the issues "will likely be simplified" by decisions from the Supreme Court and the Ninth Circuit).

District courts across the country have stayed TCPA cases pending the Supreme Court's decision in *Duiguid II. See*, *e.g.*, *Sealey v. Chase Bank (U.S.A.), N.A.*, No. 19-cv-07710-JST, 2020 WL 5814108 (N.D. Cal. Sept. 29, 2020); *Creasy v. Charter Comm's, Inc.*, No. 2020 WL 5761117 (E.D. La. Sept. 28, 2020); *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2020 WL 5249263 (D. Ariz. Sept. 3, 2020); *Veyta v. Portfolio Recovery Assoc., LLC*, No. 20-CV-0341-GPC-MSB, 2020 WL 5257881 (S.D. Cal. September 3, 2020); *Seefeldt v. Entm't Consulting Int'l, LLC*, No. 4:19-cv-00188-MTS, 2020 WL 4922371 (E.D. Mo. Aug. 21, 2020);  *Jensen v. Roto-Rooter Servs. Co.*, No. 2:20-cv-00223-JCC, Dkt. No. 27 (W.D. Wash. Aug. 20, 2020); *Wright v. eXp Realty, LLC*, 6:18-cv-1851-ORL-40EJK, Dkt. No. 108 (M.D. Fla. Aug. 12, 2020);  *Hoagland v. Axos Bank*, No. 19-cv-00750-BAS-DEB, 2020 WL 5223547 (S.D. Cal. July 27, 2020); *In re Portfolio Recovery Assoc., LLC, Telephone Consumer Protection Act Litigation*, No. 11md02295 JAH-BGS, 2020 WL 5223545 (S.D. Cal. July 27, 2020). As has this Court. *See Aleisa*, 2020 WL 5993226. Similarly, district courts across the country have repeatedly stayed TCPA cases pending controlling decisions concerning the meaning of the term ATDS. *See, e.g.*, *Lyngklip v. Icapital.Cash*, No. 17-12366, 2017 WL 6539054 (E.D. Mich. Dec.

1  21, 2017) (granting stay of TCPA claims pending decision by D.C. Circuit in *ACA Int'l* on the
2  meaning of an ATDS); *Cunningham v. Homeside Financial, LLC*, No. MJG-17-2088, 2017 WL
3  5970719 (D. Md. Dec. 1, 2017) (same); *Salehi v. Bluestem Brands, Inc.*, NO. 16cv0924 DMS
4  (BGS), 2016 WL 10459422 (S.D. Cal. Aug. 9, 2016) (same); *Ambrezewicz v. LeadPoint, Inc.*,
5  No. EDCV 16-2331 JGB (KKx), 2017 WL 8185862, at *4 (C.D. Cal. May 8, 2017) (same, and
6  ruling that "granting a stay would clarify the law to conserve judicial resources and avoid
7  duplicative proceedings."); *Small v. GE Capital, Inc.*, No. EDCV 15-2479 JGB (DTBx), 2016
8  WL 4502460 (C.D. Cal. June 9, 2016) (same). And district courts throughout the country have
9  previously stayed proceedings pending decisions from the Supreme Court that "directly impact
10 the course of [the] litigation." *Ralph v. Haj, Inc.*, No. 17CV1332 JM(JMA), 2017 WL 5248251,
11 at *3 (S.D. Cal. Nov. 13, 2017); *see also Whittaker v. All Reverse Mortgage Inc.*, No. CV-20-
12 08016-PCT-DLR, 2020 WL 2829785, at *1 (D. Ariz. May 29, 2020) (staying proceedings of
13 class action arising under the TCPA pending the resolution of *Barr v. AAPC*, No. 19-631, where
14 the Supreme Court's decision "might dispose of the lawsuit, narrow Plaintiff's class, or at least
15 provide relevant guidance to the Court"); *Seefeldt v. Entm't Consulting Int'l, LLC.*, 4:19-CV-
16 00188, 2020 WL 905844, at *3 (E.D. Mo. Feb. 25, 2020) ("it seems the best approach is to wait
17 for much-needed clarity from the Supreme Court"); *Wright v. eXp Realty, LLC*, 6:18-cv-1851-
18 ORL-40EJK, 2020 WL 1149906, at *1 (M.D. Fla. Feb. 7, 2020) (granting motion to stay and
19 holding "any proceedings before the Supreme Court issues guidance in the upcoming *Barr v. Am.*
20 *Ass'n* will be—among other things—a waste of judicial resources and a waste of the parties' time
21 and energy").
22     The Supreme Court's anticipated ruling on the meaning of an ATDS will provide much
23 needed clarification in this litigation by resolving the post-*ACA Int'l* circuit court split
24 concerning the definition of an ATDS. In so doing, it will directly impact the adjudication of this
25 action and will narrow the issues and provide controlling authority for this Court to apply should
26 the case proceed further. It would not be efficient to commit this Court's resources to complex,
27 high-stakes class proceedings, when the Supreme Court's decision on the definition of ATDS
28 could materially shed light on key elements of Plaintiff's claims, or the lack thereof.

Accordingly, a brief stay will simplify the issues in this case, and this factor weighs in favor of a continued stay of this action.

