Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Alleged Classes*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOTAL MERCHANT SERVICES, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 3:19-cv-05711-EMC<br><br>**RESPONSE IN OPPOSITION TO MOTION TO STAY (DKT. 64)**<br><br>Hearing: December 3, 2020<br>Time: 1:30 p.m.<br>Judge: Hon. Edward M. Chen<br>Location: Courtroom 5, 17th Floor<br>Complaint Filed: September 11, 2019 |

## I.  INTRODUCTION

Discovery has revealed that Defendant Total Merchant Services, LLC ("Defendant" or "TMS") had its telemarketers place tens of thousands of unsolicited calls to consumer cell phones without prior express written consent—violating the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") in the process. Yet rather than accept responsibility for its actions, let alone take steps to curb its unlawful practices, TMS asks the Court to stay this matter while the Supreme Court considers the case of *Facebook Inc. v. Duguid*, No. 19-511 (U.S. July 9, 2020), which will potentially address whether a computerized dialing system must also use a random number generator to be considered an ATDS under the statute.

The Court should deny TMS's motion. TMS's assessment of the *Duguid* decision is flawed. To hear Defendant tell it, a decision in *Duguid* favorable to TMS "may eliminate the issues in this case". (Mot. to Stay, dkt. 40, at 7.) Such a doomsday prediction overlooks the fact that, regardless of any hypothetical change that the Supreme Court may make to the definition of an ATDS, the true nature of the dialing equipment must be proven through discovery. Rather than sit idly by for months and months while evidence becomes more distant and difficult to obtain, the parties should proceed with the discovery (and related proceedings) that will be required regardless of the *Duguid* decision.

Additionally, the *Landis* factors for granting a stay do not favor TMS's request. Plaintiff and the Class members face a real risk of harm if discovery is stayed pending a decision in *Duguid*, while TMS's supposed hardship depends on the Supreme Court disposing of Plaintiff's claim—which is highly unlikely to happen. Judicial economy will not be served by postponing discovery and forcing this matter to languish on the Court's docket.

As such, and as explained further below, Defendant's Motion to Stay should be denied in its entirety.

## II.  ARGUMENT

TMS's request that the Court stay this case pending the Supreme Court's review of *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) should be denied. Although the Supreme Court's ruling could theoretically change the definition of an ATDS, it will not affect the foundation of Plaintiff's claim: no matter what is decided, this case will require discovery regarding the dialing technology used by TMS's agents, and TMS cannot credibly seek to further delay that discovery. Likewise, a stay is unsupported by the *Landis* factors—an indefinite delay of inevitable discovery does not further the interests of judicial economy and instead would prejudice Plaintiff's ability to obtain necessary evidence. As a result, TMS's request to stay should be rejected, and the Court should permit this matter to proceed to discovery.

    **A.**    **A stay is unwarranted because discovery is needed regarding the dialer that was used in any case.**

At issue in *Duguid* is the definition of an ATDS. There, the Ninth Circuit rejected the argument that an ATDS must use a random or sequential number generator to serve as an ATDS. *Duguid*, 926 F.3d at 1149–51. On July 9, 2020, the Supreme Court granted certiorari for review of the following issue:

> Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'

*See* Petitioner's Brief in *Facebook, Inc. v. Duguid, et al.*, Case No. 19-511, 2019 WL 5390116, at *ii (S. Ct. Oct. 17, 2019). Hence, the Supreme Court will consider whether a dialer that does not use a "random or sequential number generator" may be considered an ATDS.

While a decision in either direction could certainly impact TCPA litigation and the legal definition of an autodialer, it will not dispose of Plaintiff's claims or the requirement to demonstrate the use of an ATDS. That is, <u>regardless</u> of the ruling in *Duguid*, Plaintiff must, through discovery, obtain evidence of the dialer that was actually used to place the calls at issue in this case—such evidence is in the possession of third parties, and it will be required no matter what the Supreme Court decides in order to evaluate whether the technology and functionality meet whatever ultimate definition may be adopted. Consequently, there is little reason to stay discovery that will be needed no matter the Supreme Court's decision.

As a final point, it is worth noting here that Plaintiff had prepared an inspection of the one of the dialers at issue together with certain depositions to follow the Parties' first mediation session with Judge Infante. (*See* "Declaration of Attorney Patrick Peluso ("Peluso Decl.") ¶ 3, a true and accurate copy of which is attached hereto as Exhibit A.) Defendant adjourned the first session indicating that it needed to conduct further research regarding the size of the class and asked, given that the Parties were mediating, if the inspection of the dialing equipment and depositions would be continued. (*Id.* ¶ 4.) Plaintiff agreed so that the Parties could focus their efforts and resources on the mediation. (*Id.* ¶ 5.) Without divulging any confidential information, the second mediation session was unsuccessful (*Id.* ¶ 6.), and now Defendant seeks to avoid this necessary discovery entirely. The Court frankly shouldn't condone such gamesmanship.

In short, the Court should deny the stay because the discovery is necessary and was, up until a couple weeks ago, scheduled to proceed.

### B. The requested stay also fails to meet the *Landis* factors.

TMS also claims that the requested stay is supported by the factors set forth in *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Any party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255.

Defendant's analysis of the *Landis* factors is flawed—none of the factors favor a stay.

