1   Richard T. Drury (SBN 163559)
    richard@lozeaudrury.com
2   Rebecca Davis (SBN 271662)
    rebecca@lozeaudrury.com
3   **LOZEAU DRURY LLP**
    1939 Harrison St., Suite 150
4   Oakland, CA 94607
    Telephone: (510) 836-4200
5   Facsimile: (510) 836-4205

6   [Additional counsel appearing on signature page]

7   *Attorneys for Plaintiff and the Alleged Classes*

8

9                    **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
10

11

12   ABANTE ROOTER AND PLUMBING,              Case No. 3:19-cv-05711-EMC
     INC., individually and on behalf of all others
13   similarly situated,                       **PLAINTIFF'S NOTICE OF MOTION**
                                               **AND MOTION FOR CLASS**
14                     Plaintiff,              **CERTIFICATION**

15   v.                                        Hearing: June 10, 2021
                                               Time: 1:30 p.m.
16   TOTAL MERCHANT SERVICES, LLC, a           Judge: Hon. Edward M. Chen
     Delaware limited liability company,       Location: Courtroom 5, 17th Floor
17                                             Complaint Filed: September 11, 2019
                       Defendant.
18

19         **PLEASE TAKE NOTICE** that on June 10, 2021, counsel for Plaintiff Abante Rooter and

20   Plumbing, Inc. ("Plaintiff") shall appear before the Honorable Edward M. Chen or any judge

21   sitting in his stead in Courtroom 5 of the United States District Court for the Northern District of

22   California, 450 Golden Gate Avenue, San Francisco, CA 94102, and present Plaintiff's Motion for

23   Class Certification ("Motion").

24         Plaintiff requests that the Court issue an Order certifying the following proposed class of

25   similarly situated individuals:

26         All persons in the United States who (1) on or after November 2, 2018 through July
           17, 2020, (2) received a call from Triumph Merchant Solutions, LLC, (3) on their
27

28

cellular telephone, (4) for the purpose of promoting TMS's products or services, or that could have resulted in the purchase of a TMS product or service, (5) who were called using Triumph's Vicidial System, and (6) who TMS and Triumph contend consented in the same way as Plaintiff, or for whom TMS and Triumph have no record of prior express written consent.

This Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities and exhibits attached thereto, oral argument of counsel, and any other matter that may be submitted at the hearing.

**ABANTE ROOTER AND PLUMBING, INC.**, individually and on behalf of all others similarly situated,

Date: April 12, 2021

/s/ Patrick H. Peluso
One of Plaintiff's Attorneys

Richard T. Drury (SBN: 163559)
Rebecca Davis (SBN 271662)
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: 510-836-4200
Richard@lozeaudrury.com
Rebecca@lozeaudrury.com

Steven L. Woodrow (*pro hac vice*)
Patrick H. Peluso (*pro hac vice*)
Taylor T. Smith (*pro hac vice*)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 90210
Tel: 720-213-0675
swoodrow@woodrwopeluso.com
ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iv

I.   INTRODUCTION ....................................................................1

II.  BACKGROUND FACTS ...........................................................3

III. ARGUMENT ..........................................................................6

A.   The Class Is Ascertainable—Class Members Can Be Identified By Reference To Objective Criteria, Triumph's Calling Records...........................................7

B.   The Proposed Class Meets Each Of The Requirements Of Rule 23(a)...........8

1.   The Class consists of tens of thousands of cellphone owners. ...............8

2.   The Class shares common questions of law and fact. ...........................9

(a)   Whether TMS can be liable for the actions of Triumph. ..........9

(b)   Whether the dialing equipment utilized by Triumph to place the calls qualifies as an automatic telephone dialing system..........10

(c)   Whether the class members consented to be called. ................11

(d)   Whether TMS acted willfully...............................................11

3.   Plaintiff's claims are typical..................................................12

4.   Plaintiff and counsel are adequate representatives. ...........................13

C.   The Proposed Class Meets The Requirements Of Rule 23(b)(2)...................14

D.   The Proposed Class Meets The Requirements Of Rule 23(b)(3)...................15

1.   Common questions of law and fact predominate................................15

2.   A class action is superior to any other method of adjudication. ..........17

IV.  CONCLUSION ......................................................................18

1

**TABLE OF AUTHORITIES**

2

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583
(N.D. Cal. May 5, 2017) ................................................................14, 16

3

4

*Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*, No. 1:15-CV-09025, 2019 WL 2366475
(N.D. Ill. May 29, 2019) ........................................................................14

5

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, Case No. 3:16-cv-05486-JCS (N.D.
Cal. filed Sept. 26, 2016) ......................................................................14

6

7

*Abante Rooter and Plumbing, Inc. v. Birch Communications, Inc.*, Case No. 1:15-cv-03562-AT
(N.D. Ga. Filed Oct. 7, 2015) ...............................................................14

8

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997) ................................6, 13

9

*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994) .......................12

10

*Barraza v. C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.*,
322 F.R.D. 369 (D. Ariz. 2017) ...........................................................14

11

*Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413 (W-AJB), 2008 WL 4155361 (S.D. Cal. Sept.
5, 2008) .....................................................................................................17

