GREENSPOON MARDER LLP
BETH-ANN KRIMSKY (*pro hac vice admission*)
beth-ann.krimsky@gmlaw.com
LAWREN A. ZANN (*pro hac vice admission*)
lawren.zann@gmlaw.com
200 East Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954.527.2427
Facsimile: 954.333.4027

NOSSAMAN LLP
JAMES H. VORHIS (SBN 245034)
jvorhis@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:    415.398.3600
Facsimile:    415.398.2438

Attorneys for Defendant TOTAL MERCHANT SERVICES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC, a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOTAL MERCHANT SERVICES, LLC., a Delaware limited liability company,<br><br>Defendant. | Case No:  3:19-cv-05711-EMC<br><br>**DEFENDANT TOTAL MERCHANT SERVICES, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:          June 10, 2021<br>Time:         1:30 p.m.<br>Location:    Courtroom 5, 17th Floor<br><br>Date Action Filed: September 11, 2019 |

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND .................................................................................2

III.   DISCUSSION .........................................................................................................7

    A.   Legal Standard Governing Class Certification ...........................................7

    B.   Plaintiff Cannot Satisfy Rule 23(a)'s Prerequisites for Class Certification ...................7

        1.   Plaintiff fails to proffer sufficient evidence establishing numerosity ......................7

        2.   Plaintiff fails to proffer sufficient evidence establishing commonality ................10

        3.   Plaintiff fails to proffer sufficient evidence establishing typicality .....................12

        4.   Plaintiff and his counsel are not adequate representatives of the putative class ....13

    C.   Plaintiff Cannot Satisfy Rule 23(b)'s Prerequisites for Class Certification ...............15

        1.   Plaintiff fails to satisfy Rule 23(b)(2) because Plaintiff seeks to recover monetary damages and Plaintiff cannot show that TMS has acted or refused to act on grounds that apply to the putative class ..................15

        2.   Plaintiff fails to satisfy Rule 23(b)(3) because individualized questions predominate over any questions that might be common to the putative class and the case is unmanageable ..................16

            a)   Individualized issues predominate ..................16

            b)   The class is unmanageable ..................18

IV.   CONCLUSION ......................................................................................................19

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Beck v. Status Game Corp.,*
1995 WL 422067, at *6 (S.D.N.Y. July 14, 1996) ................................................14

5

*Bee, Denning, Inc. v. Capital Alliance Group,*
6
310 F.R.D. 614 (S.D. Cal. 2015) .................................................................................7

7

*Berman v. Freedom Financial Network, LLC,*
400 F. Supp. 3d 964 (2019) ......................................................................................13

8

*Blackie v. Barrack,*
9
524 F.2d 891, 901 (9th Cir. 1975) ..............................................................................9

10

*Blair v. CBE Group, Inc.,*
309 F.R.D. 621 (S.D. Cal. 2015) ..............................................................................16

11

*Briseno v. ConAgra Foods, Inc.,*
12
844 F.3d 1121 (9th Cir. 2017) ...................................................................................18

13

*Ca. for Disability Rights, Inc. v. Ca. Dep't of Transp.,*
249 F.R.D. 334 (N.D. Cal. 2008) ................................................................................8

14

*Chinitz v. Intero Real Estate Services,*
15
No. 18-cv-05623-BLF, 2020 WL 73911299 (N.D. Cal. July 22, 2020)...................18

16

*Chinitz v. NRT West, Inc.,*
No. 18-cv-06100-NC, 2019 WL 4142044 (N.D. Cal. Aug. 30, 2019) .................7, 8

17

*Comcast Corp. v. Behrend,*
18
133 S. Ct. 1426 (2013) ..........................................................................................7, 16

19

*Connelly v. Hilton Grand Vacations Co., LLC,*
294 F.R.D. 574 (S.D. Cal. 2013) ..............................................................................15

20

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
21
No. C 06-3903 TEH, 2008 WL 7748874 (N.D. Cal. July 7, 2008) .........................14

22

*Daniel F. v. Blue Shield of Cal.,*
305 F.R.D. 115, 122 (N.D. Cal. 2014) .....................................................................18

23

*Ehret v. Uber Techs., Inc.,*
24
148 F. Supp. 3d 884, 889-90 (N.D. Cal. 2015) ........................................................18

25

*Evon v. Law Offices of Sidney Mickell,*
688 F.3d 1015, 1029 (9th Cir. 2012) ........................................................................10

26

*Facebook, Inc. v. Duguid,*
27
141 S. Ct. 1163, 1167 (2021) ....................................................................................12

28

DEFENDANT'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
58024941.v1

*Gen. Tel. Co. of SW v. Falcon,*
    457 U.S. 147, 160 (1982) ................................................................................................7

*In re Cal. Micro Devices Sec. Litig.,*
    168 F.R.D. 257 (N.D. Cal. 1996) ..................................................................................14

*In re Hyundai and Kia Fuel Economy Litig.,*
    926 F.3d 539 (9th Cir. 2019) .........................................................................................16

*In re Quarterdeck Office Systems, Inc. Sec. Litig.,*
    1993 WL 623310, at *6 (C.D. Cal. 1993) .....................................................................14

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ......................................................................................................13

*Sali v. Corona Regional Medical Center,*
    909 F.3d 996 (9th Cir. 2018) ...........................................................................................9

*Sandoval v. Cty. of Sonoma,*
    912 F.3d 509 (9th Cir. 2018) .........................................................................................12

*Silver v. Pa. Higher Edu. Assistance Agency,*
    No. 14-cv-00652-PJH, 2020 WL 607054 (N.D. Cal. Feb. 7, 2020) .......................7, 10, 11, 15

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .........................................................................................13

*Tyson Foods v. Bouphakeo,*
    136 S. Ct. 1036 (2016) ..................................................................................................16

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .........................................................................................7, 9, 10, 15

*Walker v. Life Ins. Co. of the SW,*
    953 F.3d 624 (9th Cir. 2020) .........................................................................................18

*Wang v. Chinese Daily News, Inc.,*
    737 F.3d 538, 545 (9th Cir. 2013) ................................................................................16

*Xavier v. Philip Morris USA, Inc.,*
    787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) .............................................................18

*Zinser v. Accufix Research Institute, Inc.,*
    253 F.3d 1180, 1189 (9th Cir. 2001) ............................................................................16

**Statutes**

Fed. R. Civ. P. 23 ................................................................................................. *passim*

Fed. R. Civ. P. 23(a) ............................................................................................ *passim*

Fed. R. Civ. P. 23(a)(1) .................................................................................................8

Fed. R. Civ. P. 23(a)(2) ...............................................................................................10

DEFENDANT'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
58024941.v1

Fed. R. Civ. P. 23(a)(3) ...................................................................................................12

Fed. R. Civ. P. 23(a)(4) ...................................................................................................13

Fed. R. Civ. P. 23(b) .....................................................................................................1, 7

Fed. R. Civ. P. 23(b)(2) .........................................................................................2, 15, 16

Fed. R. Civ. P. 23(b)(3) .......................................................................................15, 16, 18

Fed. R. Civ. P. 23(b)(3)(D) .............................................................................................18

