Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Alleged Classes*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOTAL MERCHANT SERVICES, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 3:19-cv-05711-EMC<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Hearing: June 10, 2021<br>Time: 1:30 p.m.<br>Judge: Hon. Edward M. Chen<br>Location: Courtroom 5, 17th Floor<br>Complaint Filed: September 11, 2019 |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iv

I.    INTRODUCTION ................................................................................1

II.   ARGUMENT ......................................................................................2

    A.    As A Preliminary Matter, TMS's Attempt To Distinguish Triumph From Total Merchant Supplies, LLC Is Not Supported By The Record—Though It Admittedly Highlights Some of the Common Issues Impacting Every Class Member. ...................................................................................2

    B.    Plaintiff Has Provided Sufficient Evidence To Establish Numerosity. .............4

    C.    TMS's Attacks On Commonality, Typicality, Predominance, And Superiority (Or Manageability) Are Based On A Faulty Premise—No Individualized Inquiries Will Be Necessary Because All Of The Calls Placed By Triumph Could Have Resulted In The Sale Of A TMS Product Or Service ...................6

        1.    TMS's claim that individualized inquiries are necessary to determine which products were pitched to each call recipient prematurely raises a merits issue and ultimately misunderstands TCPA liability. .............6

        2.    TMS's remaining attack on typicality is a red herring—regardless of the source of lead information, no evidence of consent exists...............9

        3.    TMS's opposition overlooks the numerous other common questions that predominate in this action. ...............................................10

    D.    Plaintiff And Its Counsel Will Continue To Adequately Represent The Class .................................................................................................11

    E.    Certification Pursuant To Rule 23(b)(2) Is Appropriate Here. ......................13

    F.    The Class Definition Is Not Speculative, And Certification Pursuant To Rule 23(b)(3) Is Appropriate ......................................................................15

III.  CONCLUSION ...................................................................................15

# TABLE OF AUTHORITIES

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583,

(N.D. Cal. May 5, 2017) ...................................................................................8, 9

*Abboud v. Agentra, LLC*, No. 3:19-CV-00120-X, 2020 WL 5526557

(N.D. Tex. Sept. 14, 2020) .......................................................................................6

*Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D. 544, 552 (N.D. Cal. 2016) ...............................5

*Blair v. CBE Grp., Inc.*, 309 F.R.D. 621 (S.D. Cal. 2015) ............................................................5

*Brown v. DirecTV, LLC*, 330 F.R.D. 260 (C.D. Cal. 2019)..........................................................8

*Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 7391299

(N.D. Cal. July 22, 2020) ..........................................................................................8

*Henderson v. Bank of New York Mellon*, 322 F.R.D. 432 (D. Mass. 2017) ...............................13

*Herrera v. LCS Fin. Services Corp.*, 274 F.R.D. 666 (N.D. Cal. 2011)......................................15

*In re Live Concert Antitrust Litig.*, 247 F.R.D. 98 (C.D. Cal. 2007)............................................7

*In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213 MMM JCX, 2011 WL 3505264

(C.D. Cal. Mar. 29, 2011) .......................................................................................12

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ...........................8, 10

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013) ...........................................6

*McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142 (S.D. Cal. 2019)...................................10

*Pavloff v. Cardinal Logistics Mgmt. Corp.*, No. CV 20-00363 PA (KKX), 2020 WL 6821072

(C.D. Cal. Oct. 7, 2020) ............................................................................................5

*Raffin v. Medicredit, Inc.*, No. CV154912GHKPJWX, 2017 WL 131745

(C.D. Cal. Jan. 3, 2017) ..........................................................................................14

*Ralston v. Mortg. Invs. Grp., Inc.*, No. 5:08-CV-00536-JF PSG, 2012 WL 629238

(N.D. Cal. Feb. 27, 2012)..........................................................................................5

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018)....................................................4

*Schmitt v. Younique LLC*, No. SACV171397JVSJDEX, 2019 WL 1431906

(C.D. Cal. Jan. 10, 2019) ........................................................................................13

*Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 4156364

(N.D. Cal. Sept. 5, 2008) ........................................................................................10

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016) ............................................15

*Williams Corp. v. Kaiser Sand & Gravel Co.*, 146 F.R.D. 185 (N.D. Cal. 1992) .........................12

*Wortman v. Air New Zealand*, 326 F.R.D. 549 (N.D. Cal. 2018) ....................................5

*Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ......14

**STATUTES, RULES, SECONDARY SOURCES**

Fed. R. Civ. P. 23, *et seq.* ..........................................................................................5

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Try as it may, Defendant Total Merchant Services, LLC's ("Defendant" or "TMS") cannot show that class certification is inappropriate here. TMS's primary argument, repeated throughout its brief, is its claim that it cannot be held vicariously liable for the actions of its marketer, Triumph Merchant Solutions, LLC ("Triumph"). Because Triumph placed calls on behalf of several merchant processing companies, so the theory goes, individualized inquiries are necessary to determine which company's products were pitched on each call. TMS claims this defeats commonality, typicality, predominance, and superiority.