### B. A Continued Stay Will Not Pose Any Significant Risk to Plaintiff

A continued stay will not cause any significant risk or prejudice to Plaintiff. The Supreme Court already granted review of the statutory question in *Duguid II*. As a result, the case would likely be heard and decided by the Supreme Court in this term which will conclude in the first half of 2021. Thus, a stay here will be brief. *See Larson v. Trans Union, LLC*, 2015 WL 3945052, at *8 (N.D. Cal. June 26, 2015) (finding a stay warranted where "[t]he Supreme Court [was] likely to issue a decision in the [relevant] case within one year"). Moreover, "a party seeking to avoid a stay must establish undue prejudice separate from the potential for delay" as the "[p]otential for delay does not, by itself, establish *undue* prejudice." *Teva Pharmaceuticals Int'l GmbH v. Eli Lilly and Co.*, No. 18-cv-12029-ADB, 2019 WL 1767394, at *7 (D. Mass. Apr. 22, 2019). No prejudice exists here as this is not a case in which Plaintiff has suggested any need for **immediate** relief, or that any serious harm would arise from a continued stay. Any delay in receiving a monetary penalty is an insufficient ground to deny a stay. *See*, *e.g.*, *Nguyen v. Marketsource, Inc.*, 17-CV-02063-AJB-JLB, 2018 WL 2182633, at *6 (S.D. Cal. May 11, 2018) (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (holding that monetary recovery cannot serve as a foundation for the denial of a stay)); *see also Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, No. A-13-CA-1025-SS, 2015 WL 3773017, at *3 (W.O. Tex. June 16, 2015) ("mere delay in collecting damages does not constitute undue prejudice."). This is especially true where, as here, Plaintiff has not suffered any actual monetary loss or injury, and is seeking only statutory penalties. *See* Complaint, ¶¶ 59-60, 70-71, 85-86. Accordingly, Plaintiff will not be prejudiced and this factor also weighs in favor of a continued stay of this action.

Moreover, since the inception of this lawsuit TMS has already produced to Plaintiff all relevant documents in its possession and has put in place various document preservation policies that have and will continue to preserve documents and information while this action is stayed. *See Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, No. 5:13-CV-05430 EJD, 2014 WL 2759571, at *5 (N.D. Cal. June 17, 2014) ("This nebulous contention [regarding the risk of lost

- 9 -                                                                                           Case No. 3:19-cv-05711-EMC
MOTION TO STAY PENDING THE SUPREME COURT'S DECISION IN FACEBOOK, INC. V. DUGUID
57705115.v2

evidence] is entirely unsupported, however; just *what* evidence is at risk and *how* it could possibly be lost or destroyed is a mystery" (emphasis in original)). Furthermore, Plaintiff has already served subpoenas on, and received evidence from, the entities it believes placed the calls at issue in this litigation thereby triggering such entities' preservation responsibilities. Accordingly, Plaintiff will not be prejudiced as a result of any hypothetical loss of evidence.

      **C.**    **The Balance of Hardships Weigh in Favor of a Stay As a Stay Is in the Best Interest of Both Parties**

Particularly in this case when mediation has just concluded, the Court and the parties should not be forced to expend additional resources and incur expenses when the Supreme Court will soon be deciding issues that directly impact any merits determination in this case (*i.e.,* the definition of an ATDS). *See, e.g., Aleisa*, 2020 WL 5993226, at *8 (granting motion to stay pending the Supreme Court's decision in *Duguid II* and finding "the parties and the Court would have to engage in costly and time-consuming class action discovery and ongoing litigation, which could be wasted if the Supreme Court reverses the Ninth Circuit in *Duguid II*").

Going forward with this case now would require extensive discovery efforts[3] and motion practice thereby incurring significant attorneys' fees and costs and judicial resources. Indeed, the parties and the Court would all face the risk of dedicating substantial resources to proceedings that may ultimately prove unnecessary. *Tuan Vo v. LoanMe, Inc*., No. SACV 17-00072 AG (DFMx), 2017 WL 8230897, at *2 (C.D. Cal. July 24, 2017) ("The Supreme Court's resolution of the circuit split over the issue here may end up conserving resources for both the Court and the parties."). TMS should not be required to continue to defend a large putative class action and incur the enormous costs associated therewith when the action may be rendered moot, or significantly streamlined and narrowed, within less than a year. As explained above, if the Supreme Court agrees with the majority of the circuit courts (and the United States government) and resolves the ATDS definitional issue in a narrow manner, this case may quickly come to an end (or at a minimum, the issues would be significantly streamlined), Accordingly, the balance

---

[3] *See* Joint Case Management Statement at Discovery Status, Plaintiff's Statement (Dkt. No. 60).

1  of hardships and considerations of judicial economy favor an immediate but brief stay.

2  **CONCLUSION**

3  **WHEREFORE,** Defendant, Total Merchant Services, LLC, respectfully requests that this Court exercise its discretion and enter an Order staying this action pending the Supreme Court's decision in *Duguid II*, which will allow the parties and the Court to conserve their resources, together with such further and other relief in favor of TMS as this Court deems just and proper.

Date:  October 15, 2020

GREENSPOON MARDER LLP
BETH-ANN KRIMSKY (pro hac vice admission)
LAWREN A. ZANN (pro hac vice admission)

NOSSAMAN LLP
JAMES H. VORHIS

By: /s/ James H. Vorhis
       James H. Vorhis

Attorneys for Defendant TOTAL MERCHANT SERVICES, INC.