***Possible damage of granting stay***

TMS's only assertion regarding potential harm to Plaintiff is that there is no "need for immediate relief". (Dkt. 64, at 9.) But Plaintiff seeks injunctive relief in its Complaint, which is necessary to prevent TMS from continuing its unlawful telemarketing practices directed not just to itself, but to absent class members. Even if Plaintiff does not receive another call, every month that this matter is delayed is another month for Defendant and its agents to continue their automated telemarketing campaign to other consumers unchecked and exacerbate the harms at issue in the case. Further, and in addition to the harm associated with continued telemarketing, Plaintiff's ability to pursue this action would be harmed by a stay. Generally, a delay that results from a stay can harm plaintiffs because it threatens the availability of evidence. *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,* 490 F.3d 718, 724 (9th Cir. 2007) (recognizing that "[d]elay inherently increases the risk that witnesses' memories will fade and evidence will become stale"). If Plaintiff is unable to finalize discovery to secure evidence possessed by Defendant, its telemarketers, and various other third parties until the Supreme Court rules on *Duguid*, Plaintiff may lose the ability to obtain evidence to support its claims. This prejudice is exacerbated by the fact that TMS fails to maintain any calling records for its agents, which requires Plaintiff to conduct extensive third-party discovery from entities that have no obligation to retain relevant documents and data. In short, Plaintiff will suffer harm if the case is stayed because it would be unable to discover evidence material to its claims for the duration of

any stay, during which time Defendant could continue its unlawful practices. This factor weighs against a stay.

### *Hardship in proceeding*

TMS's prediction that it would suffer "expensive and time-consuming class action discovery and motion practice, which could be futile if the Supreme Court reverses the Ninth Circuit" in the absence of a stay is rooted in its erroneous assessment of the *Duguid* case and of Plaintiff's claim. (*See* Dkt. 64 at 1.) This is simply not true. The discovery was just recently scheduled to go forward until Defendant asked that it be canceled due to the mediation. And if the Supreme Court upholds the *Duguid* decision, Plaintiff could succeed on its claim without evidence of a number generator; if the decision is overturned, Plaintiff will need evidence to support its claim and meet the TCPA definition. But the *Duguid* decision cannot and will not dispose of Plaintiff's case because discovery will be needed on the dialer at issue either way. In other words, the requested stay would only delay necessary and inevitable discovery. Moreover, TMS will not suffer hardship in proceeding, aside from the ordinary expenses associated with litigation, which are certain and insufficient to justify postponing this matter for an unspecified period of time. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'") Thus, this factor does not favor granting the requested stay.

### *Judicial economy*

Judicial economy wouldn't be served by a stay either. In response to a similar request in another TCPA case, the District of Arizona reasoned that "regardless of the results in *Facebook* [*v. Duguid*]…[the defendant] will be required to engage in discovery." *Whittaker v. All Reverse Mortgage Inc.*, No. CV-20-08016-PCT-DLR, dkt. 26 at 2 (D. Ariz. July 17, 2020) (attached hereto as "Exhibit B"). "[O]nce the Supreme Court releases its decision defining ATDS, Plaintiff still would be entitled to conduct discovery into Defendant's systems to determine whether those systems met the ATDS definition. In fact, Defendant has not pointed to a single discovery issue that would be eliminated by a *Facebook* decision favorable to it . . . ." (Ex. B at 2.) The *Whittaker*

1  court denied the motion to stay because "discovery issues are not likely to be mooted and
2  resources are not likely to be spared" by awaiting *Duguid*'s outcome to begin discovery that is
3  necessary regardless. *Id.* The same holds true here—TMS cannot credibly suggest that the *Duguid*
4  decision will moot any discovery issues because Plaintiff will require discovery into the dialing
5  system regardless of what the Supreme Court decides.

In short, there is no support for staying this matter until the Supreme Court issues its ruling in *Duguid* and postponing all proceedings indefinitely. This is not one of the "rare" instances where a party should be made to stand aside while a pertinent rule of law is decided. *Landis*, 299 U.S at 255. Judicial economy would not be served by postponing this case for an unspecified period of time, based only on Defendant's misguided belief that a Supreme Court decision would drastically alter Plaintiff's cause of action. Further, given that Plaintiff would likely suffer harm in the form of evidence becoming unavailable if such a stay is granted, and that TMS will not suffer any harm beside the inevitable cost of litigation, the requested stay is inappropriate. Defendant's request to stay this matter should be denied.

## IV.  CONCLUSION

Defendant's Motion should be denied. The Supreme Court's upcoming review of the ATDS definition in *Duguid* will not dispose of Plaintiff's claim, and the *Landis* factors do not support staying inevitable discovery and proceedings. Accordingly, the Court should deny the motion, permit the parties to proceed with discovery, and award any such relief as it deems necessary and just.

Dated: October 21, 2020        /s/ Patrick H. Peluso
                               Counsel for Plaintiff

                               Richard T. Drury (SBN: 163559)
                               Rebecca Davis (SBN 271662)
                               Lozeau Drury LLP
                               410 12th Street, Suite 250
                               Oakland, CA 94607
                               Tel: 510-836-4200

Richard@lozeaudrury.com
Rebecca@lozeaudrury.com

Steven L. Woodrow (*pro hac vice*)
Patrick H. Peluso (*pro hac vice*)
Taylor T. Smith (*pro hac vice*)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 90210
Tel: 720-213-0675
swoodrow@woodrwopeluso.com
ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com

7

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was served upon counsel of record by filing such papers via the Court's ECF system on October 21, 2020.

/s/     Patrick H. Peluso