12

*Blair v. CBE Grp., Inc.*, 309 F.R.D. 621 (S.D. Cal. 2015) ........................................................11

13

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ...................................................7

14

*Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 7391299 (N.D. Cal. July 22,
2020) ...........................................................................................................7

15

16

*Gardner v. Shell Oil Co.*, No. C-09-05876-CW, 2011 WL 1522377 (N.D. Cal. Apr. 21, 2011)....7

17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................................9

18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL
1530166 (N.D. Cal. June 5, 2006) ........................................................13

19

*In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006) ...................................................9

20

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
264 F.R.D. 603 (N.D. Cal. 2009) ..........................................................9

21

22

*James v. Uber Techs. Inc.*, No. 19-CV-06462-EMC,
2021 WL 254303 (N.D. Cal. Jan. 26, 2021) .........................................7

23

24

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ...........................10, 17

25

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013) .......................................16, 17

26

*McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal.
Sept. 6, 2017) ..........................................................................................12

27

28

*Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2016 WL 8933624 (N.D. Cal. Aug. 22, 2016) ..........................................................................................................12, 17

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004)........................................8

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590 (C.D. Cal. 2015)..................8

*Pina v. Con-Way Freight, Inc.*, No. C 10-00100 JW, 2012 WL 1278301 (N.D. Cal. Apr. 12, 2012) ....................13

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) .........................................12

*Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992) .......................9

*Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944 (9th Cir. 1979) .................13

*Smith v. Microsoft Corp.*, 297 F.R.D. 464 (S.D. Cal. 2014)........................................17

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003) .........................................12

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016) ........................................15

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)........................................15

*Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554 (C.D. Cal. 2012) ........................17

*West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) ........................17

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)..............................17

**STATUTES, RULES, SECONDARY SOURCES**

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ................................................1, 11

Fed. R. Civ. P. 23, *et seq.*.................................................................. *passim*

47 C.F.R. § 64.1200, *et seq.*..................................................................11

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574 (2013)................................................1, 9

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2001)............................8

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.     INTRODUCTION

Defendant Total Merchant Services, LLC ("Defendant" or "TMS") is a merchant processing company that sells point of sale software and equipment to enable businesses to accept credit card payments from consumers. Rather than conduct its telemarketing in-house, TMS utilizes thousands of sales representatives to conduct telemarketing on its behalf. TMS supplies its representatives with training, marketing materials, and leads, and then pretends to turn a blind eye as its telemarketers place tens of thousands of illegal robocalls to cell phones without any prior express written consent—all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

One of TMS's marketers, Triumph Merchant Solutions, LLC ("Triumph"), placed unlawful robocalls to Plaintiff Abante Rooter and Plumbing, Inc. ("Plaintiff" or "Abante") and more than 35,000 other cellphone users in an effort to sell TMS's merchant processing services. In the process, TMS accepted all the benefits of Triumph's telemarketing while supposedly ignoring Triumph's conduct. To hear TMS tell it, this supposed hands-off approach to monitoring its agents shields it from liability for any violations of the TCPA that Triumph may have committed. That is of course untrue: as will be explained at the appropriate time, the TCPA expressly prohibits companies like TMS from avoiding liability by hiring third parties to make calls on their behalf.[1] For present purposes what matters is that this question—whether TMS can be held liable for Triumph's TCPA violations—can be answered for *everyone* in the entire Class in a single stroke.

Indeed, this matter presents a textbook case for class certification. Triumph placed tens of

---

[1] *See, e.g., In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6588 (2013) (explaining that sellers can be held liable vicariously and that "allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case").

thousands of calls to cellular telephones using the same dialing system. It obtained lists of leads from the same source and targeted the same types of businesses—all to market TMS's merchant processing services. Despite exhaustive discovery, Triumph cannot show any prior express consent from any of the class members. As such, common issues abound for which this case will provide common answers, including: (1) whether TMS is liable for Triumph's conduct, (2) whether the calls in question were made on behalf of TMS, (3) whether the calls in question promoted TMS products or could have resulted in the sale of a TMS product, (4) whether the equipment Triumph used to place the calls constitutes an automatic telephone dialing system ("ATDS"), (5) whether the class members consented to be called, and (6) whether TMS acted willfully and knowingly such that statutory damages should be trebled. The answers to these questions rely on the same evidence, are identical for each class member, and will drive the resolution of the litigation for the proposed Class as a collective whole.

The remaining requirements under Rule 23 are met as well. The proposed Class, which consists of more than 35,000 individual cellphone owners, is sufficiently numerous. Plaintiff Abante claims are typical of those of the class members, and Plaintiff is an adequate representative and is represented by counsel experienced and well-versed in class action litigation. Further, the common issues of whether TMS is liable of Triumph's calls, whether Triumph used an ATDS, and whether any prior express consent was obtained predominate over any supposed individual issues and a class action is the superior method for resolving the claims at issue.

Consequently, Plaintiff Abante seeks certification of the following Class:

> All persons in the United States who (1) on or after November 2, 2018 through July 17, 2020, (2) received a call from Triumph Merchant Solutions, LLC, (3) on their cellular telephone, (4) for the purpose of promoting TMS's products or services, or that could have resulted in the purchase of a TMS product or service, (5) who were called using Triumph's Vicidial System, and (6) who TMS and Triumph contend consented in the same way as Plaintiff, or for whom TMS and Triumph have no record of prior express written consent.