**Other Authority**

Wright & Miller, 7A Federal Practice and Procedure §1766 (2d Ed.1986) Opinion
    withdrawn on reconsideration, 2008 WL 4667090 (Oct. 22, 2008) .......................................14

DEFENDANT'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
58024941.v1

# I.      INTRODUCTION

Plaintiff attempts to invent a putative nationwide class based on its receipt of one call placed to a telephone number that Plaintiff chose to forward to its cellular telephone, despite the lack of evidence showing any other call was made by non-party Triumph Merchant Solutions, LLC ("Triumph") on behalf of Total Merchant Services, LLC ("TMS") as opposed to any one of at least four different companies. To craft this fiction, Plaintiff's Motion for Class Certification ("Motion") relies upon unsupported allegations and false assumptions. Specifically, the Motion is predicated upon the mistaken assumption that all of the telephone calls placed by Triumph were placed on behalf of TMS using an automatic telephone dialing system ("ATDS") in violation of the Telephone Consumer Protection Act ("TCPA"). They were not, as repeatedly and clearly testified to by the corporate representative of Triumph. Plaintiff presents this Court with no competent material or evidence to establish the contrary.

Perhaps not surprising given the above, the Motion reveals Plaintiff's inability to establish either the Rule 23(a) or 23(b) prerequisites for class certification. Plaintiff presents this Court with no material or evidence to establish numerosity, commonality, typicality, or adequacy. Nor does Plaintiff present this Court with any material or evidence to establish predominance or superiority. Plaintiff's failure to do so cannot be condoned by the Court, particularly where, as here, Plaintiff not only has been granted three separate discovery and expert extensions to try to martial evidence in support of its unsupportable claims, but also admitted to destroying relevant evidence—namely, its contemporaneous notes concerning the alleged telephone calls. Plaintiff does not so much as cite to any expert analysis or otherwise in its feeble attempts to argue for class certification instead electing to rely upon Plaintiff's (and Plaintiff's counsel's) mere *ipse dixit*. To try to support the unsupportable, Plaintiff repeatedly mischaracterizes the record, at best, in an attempt to try to convince this Court that *all* calls placed by Triumph were placed on behalf of TMS. They were not, and Plaintiff is left taking this unsupportable position because of its inability to differentiate which calls placed by Triumph relate to which of the multiple other entities, each of which is separate and distinct from TMS and each of whom Triumph markets. As such, there can be no denying individual issues abound

DEFENDANT'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
58024941.v1

1    just to determine who does and who does not qualify for Plaintiff's indefinite class definition that

2    simply cannot include those who were never even called regarding TMS. Further, because the

3    primary relief sought by Plaintiff is monetary, class certification under Rule 23(b)(2) is improper

4    on its face. Accordingly, TMS respectfully requests the Court to deny the Motion.

5    **II.    FACTUAL BACKGROUND**

6              TMS does not make telephone calls to solicit potential businesses for its card processing

7    services and programs. It follows, and it is undisputed, that TMS does not use an ATDS or

8    prerecorded voice calls to do so. Rather, as even Plaintiff concedes, the marketing of those

9    services and programs at times was conducted by independent contractors ("Sales

10   Representatives") who have contracted with TMS by executing a Sales Representative

11   Agreement ("SRA"). *See* Declaration of Darren McCaffrey at ¶ 4, attached hereto as **Exhibit A.**

12   These Sales Representatives are permitted to choose their own methods of marketing so long as

13   those methods comply with the SRA. *See id.* at ¶ 17. One such Sales Representative is Total

14   Merchant Supplies, LLC ("Supplies") which is owned by Jason Heil, Christopher Heil, and

15   Nathan Aripez, and is a distinct entity from TMS. *See* Dkt. No. 75-3 (redacted Ex. C to Motion

16   for Class Cert.) (Sales Representative Agreement ("SRA") dated January 15, 2014; Dkt. No. 74

17   (unredacted Ex. C to Motion for Class Cert.); *see also id.* at Ex. D. TMS continues to maintain a

18   relationship with Supplies pursuant to the SRA with Supplies having submitted to TMS

19   merchant applications for inclusion in TMS's card processing services and programs as recently

20   as March 2021. Ex. A at ¶ 7. For reasons unknown to TMS, but believed to be related to a

21   "falling out" between the owners of Supplies, Jason Heil appears to be unaware that Supplies is

22   an active California limited liability company1 which continues to transact business with TMS.

23   *See* Deposition of Jason Heil at 39:19-24, excerpts of which are attached to the accompanying

24   Declaration of Lawren Zann ("Zann Declaration") as **Exhibit B**. Another such Sales

25   Representative is Triumph which entered into a non-exclusive relationship with TMS beginning

26   _____

27   [1] *See* Statement of Information (Limited Liability Company) (ca.gov) (last visited May 11,
     2021); Business Search - Business Entities - Business Programs | California Secretary of State
28   (last visited May 11, 2021).

1   in November 2018. *See* Ex. A at ¶ 10. Triumph and TMS adopted and incorporated the terms of

2   the SRA to govern their relationship. *See id.*; Deposition of Darren McCaffrey at 21:20-22:1,

3   78:11-80:9, excerpts of which are attached to the Zann Declaration as **Exhibit C**. Triumph and

4   Supplies are separate and distinct entities. *See* Ex. B at 16:23-25, 40:2-4, 41:17-21.The SRA

5   requires Sales Representatives "to adhere to all applicable laws, rules and regulations, including

6   but not limited to consumer protection laws" when marketing TMS' services and programs. *See*

7   SRA at § 4(a) *(*Dkt. No. 75-3 (redacted Ex. C to Motion for Class Cert.) at § 4(a); Dkt. No. 74

8   (unredacted Ex. C to Motion for Class Cert.); *see also id.* at § 4(h). It also requires Sales

9   Representatives to only use those "solicitation materials referencing TMS" that are either

10  "furnished by TMS" or that "receive TMS' prior written approval" when marketing TMS's

11  services and programs. *Id.* at § 1. Triumph did not seek the approval of TMS to use any

12  marketing materials that reference TMS, including telemarketing scripts, as required by the SRA;

13  and given the lack of any merchant applications submitted by Triumph to TMS, TMS would

14  have no knowledge Triumph was actively marketing TMS's services and programs, by telephone

15  or otherwise, in the first instance. *See* Ex. C at 33:20-34:2, 81:4-11; *see also id.* at 75:3-4.