Fortunately for the thousands of members of the proposed class, TMS's argument unravels. First, because TCPA liability attaches at the time a call is **<u>made</u>**, TMS's liability does not depend on the subsequent contents of each call. Further, TMS's argument prematurely attempts to raise a merits issue. At class certification, the question is whether TMS's liability can be resolved on a class wide basis using common evidence. As TMS's opposition confirms, Triumph's promotion of TMS's products and services did not vary in any substantive way with respect to any of the calls, and TMS's vicarious liability will be decided based on evidence common to all of the proposed class members.

TMS's back up arguments fare no better. TMS attacks numerosity on the supposed grounds that Plaintiff has not offered admissible evidence to identify the exact number of class members. TMS overlooks Triumph's calling records, and its argument misstates the burden at certification. At this stage, the Court may make a reasonable estimate as to the size of the class based on the available evidence, and Plaintiff has presented the Court with sufficient evidence to show that under any estimate, joinder would be impossible.

TMS also claims that Plaintiff is inadequate to serve as the class representative. In setting out this argument, TMS focuses on Plaintiff's designee's inability to recall with precision the details of telephone calls that occurred years ago while ignoring the fact that Plaintiff's testimony accurately recalled the substance of those calls and the litigation. TMS also faults Plaintiff for not

appearing personally at the mediation—where the parties' lawyers were set to negotiate the various intricacies of a class action settlement. Ultimately, and contrary to TMS's assertions, Plaintiff has vigorously prosecuted this action on behalf of the proposed Class that it seeks to represent.

TMS next asserts that certification under Rule 23(b)(2) would be improper because the primary relief sought in the litigation is monetary. This argument misunderstands hybrid class certification. Indeed, courts routinely certify classes for both injunctive relief pursuant to Rule 23(b)(2) and monetary relief pursuant to Rule 23(b)(3). This is sought here.

Finally, TMS claims that limiting the class to calls that "could" have resulted in the sale of a TMS product or service renders the definition speculative. This is untrue. The definition merely conforms to the evidence produced in the case. Indeed, as Triumph confirmed, all of the calls that it placed could have resulted in the sale of TMS's product or service. Thus, the class is comprised of all individuals who received a call from Triumph on their cellular telephone as these were all calls made on behalf of TMS.

As such, and as explained below, each of TMS's arguments against certification falls apart, and the Court should certify the proposed Class.

## II.    ARGUMENT

### A.    As A Preliminary Matter, TMS's Attempt To Distinguish Triumph From Total Merchant Supplies, LLC Is Not Supported By The Record—Though It Admittedly Highlights Some of the Common Issues Impacting Every Class Member.

Prior to setting out its argument against certification, TMS seeks to trick the Court into thinking that Triumph and Total Merchant Supplies, LLC ("TMSupplies") are actually separate, operational entities. According to TMS, TMSupplies is a "distinct entity" and also one of TMS's sales representatives. (Def. Opp. at 2.) TMS further claims that Triumph's designee, Jason Heil[1], "appears to be unaware that TMSupplies is an active California limited liability company which continues to transact business with TMS." (*Id.*)

---

[1] ███████████████████████████ (Triumph Agreement, Dkt. 74-8, pg. 18.)

TMS is mistaken. Triumph's designee confirmed that TMSupplies ceased operations in 2017 or 2018. (Dkt. 75-4, at 39:19-40:18.) At that time, Triumph "inherited" the dialing system and phone tree system from TMSupplies, along with its chairs, computers, cubicles, pens, and paper. (Triumph Depo. Tr., additional excerpts of which are attached hereto as Ex. A, at 59:10-60:2.) ███████████████████████████████████████████████████████████

███████████████████████████ (*See* Triumph Agreement, Dkt. 74-8, pg. 28.)