Accordingly, and as explained below, the Court should certify the proposed Class.

## II.    BACKGROUND FACTS

***TMS engages thousands of sales representatives to conduct marketing efforts on its behalf***

Defendant TMS is a merchant processing company that sells point of sale software and equipment to enable businesses to accept credit card transactions. (*See* Declaration of Patrick H. Peluso ("Peluso Decl.") ¶ 2, attached hereto as Grp. Ex. A.) ████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████ (TMS Depo. Tr., excerpts of which are attached hereto as Ex. B, at 36:9-14; 63:2-6.) ████████████████████████████████████ ████████████████████████████████████████████████████████████████ (TMS Sales Representative Agreement with Triumph (hereafter "Triumph Agreement"), pg. 3, attached hereto as Ex. C; *see also* Ex. B, at 22:2-15.) ████████████████████████████ ██████████████████████ (Ex. B, at 24:14-18.) ██████████████████ ████████████████████████████████████████████████ (Ex. B, at 27:20-24.) If TMS approves the application, the client is sent TMS equipment to start processing credit cards. (Triumph Depo. Tr., excerpts of which are attached hereto as Ex. D, at 30:16-18.) TMS and its sales representatives then each receive a share of the transactional fees associated with the client's credit card processing. (Ex. D, at 35:3-21.) Sales representatives can also receive upfront bonuses based on equipment that was sold. (Ex. D, at 34:18-24.) ████████████████████████████████████ (Ex. B, at 33:10-15.) ███████████████████ ████████████████████████████████████████████ (Ex. B, at 26:8-28:12; 46:12-47:12.) ██████████████████████████████████ (Ex. B, at 9:7-16.) ██████████████ █████████████████████████████ (Triumph Agreement, Ex. C, pg. 3.)

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████ (Ex. B, at 73:15-

3 22.) TMS agreed to pay a set amount for each of its sales representatives that utilized

4 InfoFree.com to purchase unlimited leads. (*See* InfoFree Agreement, attached hereto as Ex. E.)

5 ██████████████████████████████████████████████

6 ███████████████████████ (Ex. B, at 71:20-72:4.)

7 ***TMS's relationship with Triumph***

8 ████████████████████████████████████████████████████

9 ██████ (Ex. B, at 17:1-9; *see also* Triumph Agreement, Ex. C.) Between 2014 and sometime in

10 2017 or 2018, Total Merchant Supplies, LLC operated as a sales representative for TMS and was

11 owned by Jason Heil, Chris Heil, Jay Sadat, and Nathaniel Aripez. (Ex. D, at 12:24-13:2.)

12 Sometime in 2017 or 2018, Total Merchant Supplies, LLC ceased operations. (Ex. D, at 39:19-

13 24.) At the same time, Jason Heil and Chris Heil established Triumph Merchant Solutions, LLC

14 ("Triumph"). (Ex. D, at 14:3-8; 39:25-40:1.) █████████████████████████

15 █████████████████████ (Ex. B, at 21:20-22:4.) Thereafter, Triumph engaged in

16 soliciting sales on behalf of TMS in the same manner as Total Merchant Supplies had previously

17 performed. (Ex. D, at 26:12-27:6.)

18 ***Triumph placed autodialed telemarketing calls to thousands of businesses to solicit sales on behalf of TMS***

19 On June 24, 2019, Plaintiff received a telemarketing call on its cellular telephone from

20 Triumph soliciting it to purchase TMS's products and services.[2] (Plaintiff's Second Supp. Resp.

21 to Interrogatory No. 2, attached hereto as Ex. F.) Shortly thereafter, Plaintiff received a follow-up

22 email from Triumph, which again solicited Plaintiff to purchase TMS's products and services and

23 included a link to TMS's website. (Plaintiff's Second Supp. Resp. to Interrogatory No. 2, Ex. F;

24 *see also* Triumph Emails, copies of which are attached hereto as Ex. G.) On October 8, 2019,

25

---

26 [2] Plaintiff also received numerous telemarketing calls from several of TMS's other sales

27 representatives. (Plaintiff's Second Supp. Resp. to Interrogatory No. 2.) As a result of poor record keeping on the part of TMS and its sales agents, Plaintiff only seeks to certify a class of persons

28 who were called by Triumph.

Plaintiff received another call from Triumph, which again solicited Abante to purchase TMS's products and services. (Plaintiff's Second Supp. Resp. to Interrogatory No. 2, Ex. F.) Just as with the prior call, Triumph sent another follow-up email soliciting Plaintiff to purchase TMS's products and services. (Plaintiff's Second Supp. Resp. to Interrogatory No. 2, Ex. F; *see also* Triumph Emails, Ex. G.)