16  Indeed, had Triumph sought the approval of TMS to use such telemarketing scripts as required

17  by the SRA, TMS not only would have investigated the manner in which Triumph sought to

18  place telephone calls, *see id.* at 81:17-82:1, 85:17-86:15, but ultimately would have said "no" to

19  the telemarketing, *see id.* at 36:2-6 ("If they ask to do other types of business, like telemarketing

20  and things like that, we always say no to that."). This is because TMS does not direct, encourage,

21  or authorize its Sales Representatives to telemarket, let alone telemarket using an ATDS or a

22  prerecorded voice. *See* Ex. A at ¶ 19. While TMS provided Triumph training on TMS's products

23  and services, TMS did not provide Triumph sales training. *See* Ex. C at 29:15-24; Ex. B at 33:6-

24  8. This is because TMS only enters into SRAs with those that have "industry experience." Ex. C

25  at 26:11-13. In addition to not seeking approval from TMS concerning telemarketing, Triumph

26  did not submit any merchant applications to TMS in the first instance. *See* Ex. A at ¶ 20; *see also*

27  Ex. C at 75:3-4. And because Triumph did not submit any merchant applications to TMS in the

28  first instance, Triumph did not qualify to receive, and certainly did not receive, any sales leads

DEFENDANT'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
58024941.v1

from, by, or through TMS. *See* Ex. A at ¶¶ 20-21, 23; Ex. B at 33:23-24, 114:14-15; Ex. C at 84:19-85:4. TMS simply had no reason to know Triumph was engaging in alleged telemarketing such that TMS could have attempted to investigate further.

The record is clear that Triumph solicited businesses in an attempt to sell merchant services on behalf of at least five different entities from July 2018 through the present: Harbor Touch, First Data, Elavon, High Risk, and TMS (the "Five Entities"). *See* Ex. B at 21:12-9, 93:2-18, 110:9-11. In so doing, Triumph used the Vicidial platform ("Vicidial") to place calls on behalf of each of the Five Entities. *See id.* at 57:2-20, 115:20-24. And in placing these calls, Triumph's practice was to represent itself to a called party as "merchant services" and not as TMS or any of the other Five Entities. *See* Ex. B at 34:12-14, 29:15-17, 101:11-103:7. Triumph cannot differentiate from its call records what calls, if any, were placed on behalf of which of the Five Entities. *See id.* at 92:24-93:4. This makes sense as only if a potential deal with a qualified business fit the parameters of one of the Five Entities' card processing services and programs would Triumph attempt to sell the card services and programs of such entity. *See id.* at 26:13-15, 101:4-8 ("When we get a deal, and I'm not closing the deal, it's obviously one of the agents, they would close it and then they would place it wherever they saw fit at the time of the conversation for the client."). Stated differently, Triumph, and Triumph alone, made the decision as to which of any of the Five Entities' card processing services and programs it sought to solicit was offered to a business based upon the stated needs of the business. *See id.* at 102:6-9. Triumph did not communicate with TMS concerning Triumph's business solicitation process, *see id.* at 29:24-30:8, and TMS was not involved in the day-to-day operations of Triumph, *see id.* at 51:7-9. TMS neither hired nor fired Triumph employees. *See id.* at 115:9-12. Nor did TMS pay for any equipment used by Triumph, *see id.* at 113:21-114:7, or the salaries or benefits of Triumph employees, *see id.* at 113:14-20. TMS did not control the hours in which those employees worked, *see id.* 114:24-115:5, and did not require Triumph to submit "a certain number of sales," *see id.* 51:17-19.

Triumph placed calls to lists of business leads purchased from InfoFree that Triumph uploaded into its Vicidial. *See* Ex. B at 66:11-67:16. TMS did not direct Triumph to InfoFree.

DEFENDANT'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
58024941.v1

*See id.* 89:22-24. Nor did TMS provide leads to Triumph to call. *See id.* at 114:14-15. Triumph used the same leads it purchased from InfoFree to place calls on behalf of each of the Five Entities. *See id.* at 115:25-116:19. The end result being the same: the Vicidial and lead lists used to place calls were not exclusive to TMS. *See id.* at 116:20-23. Triumph stopped soliciting businesses for card processing services and programs approximately two (2) years ago without having submitted a single merchant application to TMS. *See id.* at 24:12-16; *see also* Ex. A at ¶ 20.

Plaintiff is a prolific filer of TCPA lawsuits which has filed over one hundred lawsuits. *See* Deposition of Fred Heidarpour as corporate representative of Plaintiff at 255:7-10, excerpts of which are attached to the Zann Declaration as **Exhibit D.** Plaintiff's Complaint alleges the receipt of five telephone calls in violation of the TCPA: on November 5, November 12, and 14, on March 22, and on June 24, 2019. *See* Complaint (Dkt. No. 1) at ¶¶ 26-31. These calls are alleged to have been placed to three (3) different telephone numbers: (925) 828-1080 ("-1080"), (209) 383-3803 ("-3803"), and (510) 534-1636 ("-1636"). *See id.* at 49:1-13; *see also* Complaint at ¶¶ 26-31. Plaintiff does not have a cellular telephone unique to any of these alleged telephone numbers; rather each of the alleged telephone numbers called was forwarded to a cellular telephone owned by Plaintiff with the number (510) 385-7447 such that if Plaintiff had not turned on the call forwarding function, no cellular telephone would have received the call. *See* Ex. D. at 55:25-57:16; 63:15-20. Of the five calls Plaintiff alleges, only one is reflected in Triumph's telephone records: a June 24, 2019 telephone call to -1080. *See* Ex. B. at 80:2-19. As a result, four out of the five alleged calls and two out of the three alleged telephone numbers are not reflected in Triumph's call records. While those same call records reflect a telephone call to -1080 on October 8, 2019, *see id.* at 80:20-25, that number is neither alleged in Plaintiff's Complaint nor did Plaintiff seek to amend its Complaint to allege claims emanating from receipt of the supposed October 8, 2019 telephone call from Triumph, *see* Complaint.

Plaintiff has, at a minimum, fourteen different telephone numbers registered to its AT&T account. *See* Plaintiff production at ABANTE000001 attached to the Zann Declaration as **Exhibit E**. Those fourteen different telephone numbers are associated with six different names.

DEFENDANT'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
58024941.v1

1    *See id.* ("Avante Plumbing," "Fred Heidmarpour," "Fred Heidarpour," "Abante Rooter &

2    Plumbing," "Abante Rooter," and "Franklin Marin"). The principals of Plaintiff also use

3    additional names that are not reflected on its AT&T account, including "fred poor," "Sarday,"

4    and "Ms. Sarday." *See* Plaintiff production at ABANTE000419-000428, attached to the Zann

5    Declaration as **Exhibit F**. Plaintiff claims it receives "10-20 calls a day from telemarketers." Ex.

6    D at 71:3-5. As a result, Plaintiff does not have an independent recollection of the specific dates

7    or subject matter concerning the telephone calls alleged in its Complaint. *See, e.g., id.* at 70:16-

8    21, 88:25-89:3, 105:2-106:1, 131:11-18, 134:21-135:1. Instead, Plaintiff relies solely upon its

9    allegations and discovery responses to inform it of the dates and contents of the alleged

10   telephone calls. *See id.* at 76:3-11. Plaintiff cannot even advise with certainty who answered the

11   alleged telephone calls and spoke with Triumph. *See, e.g.,* 141:1-22. Plaintiff only learned of

12   Triumph's attempt to sell a TMS product "through the e-mail we received," which email

13   followed the placement of any telephone call in the first instance. *See id.* at 172:3-10; *see also id.*

14   at 220:18-23, 248:9-17. This is entirely consistent with Triumph's business practice of

15   determining which of the Five Entities' services and programs Triumph would attempt to solicit

16   only after learning of the needs of the business. *See* Ex. B. at 26:13-15, 101:4-8. Plaintiff took

17   notes of each alleged call, but, shockingly, destroyed those notes after relaying their contents to

18   its attorneys. *See, e.g.,* Ex. D at 76:13-77:21, 83:16-19, 84:17-85:7, 135:20-136:9.