Unable to avoid this reality, TMS attempts to create distinctions where none exist. First, TMS claims that TMSupplies and Triumph have separate agreements with TMS. (*See* Declaration of Darren McCaffrey, attached as Exhibit A to Def. Opp. ("McCaffrey Decl.") ¶¶ 6-12.) Yet, TMS has been unable to produce these supposed separate agreements. Instead, TMS tries to invent separate agreements by claiming that the addendum between TMS and Triumph only "adopted and incorporated the terms" of the TMSupplies agreement. (*See id.* ¶ 10.) This is incorrect. ████████████████████████████████████████████████████████ (Triumph Agreement, Dkt. 74-8, pg. 28.)

Second, TMS claims that both TMSupplies and Triumph have unique agent profile numbers—38566 and 44884, respectively. (McCaffrey Decl. ¶¶ 8, 13.) For this reason, TMS claims that Triumph has not submitted any merchant applications with its account (*id.* ¶ 20), while TMSupplies has submitted applications as recently as March 2021 (*id.* ¶ 7). This is no defense: █████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████ (Triumph Agreement, Dkt. 74-8, pg. 28.) Triumph's designee also testified that both profile numbers are associated with Triumph. (Ex. A, at 45:17-46:7.)

Third, TMS asserts that it provided TMSupplies with InfoFree leads but did not do the same for Triumph. (*See* McCaffrey Decl. ¶¶ 21-23.) TMS thus insinuates that Triumph must have obtained the InfoFree leads on its own. This claim is quickly debunked by reviewing InfoFree's response to the subpoenas served by Plaintiff, which sought documents concerning InfoFree's relationship(s) with Triumph and TMS. (*See* Declaration of Patrick H. Peluso ("Peluso Decl.") ¶

3, attached hereto as Grp. Ex. B.) In response, InfoFree was unable to produce any standalone agreements with Triumph. (*Id.* ¶ 5.) Instead, InfoFree only possessed an agreement with TMS, in which TMS agreed to pay for its high producing sales representatives to obtain sales leads. (*Id.* ¶ 6; *see also* Dkt. 75-5.) One of the accounts paid for by TMS was associated with Triumph's phone number and was in the name of Chris Heil, one of Triumph's owners. (Peluso Decl. ¶ 7.) InfoFree also produced call records between itself and Chris Heil, in which Mr. Heil answers the phone as "Triumph Merchant Solutions." (*Id.* ¶ 8.) The evidence confirms that TMS purchased InfoFree leads for Triumph, not TMSupplies.

Ultimately, TMS is laying the groundwork to disclaim liability for Triumph's telemarketing activity at summary judgment and trial. In the process, however, TMS ignores both the facts of record as well the fact that the answers to these questions will be common across the entire class. Indeed, common evidence will be used to show whether: (1) TMS has separate agreements with both TMSupplies and Triumph, (2) the agent profile numbers 38566 and 44884 are both associated with Triumph, (3) TMS accepted the benefits of Triumph's calling activity by approving applications submitted through both agent profile numbers, and (4) TMS provided InfoFree leads to Triumph by providing an account to its owner, Chris Heil. All of these questions are subject to common proof and will be resolved within a single stroke.

### B.   Plaintiff Has Provided Sufficient Evidence To Establish Numerosity.

TMS's first attack against certification claims that Plaintiff has failed to establish numerosity. (Def. Opp. at 7-9.) TMS falls short. Notably, TMS doesn't actually assert that the class is not sufficiently numerous. Instead, TMS claims that Plaintiff has not presented the Court "with any material that will likely lead to admissible evidence to establish anyone other than Plaintiff received a telephone call from Triumph on their cellular telephone". (*Id.* at 9.) This, of course, misstates the evidentiary burden at class certification.

At certification, "a district court is not limited to considering only admissible evidence in evaluating whether Rule 23's requirements are met." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) (citing *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 612-

13 (8th Cir. 2011)). Rather, a court "may consider all material evidence submitted by the parties". *Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 627 (S.D. Cal. 2015) (citation omitted). Moreover, declining to consider evidence proffered at the certification stage on the basis of admissibility alone is an abuse of discretion. *Id.* at 1006. Rather, "an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Id.*

More to the point, the numerosity inquiry simply asks whether the class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The requirement may be met "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large." *Pavloff v. Cardinal Logistics Mgmt. Corp.*, No. CV 20-00363 PA (KKX), 2020 WL 6821072, at *3 (C.D. Cal. Oct. 7, 2020) (quoting *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 645 (C.D. Cal 2014)). A "reasonable estimate" based on the information at hand is sufficient for class certification. *See Wortman v. Air New Zealand*, 326 F.R.D. 549, 556 (N.D. Cal. 2018) ("The plaintiff does not need to allege a precise number of class members, but may make a reasonable estimate." (citation omitted)). Generally, "a class greater than forty often satisfies the requirement." *Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D. 544, 552 (N.D. Cal. 2016).