Abante wasn't alone. In response to a subpoena, Triumph produced its calling records for the class period. (Peluso Decl. ¶¶ 5-6.) The records reveal that between November 2, 2018 and July 17, 2020, Triumph placed 684,501 telemarketing calls. (*Id.* ¶ 7.) Of those calls, approximately 56,979 were placed to 37,220 individual cellular telephones. (*Id.* ¶ 8.) Triumph's designee confirmed that the records contain all of the calls that it placed throughout the class period. (Ex. D, at 76:16-77:16; 78:18-79:19; 81:7-23.) The calls to Plaintiff were included in the call records provided by Triumph. (Peluso Decl. ¶ 9.) All of these calls were made on TMS's behalf and for TMS's benefit. (Ex. D, at 101:16-103:7.)

Triumph's designee also testified that it generates all of its sales through its telemarketing activities (Ex. D, at 53:19-21.), and his testimony confirms that its calling practices were uniform throughout the class period. First, Triumph's designee testified that it used the same dialing system, the Vicidial system, to place all of its calls during the class period:

> Q. Let me rephrase that. Between November of 2018 and July of 2020 Triumph utilized the Vicidial system, is that correct?
>
> A. Correct.
>
> Q. Is that the only system that Triumph would have utilized during that timeframe?
>
> A. Correct.

(Ex. D, at 57:8-14.)

Further, to identify potential businesses to target, Triumph obtained lists of leads from only one source, InfoFree.com. (Ex. D, at 65:15-19.) Triumph would access InfoFree's website and select the specific industry(ies) of businesses that it planned to target and then download a list, which containing the names and phone numbers of businesses. (Ex. D, at 66:21-67:6.) After the lists were downloaded from InfoFree, Triumph would then upload the lists into the Vicidial

system. (Ex. D, at 67:10-16.) During the entire class period, Triumph did not upload lists of leads from any other source other than InfoFree into the Vicidial system. (Ex. D, at 68:20-24.) At this same time, Triumph's InfoFree.com subscription was paid for by TMS. (*See* Peluso Decl. ¶¶ 14-16; *see also* InfoFree Invoices, copies of which are attached to the Peluso Decl. as Exhibit 1.)

Triumph also cannot produce any record of prior express consent for any of the calls. (Peluso Decl. ¶ 10.) Triumph's designee even admitted that it took no steps to ensure that the individuals called gave consent:

> Q. Between November of 2018 and July of 2020 did Triumph have any procedures in place to ensure that the telephone numbers that were provided by Infofree had consented to be called?
>
> MR. B. SMITH: Object to the form and foundation.
>
> THE WITNESS: What do you mean by consent?
>
> BY MR. T. SMITH:
>
> Q. Individuals agreeing to be called?
>
> MR. B. SMITH: Objection to form and foundation.
>
> THE WITNESS: No.

(Ex. D, at 69:9-20.) Instead, Triumph simply presumed that InfoFree would obtain the consent necessary to place the calls. (Ex. D, at 69:22-24.)

Based on these facts and as further explained below, the record firmly supports certification.

### III.   ARGUMENT

Class certification is appropriate when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has been satisfied. Fed. R. Civ. P. 23; *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-14, 117 S.Ct. 2231 (1997). Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact among the class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named

representative and its counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

Plaintiff seeks certification here under both Rule 23(b)(2) and 23(b)(3). Under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate…." Fed. R. Civ. P. 23(b)(2). To certify a class under Rule 23(b)(3), on the other hand, there must be questions of law or fact common to the proposed class members that predominate over any questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

As explained below, the proposed Class satisfies Rules 23(a), (b)(2), and (b)(3) and should be certified.

## A.   The Class Is Ascertainable—Class Members Can Be Identified By Reference To Objective Criteria, Triumph's Calling Records.

As an initial matter, the Ninth Circuit has been clear that "the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification[.]" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). Nevertheless, some courts have continued to apply this judge-made condition. *See Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 7391299, at *7 (N.D. Cal. July 22, 2020). "To be ascertainable, the definition of the class must be 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member' before trial, and by reference to 'objective criteria.'" *James v. Uber Techs. Inc.*, No. 19-CV-06462-EMC, 2021 WL 254303, at *3 (N.D. Cal. Jan. 26, 2021). Objective criteria may include a defendant's business records. *See, e.g., Gardner v. Shell Oil Co.*, No. C-09-05876-CW, 2011 WL 152237, at *4 (N.D. Cal. Apr. 21, 2011).

The proposed Class is ascertainable by reference to objective criteria. Plaintiff seeks to represent a class of cellphone owners who've received at least one unsolicited call from Triumph during the class period. Through discovery, Plaintiff has obtained Triumph's call records during

1   the class period. (Peluso Decl. ¶¶ 5-6.) Triumph has confirmed that these records contain all of

2   the calls that it placed throughout the class period, all of which were made on TMS's behalf. (Ex.

3   D, at 76:16-77:16; 78:18-79:19; 81:7-23; 101:16-103:7.) Based on these records, Proposed Class

4   Counsel was able to identify 37,220 individual cellular telephone numbers. (Peluso Decl. ¶ 8.) Put

5   simply, there is nothing subjective about whether a class member's number appears in Triumph's

6   calling records or whether it is a cellphone. While it is unnecessary for Abante to identify each

7   potential class member at this time, it is clear that class membership will be based on objective

8   criteria, the call records. As such, membership in the proposed Class is ascertainable.