19          Plaintiff also testified to not knowing if it amended its Complaint. *See id.* at 170:20-22.

20   Plaintiff was unaware of serving subpoenas on Triumph, the documents produced by Triumph in

21   response to a subpoena, the status of discovery and depositions, or the discovery Plaintiff was

22   reported by its counsel to have actually provided in this litigation—instead, Plaintiff simply

23   relies upon its counsel to develop and prosecute Plaintiff's claims. *See id.* at 166:12-16, 170:3-

24   15, 172:12-19, 179:1-2, 219:9-13. Plaintiff does not so much as know why it did not sue

25   Triumph, the calling party—again, Plaintiff defers to its counsel to make those decisions. *See id.*

26   at 171:2-5. Indeed, Plaintiff not only failed to appear at either of the two mediation sessions that

27   occurred in this litigation on September 22, 2020 and October 13, 2020, but was not even aware

28   mediation already occurred in this litigation. *See id.* at 284:23-285:14.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.      DISCUSSION

### A.      Legal Standard Governing Class Certification

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). To come within this exception, a representative plaintiff must "affirmatively demonstrate his compliance" with all the elements of Rule 23, subject to a "rigorous analysis" by the Court. *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). Rule 23 "does not set forth a mere pleading standard." *Id.* Rather, a party seeking to maintain a class action "must be prepared to prove that…*in fact*" Rule 23(a)'s prerequisites of numerosity, commonality, typicality, and adequacy-of-representation have been satisfied, *Wal-Mart*, 564 U.S. at 350 (emphasis added), and must satisfy through "*evidentiary proof* at least one of the provisions of Rule 23(b)." *Comcast*, 133 S. Ct. at 1432 (emphasis added); *see also Silver v. Pa. Higher Edu. Assistance Agency*, No. 14-cv-00652-PJH, 2020 WL 607054, at *5 (N.D. Cal. Feb. 7, 2020) ("The party seeking class certification bears the burden of proof in demonstrating that it has satisfied all four Rule 23(a) requirements and that their action falls within one of the three types of actions permitted under Rule 23(b)."); *Chinitz v. NRT West, Inc.*, No. 18-cv-06100-NC, 2019 WL 4142044, at *2 (N.D. Cal. Aug. 30, 2019) ("As the party seeking certification, the plaintiff bears the burden of demonstrating compliance with Federal Rule of Civil Procedure 23 by a preponderance of the evidence."). The Court's rigorous analysis of a plaintiff's attempt at compliance with Rule 23, in turn, will overlap with the merits of the underlying claim. *Wal-Mart*, 564 U.S. at 351; *id.* (citing *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 160 (1982)) ("the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."). Courts also require a plaintiff seeking class certification to demonstrate that a class is "'adequately defined and clearly ascertainable' to be certified." *Bee, Denning, Inc. v. Capital Alliance Group*, 310 F.R.D. 614 (S.D. Cal. 2015).

### B.      Plaintiff Cannot Satisfy Rule 23(a)'s Prerequisites for Class Certification

#### 1.      Plaintiff fails to proffer sufficient evidence establishing numerosity

Rule 23 requires a proposed class to be so numerous that joinder of all members is

- 7 -

DEFENDANT'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

58024941.v1

1   impracticable. *See* Fed. R. Civ. P. 23(a)(1). While there is no fixed number that satisfies

2   numerosity, courts generally find a class greater than 40 members to meet such requirement. *Ca.*

3   *for Disability Rights, Inc. v. Ca. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008).

4          The Court ordered the parties to exchange expert witness disclosures by June 25, 2020,

5   and to complete class discovery, including expert discovery, by August 28, 2020. *See* Dkt. No.

6   37. On June 18, 2020, Plaintiff sought to extend "all remaining deadlines," including expert

7   witness disclosures and discovery deadlines, by 90 days. *See* Dkt. No. 45. The Court so extended

8   the deadlines. *See* Dkt. No. 50. Then, on September 14, 2020, Plaintiff again sought to extend

9   "all remaining discovery deadlines by three (3) months." *See* Dkt. No. 57. The Court, again, so

10  obliged. *See* Dkt. No. 59. Finally, on December 7, 2020, Plaintiff sought to extend "all remaining

11  deadlines by two (2) months." *See* Dkt. No. 71. For a third time, the Court granted Plaintiff's

12  request. *See* Dkt. No. 72. As a result, Plaintiff's expert disclosure deadline was scheduled for

13  March 8, 2021, and the discovery deadline was scheduled for April 30, 2021. *See id.* Despite the

14  Court extending these deadlines on three separate occasions, noticeably absent from Plaintiff's

15  Motion is any expert analysis concerning numerosity (or any other issue) or any purported

16  methodology to establish numerosity with competent evidence. This is unsurprising as the only

17  purported "expert report" served by Plaintiff is silent concerning any analysis or conclusions

18  concerning the presence of any cellular telephone numbers contained in Triumph's calling

19  records.

20          Instead, Plaintiff seeks to *solely* rely upon its attorney's own review of an unauthenticated

21  website consisting of pure hearsay to tersely conclude "Triumph placed unlawful autodialed calls

22  to 37,220 individual cellular telephone numbers" based upon "Plaintiff's

23  counsel…[identification of] 56,979 calls, which were placed to 37,220 individual cellular

24  telephones." Motion at §III(B)(1); Declaration of Patrick H. Peluso [Dkt. No. 75-1] at ¶ 8.

25  Plaintiff's counsel's advocacy is insufficient, particularly where, as here, discovery is closed and

26  Plaintiff's expert disclosure deadline has long passed. The result: Plaintiff has not met (and

27  cannot meet) its burden of offering sufficient evidence to demonstrate numerosity for the

28  proposed class. *See, e.g., Chinitz*, 2019 WL 4142044, at *3 (finding Plaintiff "has not offered

DEFENDANT'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
58024941.v1

1    sufficient evidence to demonstrate numerosity for the proposed [classes]" where Plaintiff relied

2    on his expert's report that, *inter alia*, "does not provide any opinion regarding the number of

3    individuals that may be part of the [classes.]").

4            In anticipation of Plaintiff's attempt to seek to avail itself of the Ninth Circuit's

5    evidentiary standards at class certification, it must not be overlooked that "in evaluating a motion

6    for class certification, a district court need only consider 'material sufficient to form a reasonable

7    judgment on each [Rule 23(a)] requirement." *Sali v. Corona Regional Medical Center*, 909 F.3d

8    996, 1005 (9th Cir. 2018) (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)). And

9    the inquiry into such material's "ultimate admissibility should go to the weight that evidence is

10   given at the class certification stage." *Id.* at 1006. Here, Plaintiff failed to provide this Court any

11   sufficient material, admissible or otherwise, to form a reasonable judgment on numerosity,

12   particularly where, as here, Triumph placed calls on behalf of the Five Entities, each separate and

13   distinct from the others, and Plaintiff is unable to distinguish which calls, if any calls, were

14   placed on behalf of TMS, let alone which of those calls, if any of those calls, were placed to

15   cellular telephones.