TMS fails to point to any evidence to suggest that the proposed class is insufficiently numerous. Indeed, Triumph's calling records reveal that it placed more than 684,501 telemarketing calls during the class period, including 56,979 calls to 37,220 individual cellular telephone owners. (Dkt. 75-1 ¶¶ 5-8.) And there is nothing improper about Plaintiff's reliance on its counsel's review of admissible evidence to support certification. *See, e.g., Ralston v. Mortg. Invs. Grp., Inc.*, No. 5:08-CV-00536-JF PSG, 2012 WL 629238, at *4 (N.D. Cal. Feb. 27, 2012) (permitting the use of an attorney's declaration regarding a review of documents central to the case at certification). At certification, the question is whether the class is so numerous that joinder is impractical, not whether every member has been identified with materials that may be admissible at trial. Plaintiff's evidence readily clears this hurdle. Ultimately, even if TMS takes issue with the methodology employed to identify individual class members, common sense still

1   dictates that the proposed class will easily surpass the 40-member threshold. At a later date, and

2   to the extent necessary, proving class membership can be further supported by class member

3   declarations or phone bills. *See Abboud v. Agentra, LLC*, No. 3:19-CV-00120-X, 2020 WL

4   5526557, at *4 (N.D. Tex. Sept. 14, 2020) ("potential class members could present phone bills, or

5   other forms of proof, showing that phone numbers used by Agentra called their phone.").

6         Because Triumph placed calls to tens of thousands of cellular telephone owners, the Court

7   should find that the proposed Class is sufficiently numerous.

8         **C.**    **TMS's Attacks On Commonality, Typicality, Predominance, And Superiority**
9                  **(Or Manageability) Are Based On A Faulty Premise—No Individualized**
                **Inquiries Will Be Necessary Because All Of The Calls Placed By Triumph**
10                  **Could Have Resulted In The Sale Of A TMS Product Or Service.**

11         For its argument-in-chief, TMS asserts that commonality (def. opp. at 10-11), typicality

12   (*id.* at 12-13), predominance (*id.* at 16-18), and superiority (or manageability) (*id.* at 18-19)

13   haven't been met because "the only way for the Court to determine whether a call was placed to

14   'promot[e] TMS' products or services,' as set forth in the putative class definition, is to engage in

15   an individual inquiry of each putative class member to determine the contents of the actual

16   telephone call placed by Triumph" (*id.* at 17). TMS also asserts that typicality cannot be met

17   because some of the class members contact information may have come from a different source.

18   (*Id.* at 12-13.) Both of these arguments fall apart.

19         **1.**    **TMS's claim that individualized inquiries are necessary to determine**
20                 **which products were pitched to each call recipient prematurely raises**
              **a merits issue and ultimately misunderstands TCPA liability.**

21         TMS's repeated assertion that there is no way to determine which calls were placed by

22   Triumph on behalf of TMS (as opposed to any of the other merchant processing companies)

23   misunderstands its liability under the TCPA and the fact that TMS's liability for Triumph's

24   actions will be proven using evidence common to all class members.

25         Under the TCPA, liability attaches at the time the call is ***made***, not when the caller pitches

26   a product after the call is answered. *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D.

27   Cal. 2013) (emphasis added). As Triumph's designee explained to TMS's counsel, all of the calls

28

were made for the purpose of soliciting sales of "credit card processing" services, including

TMS's services. Triumph's designee explained the calling process as follows:

> Q. A call will be placed by Triumph to a merchant?
>
> A. Correct.
>
> Q. I believe you indicated Triumph would identify itself as, quote, unquote, merchant services?
>
> A. Correct.
>
> Q. And Triumph would then inquire into the needs of the merchant? And by needs I'm referring to credit card processing needs of the merchant.
>
> A. Right, yeah.
>
> Q. In the course of that communication did Triumph determine which one of any of those five entities we discussed earlier could provide the most cost effective services to the merchant?
>
> A. Correct.

(Dkt. 75-4, at 101:16-102:5.) Hence, at the time the calls were placed, **all of the calls** could have

resulted in the sale of a TMS product or service. Triumph did not, as TMS suggests, place some

calls for the purposes selling products of another company and others to sell TMS's products.