9       **B.      The Proposed Class Meets Each Of The Requirements Of Rule 23(a).**

10          In addition to being ascertainable, the proposed Class is sufficiently numerous and shares

11  common question. Further, Abante's claims are typical and it, along with its counsel, will fairly

12  and adequately represent the interests of the class.

13              **1.      The Class consists of tens of thousands of cellphone owners.**

14          Numerosity is satisfied where "the class is so numerous that joinder of all members is

15  impracticable." Fed. R. Civ. P. 23(a)(1). There is not a specific number of class members needed

16  to establish numerosity; however, courts generally find the numerosity requirement to be satisfied

17  when the class size exceeds forty members. *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,

18  311 F.R.D. 590, 602-603 (C.D. Cal. 2015) ("As a general matter, courts have found that

19  numerosity is satisfied when class size exceeds 40 members.") (citation omitted). At this stage,

20  Plaintiff is not required to identify an "exact number of potential class members." *Moeller v. Taco

21  Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal. 2004) (citing *Bates v. United Parcel Service*, 204

22  F.R.D. 440, 444 (N.D.Cal. 2001)). Rather, the Court is entitled to make common sense

23  assumptions in order to find support for numerosity. *See* Alba Conte & Herbert B. Newberg,

24  *Newberg on Class Actions* ¶ 7.20, 66 (4th ed. 2001).

25          Numerosity is not an impediment to certification in this case. That is, Triumph placed

26  unlawful autodialed calls to 37,220 individual cellular telephone numbers. (Peluso Decl. ¶ 8.)

27  Furthermore, neither Triumph nor TMS has been able to produce any consent from any of the

28

1    called numbers. Numerosity is plainly satisfied here.

2                    **2.      The Class shares common questions of law and fact.**

3          Rule 23(a) next requires that "there are questions of law or fact common to the class."

4    Fed. R. Civ. P. 23(a)(2). As the Supreme Court explained in *Dukes*, "[w]hat matters to class

5    certification . . . is not the raising of common 'questions'—even in droves—but, rather the

6    capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the

7    litigation. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (commonality

8    requires that the claims of the class "depend upon a common contention . . . of such a nature that

9    it is capable of classwide resolution—which means that determination of its truth or falsity will

10   resolve an issue that is central to the validity of each one of the claims in one stroke.").

11         Rule 23(a)(2) commonality may be met by a single issue of law or fact. *In re First*

12   *Alliance Mortgage Co*., 471 F.3d 977, 990-91 (9th Cir. 2006). The issues are also not required to

13   be identical. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998). Rather, "[w]hen

14   common questions present a significant aspect of the case and they can be resolved for all

15   members of the class in a single adjudication, there is clear justification for handling the dispute

16   on a representative rather than an individual basis." *In re Static Random Access Memory (SRAM)*

17   *Antitrust Litig.*, 264 F.R.D. 603, 611 (N.D. Cal. 2009). Commonality has been characterized as a

18   relatively low and easily surmountable hurdle. *Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D.

19   181, 185 (N.D. Ill. 1992).

20         Several common issues will drive the instant litigation, including whether TMS can be

21   held liable for the calls that Triumph made on its behalf, whether the dialing equipment utilized to

22   place the telemarketing calls constitutes an ATDS, whether Triumph or Defendant obtained

23   consent from any of the class members, and whether TMS acted willfully.

24                    **(a)      Whether TMS can be liable for the actions of Triumph.**

25         The first common issue asks whether TMS can be liable for the conduct of Triumph. The

26   FCC has explained that this inquiry turns on the federal common law of agency and can arise

27   from actual authority, apparent authority, or ratification. *See In the Matter of the Joint Petition*

28

*Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6588 (2013); *see also Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014). At this stage in the litigation, the question is whether the agency determination can be proven using common evidence.

Here, common evidence will be used to show that Triumph acted as TMS's agent. Triumph had authority to act on behalf of TMS, consumers were told the calls were made on behalf of TMS, and TMS knew about the calls. And this doesn't change depending on who the class member happens to be—the answer to the question of whether Triumph acted as TMS's agent is the same for everyone. There are no individualized inquiries. Actual authority depends only the relationship between the agent and principal. Likewise, ratification depends on TMS's and Triumph's "post-message behavior without concern for any conduct by the class members." *Kristensen*, 12 F. Supp. 3d at 1306. Hence, the inquiry for both actual authority and ratification will focus exclusively on the conduct of TMS and Triumph. Further, "[a]pparent authority depends on whether a reasonable person would believe" that Triumph had authority to act. *Id.* Because this inquiry focuses on how a "reasonable person" would perceive the calls, there is no need to inquire into how an individual class member may have perceived the call. *Id.* As such, the answer to the question of whether TMS can be held vicariously liable for the actions of TMS will be the same across the entire Class.

          **(b)**     **Whether the dialing equipment utilized by Triumph to place the calls qualifies as an automatic telephone dialing system.**

The second common issue asks whether the dialing equipment utilized by Triumph to place the calls in question qualifies as an ATDS under the TCPA. While TMS may dispute that the dialing system qualifies as an ATDS, the answer to the question itself will ultimately be the same for all class members. That is, Triumph's designee testified that during the class period it only used one dialing system:

> Q. Let me rephrase that. Between November of 2018 and July of 2020 Triumph utilized the Vicidial system, is that correct?