16           "When conducting its 'rigorous analysis' into whether the Rule 23(a) requirements are

17   met, the district court need not dispense with the standards of admissibility entirely. *The court

18   may consider whether the plaintiff's proof is, or will likely lead to, admissible evidence*." *Id.*

19   (emphasis added). Plaintiff had ample opportunity to marshal that non-existent proof, and

20   because all pertinent deadlines have since closed, Plaintiff cannot (and does not) present this

21   Court with any material that will likely lead to admissible evidence to establish anyone other

22   than Plaintiff received a telephone call from Triumph on a cellular telephone, whether

23   purportedly on behalf of TMS or otherwise.[2] Plaintiff simply fails to meet its burden of being

24   prepared "to prove that there are in fact sufficiently numerous parties," *Wal-Mart*, 564 U.S. at

25   350, and this Court should give no weight to Plaintiff's counsel's bald assertion lacking in proof.

26

27   ───────────────

28   [2] For this same reason, Plaintiff and its counsel cannot possibly be considered adequate
     representatives to represent the interests of a supposed "37,220" member class (as unilaterally
     declared by Plaintiff's counsel).

DEFENDANT'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
58024941.v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2. Plaintiff fails to proffer sufficient evidence establishing commonality

Rule 23 requires questions of law or fact common to the class. *See* Fed. R. Civ. P. 23(a)(2). To do so, a plaintiff's claim "must depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "What matters to class certification…is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* "[W]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Silver*, 2020 WL 607054, at * 6 (quoting *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)).

Plaintiff asserts four "common issues will drive the instant litigation, including whether TMS can be held liable for the calls that Triumph made on its behalf, whether the dialing equipment utilized to place the telemarketing calls constitutes an ATDS, whether Triumph or Defendant obtained consent from any of the class members, and whether TMS acted willfully." Motion at § III(B)(2). Each one of these supposed common issues is predicated upon the assumption that all calls placed by Triumph were placed on behalf of TMS. This assumption has no basis in fact.

Jason Heil, as the corporate representative of Triumph, testified that Triumph placed calls on behalf of the separate and distinct Five Entities from July 2018 through the present, *see* Ex. B at 21:12-24; 101:11-103:7 (confirming Triumph's business practice was to call a merchant, identify itself as "merchant services," inquire into the credit card processing needs of the merchant, and, depending upon those needs, determine which one of the Five Entities could provide the most cost effective services to satisfy the merchant's needs). Triumph is unable to determine, which calls, if any, solicited businesses to purchase the services of TMS as opposed to any of the other Five Entities. *See id.* at 92:24-93:4. Plaintiff presents no evidence to establish otherwise. This is unsurprising as Triumph, and Triumph alone, made the decision as to which of

1   the Five Entities could best satisfy the business' needs based upon the content of Triumph's

2   communication with said business as opposed to some objective factor known to Triumph prior

3   to placing the call. *See id.* at 102:6-9 (confirming "it's Triumph's decision as to which credit card

4   processing company to place the merchant with"). Indeed, the sheer fact Triumph did not submit

5   a single merchant application to TMS belies Plaintiff's underlying assumption that all calls

6   reflected in Triumph's call records were placed on behalf of TMS. That is a matter of common

7   sense.

8       Plaintiff simply does not (and cannot) meet its burden to establish commonality based on

9   the overwhelming nature of individual inquiries this Court would have to entertain to first

10  determine what calls, if any, Triumph placed on behalf of TMS. Only once the Court makes that

11  initial determination could it even attempt to endeavor to determine the supposed common

12  issues: if "the question [of] agency…can be proven using common evidence"[3], Motion at §

13  III(B)(2)(a); "whether the dialing equipment utilized by Triumph to place the calls in question

14  qualifies as an ATDS,"[4] *id.* at § III(B)(2)(b), "whether any of the class members provided prior

15  express written consent to be called,"[5] *id.* at § III(B)(2)(c), and "whether TMS acted willfully,"

16  *id.* at § III(B)(2)(d). Simply put, none of the supposed common issues can be resolved in one

17  stroke as the Court would need to know which calls placed by Triumph implicate TMS in the

18  first instance. Plaintiff provides the Court with no assistance in this regard. As a result, Plaintiff's

19

20  [3] Without any semblance of proof, Plaintiff declares "consumers were told *the calls* were made

21  on behalf of TMS, and TMS knew about *the calls*." *See* Motion at § III((B)(2)(a) (emphasis added). These are blatant misrepresentations. *See* Ex. B 34:12-14 (confirming Triumph would

22  not use TMS's name in marketing, but rather would use the name "merchant services"); 29:24-30:8 (confirming Triumph did not communicate with TMS concerning Triumph's business

23  solicitation process); 51:7-9 (confirming TMS was not involved in the day-to-day operations of Triumph); *see also id.* 101:11-103:7. Notwithstanding, what are "the calls" that Plaintiff

24  references and how does Plaintiff intend to establish "the calls" were placed on behalf of TMS as opposed to any of the other Five Entities?

25  [4] The only way to determine the "calls in question" is to first determine which calls were

26  placed on behalf of TMS as opposed to any of the other Five Entities.

27  [5] The class is defined in reference to the substance of the call ("promoting TMS" or "purchase of TMS product or service"). At the risk of repetition, the only way to determine which call

28  relates to the promotion of TMS or the purchasing of a TMS service is to engage in an individual inquiry of every putative class member.

attempt to establish commonality cannot withstand the Court's "rigorous analysis."

### 3.   Plaintiff fails to proffer sufficient evidence establishing typicality

Rule 23 requires the claims of the named plaintiff to be typical of those of the proposed class. *See* Fed. R. Civ. P. 23(a)(3). "The test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 518 (9th Cir. 2018).

In support of typicality, Plaintiff, again and at best, distorts the record. Specifically, Plaintiff states "everyone received unwanted autodialed calls to his cellular telephone from Triumph" and "the calls were placed to market TMS's credit card processing system." Motion at § III(B)(3). As already shown, Plaintiff has not met (and cannot meet) its burden to establish anyone other than Plaintiff received a call on "his cellular telephone." *See* § III(C)(1), *supra*. Nor has (or can) Plaintiff establish any calls made by Triumph to any of the putative class members marketed "TMS's credit card processing system" as opposed to those of any of the other Five Entities. *See* § III(C)(2), *supra*. Indeed, Plaintiff only believes it received a call from Triumph on June 24, 2019 concerning TMS because of a subsequent email it received—not from the actual content of the call. *See* Ex. D at 172:3-10 (Plaintiff confirming it only learned of Triumph's attempt to sell a TMS product "through the e-mail we received"). However, Plaintiff has no independent recollection of the alleged telephone calls or the contents of those calls (4 of which are not even reflected in Triumph's calling records), which is not surprising as Plaintiff's corporate representative testified he destroyed notes taken of such alleged calls.