Rather, all of the calls placed by Triumph solicited the sale of merchant processing systems

generally. That Triumph did not end up selling a TMS product or service on every call does not

mean that TMS wasn't promoted during or after the call. Indeed, Triumph's designee testified that

even after Triumph attempted to sell one of the merchant processor's products, if the processor

rejected the application, Triumph would then try to sell another processor's products, such as

TMS. (*Id.* at 102:25-103:7.) As such, individualized inquiries into the subject of each call are

unnecessary because all of the calls were made for the purpose of soliciting sales of TMS's

products and services, each could have resulted in a sale of TMS's products or services, and a

reasonable trier of fact could ultimately conclude they were made on behalf of TMS.

TMS also prematurely raises a merits question. At this stage, whether TMS can be held

vicariously liable for calls placed by Triumph isn't the question. Rather, what matters for class

certification is the ability to resolve such issues using common evidence. *In re Live Concert*

*Antitrust Litig.*, 247 F.R.D. 98, 144 (C.D. Cal. 2007) ("The operative question here is not whether

the plaintiffs can establish class-wide impact, but whether class-wide impact may be proven by evidence common to all class members." (collecting cases)). As explained in the original motion, because the vicarious liability inquiry turns on the conduct of the parties themselves, courts have repeatedly found the issue to be suitable for class wide adjudication. *See Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) ("Agency can be resolved on a class-wide basis."); *Brown v. DirecTV, LLC*, 330 F.R.D. 260, 274 (C.D. Cal. 2019) ("Defendant's vicarious liability for debt collectors' prerecorded calls without prior express consent does not require an individualized analysis."); *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 7391299, at *14 (N.D. Cal. July 22, 2020), *reconsideration denied*, No. 18-CV-05623-BLF, 2020 WL 5653153 (N.D. Cal. Sept. 23, 2020) ("Agency, therefore, can be resolved on a class-wide basis." (citation omitted)).

The *Alarm.com* case is instructive. In that case, the defendant argued that it could not be liable for the telemarketing calls placed by a third party because "not all of the calls" were made to solicit sales of its products and none of the calls mentioned the defendant by name. *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583, at *7 (N.D. Cal. May 5, 2017). In rejecting this argument, the court explained that "[t]he question at class certification is whether common evidence exists to answer the question, not whether plaintiffs will ultimately prevail." *Id.* The plaintiffs sought to use common evidence, including scripts and the contract between the defendant and the third party, to show the calls were made on behalf of Alarm.com. *Id.* This was sufficient. As the court explained, "Alarm.com has made no showing that the extent to which Alliance promoted Alarm.com varied significantly from call-to-call requiring an individualized inquiry." *Id.* Ultimately, that a particular call may not have resulted in the sale of the defendant's products and services "is circumstantial evidence and certainty not dispositive." *Id.*

The same holds true here. Plaintiff seeks to hold TMS's liable for all of the calls placed by Triumph, not just some of them. To support the vicarious liability inquiry, ███████████ ████████████████████████████████████████████████████████████.

1  (Triumph Agreement, Dkt. 74-8.) ████████████████████████████████████

2  ████████████████████████████ (*id.* at pg. 3), ████████████████████████

3  ████████████████ (Dkt. 74-6, at 26:8-28:12; 46:12-47:12), and the leads that TMS purchased

4  for Triumph (*see* Dkt. 75-1 ¶¶ 14-16; *see also* InfoFree Invoices, copies of which are attached as

5  Exhibit 1 to Dkt. 75-1). Additionally, Plaintiff will offer Triumph's testimony regarding its

6  calling practices. All of this evidence is common to every class member.

7      And again reminiscent of *Alarm.com*, TMS has not produced any individualized evidence

8  with respect to the calls. Instead, it hangs its hat on the sole fact that Triumph solicited sales for a

9  handful of companies. But just as in *Alarm.com,* TMS is unable to show that Triumph's

10  promotion of TMS's products and services varied in any significant way from call-to-call so as

11  to require individualized inquiries. As Triumph's designee confirmed, it did not. Moreover, to

12  accept this argument would effectively provide class wide immunity to any company that

13  permitted its agents to work on behalf of multiple principals. This would gut "on behalf of"

14  liability under the TCPA.

15      Because the vicarious liability issue will be determined on the merits using common

16  evidence, the Court should reject this attack on class certification.

17      **2.   TMS's remaining attack on typicality is a red herring—regardless of
       the source of lead information, no evidence of consent exists.**

18

19      TMS also claims that Plaintiff's claims are atypical because "Triumph is unable to

20  differentiate between numbers entered into its Vicidial via an uploaded list obtained through

21  InfoFree or via an individual entry input upon the request of putative class members." (Def. Opp.

22  at 13.) According to TMS, this creates additional differences with respect to which members may

23  have "consented to receive calls." (*Id.*) But this argument merely speculates to the existence of

24  some evidence of consent. No evidence of consent exists.