A. Correct.

Q. Is that the only system that Triumph would have utilized during that timeframe?

A. Correct.

(Ex. D, at 57:8-14.) Put succinctly, whether Triumph's dialer ultimately qualifies as an ATDS will be the same with respect to every single call that was placed. Indeed, if the calls to Plaintiff were made with an ATDS, then all of the calls were made with an ATDS and vice-versa.

### (c)   Whether the class members consented to be called.

The third common issue asks whether any of the class members provided prior express written consent to be called. Prior express written consent means:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200. To date, neither Triumph nor TMS has been able to produce any record of prior express written consent. Moreover, Triumph's designee even testified that it did nothing to ensure that the individuals that it called had consented or agreed to be called. (*See* Ex. D, at 69:9-20.) Instead, Triumph simply presumed that InfoFree would obtain the consent necessary to place the calls. (Ex. D, at 69:22-24.) Because no evidence of consent has been produced, consent is also a common issue for the Class. *See Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 629 (S.D. Cal. 2015) ("courts should not simply accept a party's argument that consent requires individualized inquiries without evidence demonstrating consent is, in fact, an individualized issue." (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012); *Stern v. DoCircle, Inc.*, No. SACV 12-2005 AG JPRX, 2014 WL 486262, at *3 (C.D. Cal. Jan. 29, 2014))).

### (d)   Whether TMS acted willfully.

A fourth common issue asks whether TMS acted willfully. The TCPA sets statutory damages at $500 per call, which can be trebled for willful violations. 47 U.S.C. § 227(b)(3), *et seq.* Moreover, the inquiry into whether a defendant acted willfully or knowingly focuses on the

1   "intent" of the defendant, and "not any unique or particular characteristics related to potential

2   class members." *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2016 WL 8933624, at *7

3   (N.D. Cal. Aug. 22, 2016); *see also McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR,

4   2017 WL 3895764, at *5 (N.D. Cal. Sept. 6, 2017).

5          In this case, TMS acted the same with respect to every class member. That is, TMS

6   contracted with Triumph to market its products and services. TMS then supplied Triumph with

7   marketing materials, leads, and training. After that, it permitted Triumph to engage in

8   telemarketing on its behalf for years without any intervention. In short, there is simply no

9   evidence that TMS's intent varied with respect to any individual class members. As such, a fact

10  finder could either conclude that TMS acted willfully with respect to the entire class or to none.

11         Therefore, the case will produce common answers to several questions of law and fact.

12              **3.     Plaintiff's claims are typical.**

13         Plaintiff's claims are typical as well. The typicality prerequisite of Rule 23(a) is fulfilled if

14  "the claims or defenses of the representative parties are typical of the claims or defenses of the

15  class." Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement looks to whether the claims of the

16  class representatives [are] typical of those of the class, and [is] satisfied when each class

17  member's claim arises from the same course of events, and each class member makes similar

18  legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th

19  Cir. 2010) (citation omitted).

20         Under the Rule's permissible standards, "representative claims are 'typical' if they are

21  reasonably coextensive with those of absent class members[.]" *Staton v. Boeing Co.*, 327 F.3d

22  938, 957 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

23  1998)). Typicality "does not mean that the claims of the class representative[s] must be identical

24  or substantially identical to those of the absent class members." *Id.* (citing 5 Herbert B. Newberg

25  & Alba Conte, *Newberg on Class Actions*, § 24.25 at 24–105 (3d ed.1992); *see also Armstrong v.

26  Davis*, 275 F.3d 849, 869 (9th Cir.2001)).

27         Plaintiff's claims are typical. To start, Abante is a member of the proposed Class. *See*

28

*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994) ("[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."). Further, Plaintiff and the Class were subjected to a uniform course of conduct: everyone received unwanted autodialed calls to his cellular telephone from Triumph; the calls were placed to market TMS's credit card processing systems; Triumph used the same system and has no record of consent for anyone. Lastly, Triumph sought to target businesses in certain industries, including plumbers, such as Plaintiff. (Ex. D, at 108:21-109:3.)

Because Plaintiff's claims arise out of the same course of conduct as the class members' claims, typicality is satisfied.

### 4.    Plaintiff and counsel are adequate representatives.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *Amchem Products, Inc.*, 117 S.Ct. at 2250-2251. "Two questions are considered when determining the adequacy of representation: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Pina v. Con-Way Freight, Inc.*, No. C 10-00100 JW, 2012 WL 1278301, at *5 (N.D. Cal. Apr. 12, 2012). "[T]he adequacy requirement mandates that no conflicts of interest exist between the named plaintiffs and the absent class members," *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL 1530166, at *6 (N.D. Cal. June 5, 2006), and adequacy is only defeated by actual conflicts. *Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979).