Further, as the Motion concedes, Plaintiff's contact information was obtained by Triumph from InfoFree in the form of lead lists that Triumph uploaded into the Vicidial. *See* Motion at § II, p.5. This practice is directly impacted by the Supreme Court's recent decision in *Facebook, Inc. v. Duguid* that answered the question of "whether [the definition of an 'automatic telephone dialing system' as defined by the TCPA] encompasses equipment that can 'store' and dial telephone numbers, even if the device does not 'use a random or sequential number generator'" in the negative. 141 S. Ct. 1163, 1167 (2021). Indeed, while Plaintiff's telephone number was

1   uploaded via a lead list to Triumph's Vicidial, not all other putative class members' telephone

2   numbers were uploaded via a list. Rather, those other putative class members' telephone

3   numbers were individually input by Triumph into its Vicidial upon such putative class members'

4   direction to be called at such numbers. *See* Ex. B. at 104:23-105:6 (advising such scenario

5   "happens all the time"). Triumph is unable to differentiate between numbers entered into its

6   Vicidial via an uploaded list obtained through InfoFree or via an individual entry input upon the

7   request of putative class members. *See id.* at 105:11-20. As a result, additional differences exist

8   between the putative class, including whether, and which, putative class members consented to

9   receive calls, if any.

10       Even more, typicality can only be determined by reference to the other class members.

11   Yet, Plaintiff is unable to establish the existence of any putative class member as Plaintiff

12   incorrectly assumes, despite the factual record establishing otherwise, that all telephone calls

13   placed by Triumph were telephone calls concerning TMS. This is hardly the case. Plaintiff's

14   inability to establish the existence of any individual or entity who received a telephone call by

15   Triumph that sought to solicit TMS' products and services cannot possibly establish all claims of

16   the putative class arise out of the same alleged conduct of TMS. At least not without engaging in

17   a painstaking, individual inquiry of each putative class member. Plaintiff failed to meet its

18   burden under the typicality requirement of Rule 23.

19           **4.    Plaintiff and his counsel are not adequate representatives of the
                     putative class**

20

21       Rule 23 requires the named plaintiff to fairly and adequately protect the interests of the

22   class. *See* Fed. R. Civ. P. 23(a)(4); *Berman v. Freedom Financial Network, LLC,* 400 F. Supp. 3d

23   964 (2019). This means that the named plaintiff and his counsel must "not have any conflicts of

24   interest with other class members and will prosecute the action vigorously on behalf of the

25   class." *Id.*; *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Due process

26   "requires that the named plaintiff *at all* times adequately represent the interest of the absent class

27   members." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (emphasis added). To do

28   so, "Rule 23(a)(4) requires that the class representative be genuinely involved in the litigation,

1   not just a figurehead 'lending his name to a suit controlled entirely by the class attorney.'"

2   *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 7748874, at *2

3   (N.D. Cal. July 7, 2008) (quoting *Beck v. Status Game Corp.*, 1995 WL 422067, at *6 (S.D.N.Y.

4   July 14, 1996), *quoting* Wright & Miller, 7A Federal Practice and procedure § 1766 (2d Ed.

5   1986)) *opinion withdrawn on reconsideration*, 2008 WL 4667090 (Oct. 22, 2008). A mere

6   "stand-in" plaintiff, "selected by lawyers to fill a required role," is insufficient. *Id.* (citing *In re*

7   *Quarterdeck Office Systems, Inc. Sec. Litig.*, 1993 WL 623310, at *6 (C.D. Cal. 1993)).

8           Plaintiff's conduct reveals it has little motivation to actively participate in this case.

9   Plaintiff is unaware of any facts concerning, or investigation into, Triumph's calling practices, let

10  alone the substance of the discovery responses provided by Triumph in response to a subpoena

11  issued by Plaintiff's attorneys in this litigation. Indeed, Plaintiff cannot explain why it did not

12  name Triumph as a defendant in this litigation despite the fact that Triumph is the party that

13  actually called Plaintiff and, thus, could be held directly liable for any of its calling activity to the

14  extent that activity is determined to be in violation of the TCPA. Nor does Plaintiff have

15  knowledge of the factual accuracy or inaccuracy of allegations asserted in the Complaint by its

16  attorneys. Instead, Plaintiff has blatantly shirked any responsibilities it may have in vigorously

17  prosecuting this case and outsourced those responsibilities to its cabal of five attorneys who have

18  the greatest financial interest in the outcome of this litigation, particularly where, as here,

19  Plaintiff has not paid any money to its attorneys in exchange for their representation. *See* Ex. D

20  at 281:22-25

21          In further and egregious derelict of its responsibilities, Plaintiff failed, *on two occasions*,

22  to attend mediation despite the fact each mediation was held remotely. This failure to attend

23  mediation, *on two occasions*, renders Plaintiff inadequate to serve as the putative class

24  representative particularly where "during settlement negotiations the putative class

25  representatives' primary duty' is to ensure that class counsel do not 'sacrifice the interests of the

26  class in order to maximize [counsel's] own recovery.'" *Id.* at *4 (quoting *In re Cal. Micro*

27  *Devices Sec. Litig.*, 168 F.R.D. 257 (N.D. Cal. 1996)). Plaintiff's lack of commitment to spend

28  the necessary time to prosecute this case in the best interests of the putative class reveal it is not

1   an adequate putative class representative.

2       **C.**    **Plaintiff Cannot Satisfy Rule 23(b)'s Prerequisites for Class Certification**

3       Plaintiff seeks to certify a hybrid class under Rule 23(b)(2) and 23(b)(3). Class

4   certification is improper under either.

5               **1.**    **Plaintiff fails to satisfy Rule 23(b)(2) because Plaintiff seeks to recover**

6                   **monetary damages and Plaintiff cannot show that TMS has acted or refused to act on grounds that apply to the putative class**

7       Rule 23(b)(2) permits class certification when "the party opposing the class has acted or

8   refused to act on grounds that apply generally to the class, so that final injunctive relief or

9   corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

10   23(b)(2). It "does not authorize class certification when each class member would be entitled to

11   an individualized award of monetary damages." *Wal-Mart, Inc.*, 131 S. Ct. at 2557 (holding that

12   certification is improper for claims for "individualized relief," including claims that entail an

13   "individualized award of monetary damages."); *see also Connelly v. Hilton Grand Vacations*

14   *Co., LLC*, 294 F.R.D. 574, 577 (S.D. Cal. 2013). Indeed, "class certification under Rule 23(b)(2)

15   is appropriate only where the primary relief sought is declaratory or injunctive." *Silver*, 2020 WL

16   607054, at *17.