25      Indeed, Triumph's designee testified that during the class period it only obtained leads

26  from one source, InfoFree. (Dkt. 75-4 at 68:20-24.) Triumph later testified that, at times, it would

27  manually enter a number into its dialing system. (Ex. A, at 104:13-105:6.) Nevertheless, this

28

doesn't create an individualized issue relating to consent. Regardless of the source, neither TMS nor Triumph has been able to produce **any evidence of consent**. Put succinctly, "[i]n the absence of any evidence of consent by the defendant, consent is a common issue with a common answer." *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 174 (S.D. Cal. 2019) (citing *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1305 (D. Nev. 2014)).

Given that no evidence of consent exists, Plaintiff's claims are typical.

### 3. TMS's opposition overlooks the numerous other common questions that predominate in this action.

As an additional point, TMS's hyperfocus on its claim that individualized inquiries into the content of the calls is necessary overlooks the numerous other common issues that cut to the heart of this case.

"When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (citing 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)). Hence, it is not necessary that every issue be common for every class member. Rather, "federal courts have recognized that individual issues will likely be present during class actions but that such issues should not prevent class certification so long as they do not override the underlying common question." *Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 4156364, at *10 (N.D. Cal. Sept. 5, 2008) (citing *Chun-Hoon v. McKee Foods Corp.*, No. C-05-620 VRW, 2006 WL 3093764, at *5 (N.D. Cal. Oct. 31, 2006)).

TMS's opposition fails to address in any meaningful way the numerous other common issues in this matter, including whether: (1) the dialing equipment utilized to place the telemarketing calls constitutes an ATDS, (2) Triumph or Defendant failed to obtain consent from any of the class members, and (3) TMS acted willfully. All of these issues will be proven using

common evidence without the need for individualized questions. Moreover, all of these issues are central to the case and will drive the resolution of the action.

As such, the Court should find that common issues predominate and certify the Class.

### D.   Plaintiff And Its Counsel Will Continue To Adequately Represent The Class.

TMS next claims that Plaintiff is not an adequate representative because its "conduct reveals it has little motivation to actively participate in this case." (Def. Opp. at 14.) This is so, according to TMS, because Plaintiff does not "have knowledge of the factual accuracy or inaccuracy of allegations asserted in the Complaint," "cannot explain why it did not name Triumph as a defendant in this litigation," and did not attend the mediation scheduled in this case (*id.*). TMS's attempt to diminish Plaintiff's commitment to the instant litigation is based on couple of cherry-picked claims that seriously distort Plaintiff's involvement.[2]

Contrary to TMS's claim, Plaintiff has a demonstrated commitment to the instant case. To date, Abante provided responses to interrogatories and requests for production and produced 480 pages of responsive documents, including emails, TMS marketing material, communications with TMS and its sales representatives, and telephone bills reflecting the calls that Plaintiff received.[3] Further, Plaintiff testified to reviewing the discovery responses prior to verifying each, and

---

[2] Though TMS faults Plaintiff for its purported lack of diligence in this action, the reality is that to date, and despite a zealous prosecution, TMS for its part has produced only 50 responsive documents and has issued zero subpoenas. Plaintiff produced hundreds of pages of responsive documents and effectuated more than ten subpoenas—including filing two subpoena enforcement actions (*see Abante Rooter and Plumbing, Inc. v. Triumph Merchant Solutions, LLC*, Case No. 3:20-cv-00754-JAH-BLM (S.D. Cal. 2020); *Abante Rooter and Plumbing, Inc. v. Poundteam Incorporated*, Case No. 8:20-mc-00110-JSM-SPF (M.D. Fla. 2020))—which ultimately resulted in procuring the documents and testimony necessary to prosecute this action on a class basis.

[3] In its opposition, TMS repeatedly claims that Plaintiff "shockingly" destroyed relevant evidence by taking notes of the calls that were not kept. (Def. Opp. at 1, 6, 12.) This grossly exaggerates the testimony. In his deposition, Abante's designee testified to using handwritten notes as a reminder for business purposes, such as customer requests. (Dkt. 76-1, Ex. D, at 83:9-84:10.) When he would receive a telemarketing call, he testified that he would also write down the number and type of call to later relay to his attorney. (*Id.* 76:12-19.) In the regular course of business, Abante disposes these business notes after the client's matters are completed, typically every 30 days. (*Id.* 76:12-19; 83:9-84:10.) This is hardly the nefarious act that TMS attempts to make it out to be.

reviewing the complaint prior to filing. (Abante Depo. Tr., excerpts of which are attached hereto as Exhibit C, at 184:14-21.) On March 3, 2021, Abante's corporate representative provided testimony at a full day deposition. Abante's representative will also attend and testify at any potential trial in this matter. This level of commitment is consistent which what courts typically expect of a class representative. *See In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213 MMM JCX, 2011 WL 3505264, at *15 (C.D. Cal. Mar. 29, 2011) (finding the plaintiffs to be adequate representatives because "the class representatives participated actively in discovery, met with counsel, sat for deposition, and reviewed the complaint before it was filed.").