Applied here, Plaintiff's interests are aligned with the interests of the proposed class. Plaintiff has stepped forward and lend its name and time to this case. Abante has responded to discovery requests, produced responsive documents within its possession, and its corporate representative has been deposed. In short, Plaintiff has vigorously represented the interests of the

1   class and will continue to do so throughout the duration of this litigation. Additionally, it is worth

2   noting that Plaintiff Abante has been appointed as a class representative in several prior class

3   actions alleging violations of the TCPA. *See Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,

4   No. 15-CV-6314-YGR, 2017 WL 1806583, at *9 (N.D. Cal. May 5, 2017); *Abante Rooter &*

5   *Plumbing, Inc. v. Oh Ins. Agency*, No. 1:15-CV-09025, 2019 WL 2366475, at *2 (N.D. Ill. May

6   29, 2019); *Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, Case No. 3:16-cv-05486-

7   JCS (N.D. Cal. filed Sept. 26, 2016) (Dkt. 100, pg. 3) (appointing Abante as class representative);

8   *Abante Rooter and Plumbing, Inc. v. Birch Communications, Inc.*, Case No. 1:15-cv-03562-AT

9   (N.D. Ga. Filed Oct. 7, 2015) (Dkt. 88, pg. 4).

10       Plaintiff has also retained experienced attorneys with extensive experience in consumer

11   class actions, including under the TCPA. Indeed, proposed class counsel are respected members

12   of the legal community who have sufficient experience in class actions of similar size, scope, and

13   complexity to the instant action. (*See* Firm Resume of Woodrow & Peluso, LLC, attached hereto

14   as Ex. H.) Plaintiff's counsel have also devoted significant time and resources toward this

15   litigation, and will continue to commit the resources necessary to represent the class. Plaintiff and

16   its counsel have no conflicts of interest with the class and have demonstrated a commitment to

17   vigorously prosecuting this action. Thus, Rule 23(a)(4) adequacy is met.

18       **C.    The Proposed Class Meets The Requirements Of Rule 23(b)(2).**

19       Once Rule 23(a) is satisfied, the inquiry turns to Rule 23(b). In this case, Plaintiff seeks

20   certification under both Rule 23(b)(2) and (b)(3). Rule 23(b)(2) provides that the party opposing

21   certification must have acted or failed to act on grounds generally applicable to the proposed

22   class, "thereby making appropriate final injunctive relief or corresponding declaratory relief with

23   respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he key to the (b)(2) class is the

24   'indivisible nature of the injunctive or declaratory remedy warranted.'" *Dukes*, 131 S. Ct. 2451 at

25   2557. "[W]hile Rule 23(b)(2) class action have no predominance or superiority requirements, it is

26   well established that the class claims must be cohesive.'" *Barraza v. C.R. Bard, Inc. and Bard*

27   *Peripheral Vascular, Inc.,* 322 F.R.D. 369, 387 (D. Ariz. 2017) (citing *Barnes v. American*

28

1 | *Tobacco Co.*, 161 F.3d 127, 143 (3rd Cir. 1998)).

2 |      In this case, TMS subjected Plaintiff and the Class to a uniform course of conduct. ███

3 | ████████████████████████████████████████████ (Ex. B, at 36:9-

4 | 14.) ███████████████████████████████████████████

5 | ████████████████ (Ex. B, at 22:2-15.) ████████████████████

6 | ████████████████████████████████████ (Ex. B, at 69:11-

7 | 21.) ███████████████████████████████████████

8 | ████████████████████████ (Ex. B, at 69:22-25.) ███████████

9 | ████████████████ (Ex. B, at 62:24-25.) The result of TMS's intentionally hands off

10 | approach is that it enables its sales representatives to engage in unlawful telemarketing, from

11 | which it will ultimately reap the benefits. As such, Plaintiff seeks an injunction requiring TMS to

12 | implement stricter policies and procedures to ensure that its sales representatives comply with the

13 | TCPA.

14 |      Given that TMS subjected Plaintiff and the Class to a uniform course of conduct, the

15 | Court should issue an Order granting certification pursuant to Rule 23(b)(2).

16 |     **D.**   **The Proposed Class Meets The Requirements Of Rule 23(b)(3).**

17 |      Certification is also warranted under Rule 23(b)(3), which provides that a class action may

18 | be maintained where the questions of law and fact common to members of the class predominate

19 | over any questions affecting only individual members, and the class action mechanism is superior

20 | to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ.

21 | P. 23(b)(3).

22 |     **1.**   **Common questions of law and fact predominate.**

23 |      "Implicit in the satisfaction of the predominance test is the notion that the adjudication of

24 | common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.* 97 F.3d

25 | 1227, 1234 (9th Cir. 1996). "The predominance inquiry 'asks whether the common, aggregation-

26 | enabling, issues in the case are more prevalent or important than the non-common, aggregation-

27 | defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016).

28 |

1    "When 'one or more of the central issues in the action are common to the class and can be said to

2    predominate, the action may be considered proper under Rule 23(b)(3) even though other

3    important matters will have to be tried separately, such as damages or some affirmative defenses

4    peculiar to some individual class members.'" *Id.* (citation omitted).

5         The common questions set forth in Section III.B.2, *supra*, will succeed or fail based on

6    common proof. Here, Triumph acted in the same manner with respect to all class members.

7    Triumph obtained its leads from the same source, InfoFree, utilized the same dialing system to

8    place all of the calls at issue, Vicidial, and solicited sales of TMS's products and services.

9    Additionally, there is no record of prior express consent for any of the calls placed. As such, the

10   common questions in this case are subject to common proof, cut to the core of the case, and aren't

11   trumped by any individual truths.