17       Quite tellingly, Plaintiff pays short shrift to its attempt to certify a class pursuant to Rule

18   23(b)(2) – devoting less than one full page in support of its argument. Perhaps because Plaintiff

19   realizes such a request to certify the putative class is improper. It is unmistakable that Plaintiff's

20   Complaint seeks statutory damages for each alleged TCPA violation. *See* Complaint at ¶¶ 59-60,

21   70-71, 85-86; *id.* at Wherefore Clause no. 2. As made clear by its allegations, the primary relief

22   sought is not declaratory or injunctive, but rather monetary. *See Silver*, 2020 WL 607054, at *17

23   ("Because a TCPA plaintiff who seeks an award of statutory damages for each alleged TCPA

24   violation is primarily interested in monetary damages, the primary relief sought by plaintiff is not

25   injunctive."). As a result "certification of the proposed class under Rule 23(b)(2) is improper on

26   this ground alone." *Id.*

27       In addition, Plaintiff does not (and cannot) show that TMS acted or refused to act on

28   grounds that apply uniformly to all putative class members. Particularly as this case does not

DEFENDANT'S MPA IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
58024941.v1

1    concern a policy or practice by TMS that impacts the putative class in any way. Rather, this case

2    involves the policy or practice of Triumph and its exercise of its business practices and discretion

3    to determine its methods of marketing the services and products of the Five Entities, each of

4    which is separate and distinct from the other. This practice and discretion is unique to Triumph,

5    and Plaintiff does not (and cannot) present this Court with any evidence or materials establishing

6    any other Sales Representatives engage in the same or similar practice and discretion. Plaintiff's

7    assertions to the contrary are unavailing, and its request for class certification pursuant to

8    23(b)(2) should be denied.

9         **2.**     **Plaintiff fails to satisfy Rule 23(b)(3) because individualized questions**
     **predominate over any questions that might be common to the putative**
10   **class and the case is unmanageable**

11        **a)**     **Individualized issues predominate**

12       "The predominance inquiry under Rule 23(b)(3) tests whether proposed classes are

13   sufficiently cohesive to warrant adjudication by representation." *In re Hyundai and Kia Fuel*

14   *Economy Litig.*, 926 F.3d 539, 557 (9th Cir. 2019). It "focuses on whether the common questions

15   present a significant aspect of the case and they can be resolved for all members of the class in a

16   single adjudication." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d at 557; *see also Blair*

17   *v. CBE Group, Inc.*, 309 F.R.D. 621, 628 (S.D. Cal. 2015) (quoting *Wang v. Chinese Daily*

18   *News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013)) ("The predominance analysis under Rule 23(b)(3)

19   focuses on the relationship between the common and individual issues in the case and tests

20   whether proposed classes are sufficiently cohesive to warrant adjudication by representation").

21   "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast*,

22   133 S. Ct. at 1432. "If the main issues in a case require separate adjudication of each class

23   member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Blair*,

24   309 F.R.D. at 628 (quoting *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th

25   Cir. 2001)); *Tyson Foods v. Bouphakeo*, 136 S. Ct. 1036, 1045 (2016) ("Rule 23(B)(3) requires

26   courts to "give careful scrutiny to the relation between common and individual questions in a

27   case."). "In TCPA actions, the predominance inquiry is satisfied only when Plaintiffs 'advance a

28   viable theory employing generalized proof to establish liability with respect to the class

- 16 -         Case No. 3:19-cv-05711-EMC

1    involved.'" *Id.* (quoting *Connelly*, 294 F.R.D. at 577).

2          Plaintiff fails to advance a viable theory employing generalized proof to establish

3    classwide liability. As the record reveals, Triumph placed calls on behalf of any number of the

4    Five Entities, each of which is separate and distinct from the others. And neither Plaintiff, nor

5    Triumph, have (or can) differentiate what calls, if any, were placed on behalf of TMS as opposed

6    to any of the other Five Entities. Indeed, the only way for the Court to determine whether a call

7    was placed to "promot[e] TMS' products or services," as set forth in the putative class definition,

8    is to engage in an individual inquiry of each putative class member to determine the contents of

9    the actual telephone call placed by Triumph. Even Plaintiff is unable to advise what was

10   "promot[ed]" to Plaintiff by Triumph on the telephone, and only surmises TMS's services and

11   program were so "promot[ed]" based on Plaintiff's receipt of an email from Triumph that

12   referenced TMS. *See* Ex. D at 172:3-10 (Plaintiff learned of Triumph's attempt to sell a TMS

13   product "through the e-mail we received").

14         As already addressed, Plaintiff cannot establish questions of law or fact common to the

15   putative class and susceptible to resolution by class wide proof. *See* § III(B)(2), *supra*. As a

16   result, class certification is improper. But assuming *arguendo* common issues did somehow

17   exist, those common issues would be dwarfed at trial by the individualized inquiries the Court

18   would have to undertake to determine what was "promote[ed]" by Triumph during its telephone

19   calls. Plaintiff appears to acknowledge this shortcoming by also asserting a speculative and

20   subjective class definition that seeks to define a class, in part, by what "could" have occurred as

21   a result of Triumph's calling activity. *See* Motion at §1, p. 7 ("…for the purpose of promoting

22   TMS's produces or services, *or that could have resulted in the purchase of a TMS product or*

23   *service*…") (emphasis added). This alternative and speculative portion of the class definition

24   fares no better.

25         To determine what "could" have been sold on any telephone call requires the Court to

26   analyze the subjective needs of each of the respective call recipients. After all, Triumph would

27   have only sought to sell TMS's services and products, as opposed to those of any of the other

28   Five Entities, based upon the needs of the respective call recipients and whether those needs fit

1   the criteria of TMS' services and products. *See* Ex. B at 26:13-15 ("Triumph would, if signed a

2   deal that would fit the parameters of Total Merchant, then we would send it to Total Merchant.");

3   *see also id.* at 101:16-102:9. As a result, Triumph was not placing any calls on behalf of TMS,

4   but rather was placing calls to sell card processing services and programs on Triumph's own

5   behalf. And, only if Triumph "signed a deal" that Triumph believed was suitable for the services

6   and programs of TMS, as opposed to those of any of the other Five Entities, would Triumph

7   submit that "deal" to TMS. Even then, the submission of a "deal" to TMS was far from certain to

8   meet Triumph's belief as to what was suitable for TMS's services and programs. *See id.* at

9   29:11-17 ("…if it wasn't approved [by TMS] then we would take it somewhere else to get it

10  approved."). Under either alternative class definition, individual issues predominate rendering

11  the action unsuitable for class treatment.

12              **b)       The class is unmanageable**

13              As noted by Plaintiff, "district courts have required a showing that the class to be

14  certified is ascertainable." *Chinitz v. Intero Real Estate Services*, No. 18-cv-05623-BLF, 2020

15  WL 73911299, at *7 (N.D. Cal. July 22, 2020) (citing *Xavier v. Philip Morris USA, Inc.*, 787 F.

16  Supp. 2d 1075, 1089 (N.D. Cal. 2011); *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 889-90

17  (N.D. Cal. 2015)). To be ascertainable, the class definition must be "'definite enough so that it is

18  administratively feasible for the court to ascertain whether an individual is a member' before

19  trial, and by reference to 'objective criteria.'" *Id.* (quoting *Daniel F. v. Blue Shield of Cal.*, 305

20  F.R.D. 115, 122 (N.D. Cal. 2014)). Doing so "makes clear 'whose rights are merged into the

21  judgment, that is, who gets the benefit of any relief and who gets the burden of any loss, and

22  avoids subsequent litigation over who was in the class in the first place.'" *Id.* (quoting *Ehret*, 148

23  F. Supp. 3d at 889); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir.

24  2017) (quoting Fed. R. Civ. P. 23(b)(3)(D)) ("Rule 23(b)(3) requires a court certifying a class

25  under that section to consider 'the likely difficulties in managing a class action.'"). Ninth Circuit

26  guidance counsels that the superiority prong lends itself to considering this issue. *See Walker v.