In opposition, TMS claims that "Plaintiff does not have an independent recollection of the specific dates or subject matter concerning telephone calls alleged in its Complaint." (Def. Opp. at 6.) TMS's grievance appears to be that Plaintiff's designee could not recite with precision the date and content of every call that he received over a five-year period. But this level of knowledge isn't required for a class representative. *See Williams Corp. v. Kaiser Sand & Gravel Co.*, 146 F.R.D. 185, 187–88 (N.D. Cal. 1992) (finding adequacy when the plaintiff "may be, as Defendants contend, unfamiliar with some of the details of the case" because "Mr. Williams understands the nature of the allegations brought against Defendants, and is able to describe the basic elements of price fixing and of bid-rigging.").

Nevertheless, Plaintiff's designee did accurately testify to the substance of the allegations. Plaintiff's designee recalled beginning to receive calls relating to TMS between 2015 and 2017. (Ex. C, at 29:1-13.) He also testified that he reached out, through counsel, to TMS in 2017 and received a promise to no longer receive calls from TMS. (*Id.*) Plaintiff further testified regarding his knowledge of calls placed relating to TMS in 2018 and 2019 (the years at issue). (*Id.* at 82:1-21.) When asked whether the 2018 call was a prerecorded call, Plaintiff's designee corrected TMS's counsel's mistaken assumption and clarified that it was a call placed using an ATDS. (*Id.* at 82:17-21.) This is consistent with the complaint's allegations. (*See* Dkt. 1 ¶¶ 25-29.) In short, Plaintiff has knowledge of the allegations asserted in the Complaint.

Second, TMS claims that Plaintiff "cannot explain why it did not name Triumph as a

defendant in this litigation." (Def. Opp. at 14.) But this claim is quickly rebuked by reviewing the deposition transcript. Indeed, Abante's designee explained that it filed the lawsuit against TMS because all of the information received from Triumph related to TMS and the calls were placed "on behalf of TMS." (Ex. C, at 217:6-218:5.) Whether TMS is satisfied with the response is beside the point: it strains credibility to suggest, as TMS does, that Abante didn't provide a response at all.

Third, TMS's claim that Plaintiff's absence at the mediation sessions in this case renders it inadequate is also unsupported. Plaintiff was available to communicate its approval/rejection to any potential settlement. Tellingly, Defendant points to no authority to suggest that failing to attend a mediation session somehow renders Plaintiff inadequate. This is likely because courts have reached the opposite conclusion. *See Schmitt v. Younique LLC*, No. SACV171397JVSJDEX, 2019 WL 1431906, at *6 (C.D. Cal. Jan. 10, 2019) (finding plaintiffs to be adequate representatives despite defendant's claims that "they did not attend mediation"); *Henderson v. Bank of New York Mellon*, 322 F.R.D. 432, 435 (D. Mass. 2017) (rejecting the defendant's claim that plaintiff "was inadequate because she failed to attend or call in to the parties' mediation.").

In short, Plaintiff has demonstrated a commitment to this case and has no conflicts with the Class. As such, the Court should find that Plaintiff will fairly and adequately represent the interests of the Class.

**E.     Certification Pursuant To Rule 23(b)(2) Is Appropriate Here.**

TMS also claims that certification pursuant to Rule 23(b)(2) is improper because "the primary relief sought is not declaratory or injunctive, but rather monetary." (Def. Opp. at 15.) TMS further asserts that Plaintiff cannot show that "TMS acted or refused to act on grounds that apply uniformly to all putative class members" because "this case involves the policy or practice of Triumph" rather than TMS. (*Id.* at 15-16.) TMS misunderstands both hybrid certification and the relief sought in this case.