12        TMS may assert that Triumph placed calls on behalf of other credit card processing

13   companies as well. But this doesn't pose an issue with respect to class certification. Rather, the

14   central inquiry is whether the calls in question were to promote TMS's products and services.

15   Whether the calls ultimately resulted in the sale of a TMS product or service is immaterial. *See*

16   *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583,

17   at *7 (N.D. Cal. May 5, 2017) ("Whether a call from Alliance ultimately resulted in installation of

18   a system with an Alarm.com component is circumstantial evidence and certainty not

19   dispositive."); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013) (denying a

20   similar argument and explaining, "The TCPA violations, if any, occurred when the messages

21   were *sent*, not when class members phoned in and were pitched products or services of

22   Stonebridge or any other Trifecta client." (emphasis in original)). As Triumph's designee

23   confirmed, all of the calls that it placed could have resulted in the sale of a TMS product or

24   service. (Ex. D, at 101:16-103:7.) Because each of the calls was placed for the purpose of

25   soliciting businesses to purchase TMS's products and service, this issue is a common question for

26   the Class.

27        In short, if TMS violated the TCPA with respect to the calls placed by Triumph to

28

Plaintiff, then it violated the TCPA with respect to every single class member. As such, the Court should find that the common issues predominate over any supposed individualized issues.

### 2. A class action is superior to any other method of adjudication.

Finally, Rule 23(b)(3) requires that the class action mechanism be superior to other available methods for adjudicating the controversy. Fed. R. Civ. P 23(b)(3). "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citing 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 at 174 (3d ed.2005)). Rule 23(b)(3) includes the following non-exhaustive list of factors pertinent to this inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and; (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Additionally, "[w]here damages suffered by each class member are not large, this fact weighs in favor of certifying a class action." *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 468 (S.D. Cal. 2014) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)). Indeed, "'[t]he most compelling rationale for finding superiority in a class action' is the 'existence of a negative value suit.'" *Id.* at 468-69 (citations omitted).

As a result of low individualized damages and the uniformity of telemarketing practices, courts routinely certify class actions involving violations of the TCPA. *See Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413 (W-AJB), 2008 WL 4155361, at *8 (S.D. Cal. Sept. 5, 2008) (holding in a TCPA action that "[t]he class action procedure is the superior mechanism for dispute resolution in this matter. The alternative ... would be costly and duplicative."); *Kristensen*, 12 F. Supp. 3d at 1308 (granting class certification in a TCPA class); *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 307 (N.D. Cal. 2017) (granting class certification in a TCPA case); *Meyer*, 2016 WL 8933624, at *11-12 (certifying a TCPA class action); *Lee*, 289 F.R.D. at 294; *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 563 (C.D. Cal. 2012).

In this case, the proposed class action is a superior method of adjudication. That is, Plaintiff is seeking statutory damages for each violation of the TCPA, which amounts to between $500-$1,500 per violation. (Complaint ¶¶ 59-60.) Given the small amount of damages likely to be recovered, pursuing suits on an individual basis would be prohibitively expensive for all members of the Class. Further, no other TCPA actions are currently pending against TMS. In the end, individualized trials would only result in duplicative cases, inconsistent rulings, and a waste of judicial resources.

Additionally, a class action is superior here because the case is easily manageable. That is, as previously explained, the common issues in this case predominate of any individualized issues. And a trial in this action will involve nearly all class wide proof. Indeed, Triumph used the same dialing system, obtained leads from the same source, and did not obtain consent for any of the calls. As such, the Court should find that the superiority requirement is satisfied here.

## IV.     CONCLUSION

The proposed Class is worthy of certification. The proposed Class is sufficiently numerous, common questions of law and fact predominate over individual issues, Plaintiff's claims are typical of those of the class members, and Plaintiff is an adequate representative and is represented by counsel experienced and well-versed in class action litigation. Further, common issues predominate over any supposed individual issues and a class action is the superior method for resolving the claims at issue. As such, Plaintiff respectfully requests that the Court certify the Class, appoint Patrick H. Peluso, and Taylor T. Smith of Woodrow & Peluso, LLC as Class Counsel, appoint Plaintiff Abante as Class Representative, order that a Notice Plan be submitted within thirty (30) days of certification, and grant all other and further relief that the Court deems reasonable and just.

Respectfully submitted,

Dated: April 12, 2021

**ABANTE ROOTER AND PLUMBING, INC.,** individually and on behalf of all others similarly situated,

By: /s/ Patrick H. Peluso

Richard T. Drury (SBN: 163559)
Rebecca Davis (SBN 271662)
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: 510-836-4200
Richard@lozeaudrury.com
Rebecca@lozeaudrury.com

Steven L. Woodrow (*pro hac vice*)
Patrick H. Peluso (*pro hac vice*)
Taylor T. Smith (*pro hac vice*)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 90210
Tel: 720-213-0675
swoodrow@woodrwopeluso.com
ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com

1

**CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies that a true and correct copy of the above papers was

3

served upon counsel of record by filing such papers via the Court's ECF system on April 12,

4

2021.

5

/s/ Patrick H. Peluso

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28