27  Life Ins. Co. of the SW*, 953 F.3d 624, 632 (9th Cir. 2020) ("the superiority criterion already

28  mandates considering 'the likely difficulties in managing a class action'").

1    Plaintiff's putative class definition is anything but definite. Indeed, the class definition is

2 speculative on its face as the term "could" simply indicates a possibility. *See* Motion at §1, p. 7

3 ("…for the purpose of promoting TMS's produces or services, or *that could have resulted in the*

4 *purchase of a TMS product or service*…") (emphasis). As discussed, the Court would have to

5 scrutinize the content of each telephone call placed by Triumph to determine, *inter alia*, whether

6 the business needs of the call recipient were suitable for TMS' services and products such that

7 any "deal" reached by Triumph *could* be submitted to TMS in the first place as opposed to any

8 one of the other Five Entities. *See* § III(C)(2)(i), *supra*. To believe Plaintiff, it is "easily

9 manageable" to do so for the, in Plaintiff's counsel's opinion, 56,979 telephone calls to 37,220

10 call recipients. Yet Plaintiff presents no feasible means for this Court to embark upon such an

11 undertaking, let alone objective criteria the Court can rely upon in certifying the putative class.

12 This Court should not be forced to make up for Plaintiff's shortcomings in prosecuting its case

13 that render a putative class action inefficient and ineffective.

14 **IV.    CONCLUSION**

15    For the foregoing reasons, Total Merchant Services, LLC respectfully requests the Court

16 to deny Plaintiff's Motion for Class Certification and grant such other and further relief to TMS

17 it deems appropriate.

18

19 Date:    May 10, 2021                GREENSPOON MARDER LLP
                                        BETH-ANN KRIMSKY (PRO HAC VICE
20                                      ADMISSION)
                                        LAWREN A. ZANN (PRO HAC VICE
21                                      ADMISSION)

22                                      NOSSAMAN LLP
                                        JAMES H. VORHIS
23

24                                      By:  /s/ James H. Vorhis
                                        ─────────────────────────
25                                            James H. Vorhis

26                                      Attorneys for Defendant TOTAL
                                        MERCHANT SERVICES, INC.

27

28

# EXHIBIT A

GREENSPOON MARDER LLP
BETH-ANN KRIMSKY (*pro hac vice admission*)
beth-ann.krimsky@gmlaw.com
LAWREN A. ZANN (*pro hac vice admission*)
lawren.zann@gmlaw.com
200 East Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954.527.2427
Facsimile: 954.333.4027

NOSSAMAN LLP
JAMES H. VORHIS (SBN 245034)
jvorhis@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:    415.398.3600
Facsimile:    415.398.2438

Attorneys for Defendant TOTAL MERCHANT SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC, a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOTAL MERCHANT SERVICES, LLC., a Delaware limited liability company,<br><br>Defendant. | Case No:  3:19-cv-05711<br><br>**DECLARATION OF DARREN MCCAFFREY IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Date: June 10, 2021<br>Time:1:30 p.m.<br>Dept: Courtroom 5, 17th Floor<br><br>Date Action Filed: September 11, 2019 |

I, Darren McCaffrey, declare as follows:

1.      I am the director of partner relations at Total Merchant Services, LLC ("TMS"). I am over the age of 18 and can competently testify to the matters set forth herein if called to do so.

2.      TMS is a merchant processing company that provides merchant accounts and card processing payment services to many small businesses throughout the country.

3.      TMS does not use an automatic telephone dialing system or prerecorded voice calls to solicit potential businesses for inclusion in its card processing services and program.

DocuSign Envelope ID: A01EF81F-946F-4B1D-8FCF-85CDD368D221

4.      TMS engages independent contractors, referred to as sales representatives, who market the card processing services and programs of TMS on a non-exclusive basis. In order to do so, those sales representatives must, *inter alia*, be approved by TMS to market its card processing services and programs and, if approved by TMS, enter into a Sales Representative Agreement ("SRA") with TMS. Each approved sales representative is provided a unique agent profile number.

5.      Pursuant to the SRA, sales representatives are authorized to market TMS's card processing services and programs to businesses which engage in the sale of merchandise and/or services, and desire to honor card payments. Should a business meet TMS's eligibility criteria to be included in TMS's card processing services and programs and desire to be so included, sales representatives assist the business in completing a merchant application form and submit the completed form to TMS for its consideration.

6.      One such sales representative is Total Merchant Supplies, LLC ("Supplies"), which entered into a non-exclusive relationship with TMS on January 15, 2014, when it executed a SRA.

7.      TMS maintains a relationship with Supplies through the present, and Supplies has submitted to TMS merchant applications for inclusion in TMS's card processing services and programs as recently as March 2021.

8.      The unique agent profile number associated with Supplies is 38566.

9.      Supplies uses the email handle @totalmerchantsupplies.com.

10.     Another such sales representative is Triumph Merchant Solutions, LLC ("Triumph"), which entered into a non-exclusive relationship with TMS in November 2018, when it executed a Special Compensation Addendum for Sales Representation Agreement ("Addendum") that, *inter alia*, adopted and incorporated the terms of the SRA as amended by the Addendum.

11.     The Addendum substantively amended the SRA in the following ways: (a) the special revenue share program under which Triumph could be compensation; and (b) the duration of the SRA.

12.     All other terms of the SRA continued to apply to Triumph's relationship with TMS.

13.     The unique agent profile number associated with Triumph is 44884.

DocuSign Envelope ID: A01EF81F-946F-4B1D-8FCF-85CDB369D221

14.     Triumph uses the email handle @triumphmsp.com.

15.     It is TMS's understanding that certain principals of Supplies, but not all principals of Supplies, are also principals of Triumph.

16.     It is TMS's understanding that Supplies is an active California limited liability company that is separate and distinct from Triumph which is also an active California limited liability company.

17.     The sales representatives, including Triumph, are permitted to choose their own methods of marketing so long as those methods comply with the terms of the SRA.

18.     Pursuant to the SRA, sales representatives are only authorized to use those solicitation and marketing materials referencing TMS that are furnished by TMS to the sales representative or that have received TMS's prior written approval.

19.     TMS does not direct, encourage, or authorize its sales representatives, including Triumph, to telemarket using an ATDS or prerecorded voice.

20.     Triumph has not submitted any merchant applications to TMS from November 2018 through the present.

21.     Prior to June 2020, TMS provided certain high-producing sales representatives with access to potential business leads from an entity referred to as InfoFree. TMS terminated its relationship with InfoFree in June 2020.

22.     TMS did provide Supplies with access to potential business leads from InfoFree because Supplies was, at one-point, a high-producing sales representative.

23.     TMS did not provide Triumph with access to potential business leads from InfoFree because Triumph was not a high-producing sales representative. Triumph did not submit a single merchant application to TMS from November 2018 through the present.

I declare under the penalty of perjury under the laws of the Unites States of American that the foregoing is true and correct. Executed on May 10, 2021, in Troy, Michigan.

Darren McCaffrey

3