First, while Rule 23(b)(2) certification ***alone*** is inappropriate where "monetary relief is

not incidental to the injunctive or declaratory relief", courts "may properly certify Plaintiffs claim for injunctive relief under (b)(2) and their claim for monetary relief under (b)(3)." *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293, at *17 (N.D. Cal. Mar. 24, 2017) (collecting cases); *see also Raffin v. Medicredit, Inc.*, No. CV154912GHKPJWX, 2017 WL 131745, at *10 (C.D. Cal. Jan. 3, 2017) ("But Medicredit fails to consider that we can certify Raffin's claim for injunctive relief under (b)(2) and her claim for monetary relief under (b)(3)." (collecting cases)). This is precisely the case here. Plaintiff is not seeking to certify a Rule 23(b)(2) for the purposes of obtaining monetary damages.[4] Rather, Plaintiff is seeking injunctive relief pursuant to Rule 23(b)(2) to require TMS to implement stricter policies and procedures to ensure that its sales representatives comply with the TCPA. On the other hand, Plaintiff also seeks certification pursuant to Rule 23(b)(3) for monetary damages.

Additionally, the injunctive relief sought does not concern Triumph's policies and practices, as TMS has suggested (def. opp. at 16). Instead, Plaintiff seeks injunctive relief to put an end to TMS's uniform practices of hiring thousands of sales representatives and taking no steps to ensure that the representatives comply with the TCPA. Indeed, ███████████████

████████████████████████████████████████████████████████████████

███████████ (Dkt. 74-6, at 69:11- 21.) ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Dkt. 74-6, at 62:24-25; 69:22-25.) As a result, TMS's sales representatives are free to engage in reckless telemarketing absent any oversight, from which TMS stands to reap the benefits. For this reason, Plaintiff seeks an injunction requiring Defendant to implement stricter oversight, policies, and procedures.

As such, Plaintiff respectfully requests that the Court issue an Order certifying the proposed Class for injunctive relief pursuant to Rule 23(b)(2).

---

[4] Seeking monetary relief under Rule 23(b)(2) is generally inappropriate given the need for notice and the opportunity for class members to opt-out in classes where claims for monetary damages may be released—both of which are required under Rule 23(b)(3).

PLAINTIFF'S REPLY ISO
MOTION FOR CLASS CERTIFICATION

14

**F.      The Class Definition Is Not Speculative, And Certification Pursuant To Rule 23(b)(3) Is Appropriate.**

As a final point, TMS also claims that certification under Rule 23(b)(3) would be improper because "the class definition is speculative on its face as the term 'could' simply indicated a possibility." (Def. Opp. at 19.) TMS is again incorrect.

The proposed class definition simply conforms to the evidence produced to date. As previously explained, all of the calls placed by Triumph were placed for the purpose of soliciting the sale of TMS's products and services. There will be no need, as TMS claims, "to scrutinize the content of each telephone call placed by Triumph" to determine which could have resulted in the sale of a TMS product or service. (Def. Opp. at 19.) Rather, the proposed class encompasses all of the calls that Triumph placed to cellular telephones during the class period. Whether a class member received a call on their cellular telephone, can be readily ascertained by reference to objective criteria, Triumph's call records. *See Herrera v. LCS Fin. Services Corp.*, 274 F.R.D. 666, 672-73 (N.D. Cal. 2011) ("An identifiable class exists if its members can be ascertained by reference to objective criteria."). Any remaining questions regarding manageability can be addressed through class member declarations or telephone bills.

Accordingly, the proposed class definition is not subjective, and the Court should certify the proposed Class pursuant to Rule 23(b)(3) as well.

**III.    CONCLUSION**

Plaintiff's proposed Class definition is sufficiently tailored to meet the requirements of Fed. R. Civ. P. 23, and common issues of fact and law predominate over any supposed individual issues. As such, the Court should grant class certification and award such additional relief as the Court deems necessary, reasonable, and just.

Respectfully submitted,

Dated: May 21, 2021

**ABANTE ROOTER AND PLUMBING, INC.,** individually and on behalf of all others similarly situated,

By:  /s/ Patrick H. Peluso

Richard T. Drury (SBN: 163559)
Rebecca Davis (SBN 271662)
Lozeau Drury LLP
1939 Harrison St., Suite 150
Oakland, CA 94607
Tel: 510-836-4200
Richard@lozeaudrury.com
Rebecca@lozeaudrury.com

Steven L. Woodrow (*pro hac vice*)
Patrick H. Peluso (*pro hac vice*)
Taylor T. Smith (*pro hac vice*)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 90210
Tel: 720-213-0675
swoodrow@woodrwopeluso.com
ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was

served upon counsel of record by filing such papers via the Court's ECF system on May 21, 2021.

<u>/s/ Patrick H. Peluso  </u>