# Exhibit C

```
 1                  UNITED STATES DISTRICT COURT
 2                 NORTHERN DISTRICT OF CALIFORNIA
 3                       _____
 4      ABANTE ROOTER AND PLUMBING,  )
        INC., a California           )
 5      corporation, individually    )
        and on behalf of all others  )
 6      similarly situated,          )No. 3:19-CV-05711
                                     )
 7               Plaintiff,          )
                                     )
 8           vs.                     )
                                     )
 9      TOTAL MERCHANT SERVICES,     )
        LLC, a Delaware limited      )
10      liability company,           )
                                     )
11               Defendant.          )
                                     )
12
13
14                 REMOTE VIDEOTAPED DEPOSITION
15                              OF
16                       FRED HEIDARPOUR
17                  Wednesday, March 3rd, 2021
18                      Orinda, California
19
20
21
22
23
24
25      Reported by:  Janie E. Wilkins, CSR No. 12497

                                                         Page 1
```

```
 1                      APPEARANCES
 2
 3
 4
 5    For Plaintiff:        Woodrow & Peluso, LLC
                            BY MR. TAYLOR SMITH
 6                          Attorney at Law
                            3900 East Mexico Avenue
 7                          Suite 300
                            Denver, Colorado 80210
 8                          (720) 213-0675
                            tsmith@woodrowpeluso.com
 9
10
11    For Defendant Total   Greenspoon Marder, LLP
      Merchant Services:    BY MR. LAWREN A. ZANN
12                          Attorney at Law
                            200 East Broward Boulevard
13                          Site 1800
                            Fort Lauderdale, Florida 33301
14                          (954) 527-2427
                            lawren.zann@gmlaw.com
15
16
17
18
19
20    The Videographer:     Terri Perkins
21
22
23
24
25

                                                   Page 2
```

```
 1                        I  N  D  E  X
 2
 3     EXAMINATION BY                                        PAGE
 4     MR. ZANN                                                 6
 5     MR. SMITH                                              288
 6     MR. ZANN (Further)                                     290
 7
 8
 9                        EXHIBIT INDEX
10     Defendant's Exhibits
11     Exhibit 1    Notice of Deposition                      33
12     Exhibit 2    Complaint                                 72
13     Exhibit 3    E-mails from Aleks Meza                   94
14     Exhibit 4    E-mail from Leutrim Ismajli               96
15     Exhibit 5    E-mail Communication                      99
16     Exhibit 6    Plaintiff's Objection and Response       116
                    to Defendant's Interrogatories
17
       Exhibit 7    Plaintiff's Supplemental Objection       118
18                  and Responses to Defendant's
                    Interrogatories
19
       Exhibit 8    Plaintiff's Second Supplemental          120
20                  Objections and Responses
21     Exhibit 9    Printout of Website                      194
22     Exhibit 10   Phone bill for 10/20/18                  229
23     Exhibit 11   Phone bill for 4/19/19                   229
24     Exhibit 12   Document entitled AT&T Your              229
                    detailed usage
25
```

```
 1
                    I   N   D   E   X (Continued)
 2
 3
                          EXHIBIT INDEX
 4    Defendant's Exhibits
 5    Exhibit 13   Document with AT&T Cycle Date      229
                   of 10/20/18
 6
      Exhibit 14   Retainer Agreement                 277
 7
 8
 9
10
11
12
13    WITNESS INSTRUCTED NOT TO ANSWER:
14                                            Page 26, Line 3
15
16
17
18
19
20
21
22
23
24
25
                                                      Page 4
```

| | | |
|---|---|---|
| 1 | Q. And you had used the date 2017. Is there a | 09:27:51 |
| 2 | reason why you used a time frame of 2015 to 2017 when | 09:27:54 |
| 3 | discussing Andrew? | 09:27:58 |
| 4 | A. I started to get a call, tons of calls, and | 09:27:59 |
| 5 | that's what I'm saying is -- that's what I believe it | 09:28:03 |
| 6 | was in 2017 that we thought that we resolved the | 09:28:05 |
| 7 | issue by not calling us. And we got a -- I believe | 09:28:10 |
| 8 | we got an e-mail from counsel, from TMS that it -- it | 09:28:13 |
| 9 | looked like it's a promissory; that they're not going | 09:28:17 |
| 10 | to call you again, and we instructed them. All of us | 09:28:21 |
| 11 | thought that's what is said; that we thought that we | 09:28:25 |
| 12 | put it to bed, that's the end of it, but, | 09:28:28 |
| 13 | unfortunately, it didn't happen. | 09:28:31 |
| 14 | Q. So just using that as a point of reference, | 09:28:33 |
| 15 | that time period in approximately 2017 when -- to use | 09:28:36 |
| 16 | your term -- you put the issue to bed, from that time | 09:28:41 |
| 17 | forward, have you communicated with Andrew concerning | 09:28:45 |
| 18 | TMS? | 09:28:47 |
| 19 | A. I don't recall. | 09:28:48 |
| 20 | Q. Okay. As it relates to -- well, let me ask | 09:28:51 |
| 21 | you this: Has Andrew represented Abante in any of | 09:28:56 |
| 22 | its legal proceedings? | 09:29:00 |
| 23 | A. I don't think so. | 09:29:02 |
| 24 | Q. So as you sit here today, you don't | 09:29:05 |
| 25 | recall -- Abante does not recall retaining your son, | 09:29:08 |

Fred Heidarpour - March 3, 2021

| | | |
|---|---|---|
| 1 | Q.  Fast-forward two years to March 22nd, 2019, | 10:39:08 |
| 2 | you state you receive a call that you believe was | 10:39:13 |
| 3 | directly placed by TMS; correct? | 10:39:16 |
| 4 | A.  Actually, the original was in 2018; was | 10:39:21 |
| 5 | not 2019. | 10:39:24 |
| 6 | Q.  Okay.  But your testimony when I had asked | 10:39:25 |
| 7 | you originally if you believe TMS directly called | 10:39:29 |
| 8 | you, you stated "yes."  I asked you what's the basis | 10:39:32 |
| 9 | for that belief.  You provided two bases.  A | 10:39:35 |
| 10 | prerecorded call as well as an e-mail.  And then I | 10:39:38 |
| 11 | stated, "When did the prerecorded call occur?"  And | 10:39:42 |
| 12 | you told me, "After looking at your complaint that | 10:39:45 |
| 13 | you believe it was March 22nd, 2019"; correct? | 10:39:47 |
| 14 | A.  That is correct. | 10:39:51 |
| 15 | Q.  And that's where we are.  And that's why | 10:39:52 |
| 16 | we're focused on March 22nd, 2019. | 10:39:54 |
| 17 | Now you've just stated something occurred | 10:39:57 |
| 18 | back in 2018.  Was that a prerecorded call that | 10:39:59 |
| 19 | occurred in 2018? | 10:40:02 |
| 20 | A.  No, sir.  That was the ATDS call that | 10:40:04 |
| 21 | happened on 2018. | 10:40:08 |
| 22 | Q.  We'll get to that one soon.  But staying | 10:40:09 |
| 23 | focused on the task at hand -- we're focused on the | 10:40:11 |
| 24 | prerecorded telephone call that you just stated.  And | 10:40:14 |
| 25 | you stated that occurred on March 22nd, 2019.  Then | 10:40:16 |

Page 82

1    A.   Again, when I -- when I'm not available, she     13:55:55

2    writes it probably on my notes.  I don't know.        13:55:59

3         Q.   And I appreciate that when you're not       13:56:02

4    available that she steps in, but my question to you   13:56:04

5    is do you recall discussing notes or the telephone    13:56:08

6    call that preceded the sending of this e-mail with    13:56:11

7    your wife?                                            13:56:13

8         A.   It must be.  I don't know.  That's -- we    13:56:14

9    are 24/7 together.  How can I remember the            13:56:17

10   conversation that we had three years ago?             13:56:21

11        Q.   I don't know if you do or don't.  That's why 13:56:23

12   I'm asking you the question.                          13:56:25

13        A.   I don't know.                               13:56:27

14        Q.   Okay.  So you don't know if you communicated 13:56:27

15   with her.  Did you ever review the complaint prior to 13:56:29

16   it being filed?                                       13:56:32

17        A.   Yes.                                        13:56:34

18        Q.   And did you review the interrogatories prior 13:56:35

19   to signing the verification pages we discussed        13:56:38

20   earlier?                                              13:56:41

21        A.   Yes.                                        13:56:42

22        Q.   So at any point in time in reviewing the    13:56:43

23   complaint or the interrogatory responses as it        13:56:45

24   relates to the alleged call that occurred             13:56:48

25   on June 24th, 2019, did you communicate with your     13:56:51

Page 184

| | | |
|---|---|---|
| 1 | of stopping the telemarketers, in this case you would | 14:35:09 |
| 2 | agree that you did not sue Triumph Merchant | 14:35:14 |
| 3 | Solutions, LLC; correct? | 14:35:20 |
| 4 | A.  Whatever the complaints -- if the complaints | 14:35:20 |
| 5 | is not, it's not. | 14:35:23 |
| 6 | Q.  We can pull up the complaint if we want | 14:35:24 |
| 7 | because that's Exhibit 2.  But I would assume you | 14:35:27 |
| 8 | know who you sued.  Do you know who you sued in this | 14:35:29 |
| 9 | litigation? | 14:35:32 |
| 10 | A.  Yes.  Total Merchant Services. | 14:35:33 |
| 11 | Q.  So you would agree that you did not sue | 14:35:35 |
| 12 | Triumph Merchant Solutions, LLC; correct? | 14:35:37 |
| 13 | A.  Because every -- every information that we | 14:35:40 |
| 14 | got from Triumph was under the Total Merchant | 14:35:42 |
| 15 | Services. | 14:35:47 |
| 16 | Q.  I understand that.  You've testified to that | 14:35:47 |
| 17 | earlier.  But my question to you is just having you | 14:35:49 |
| 18 | confirm, what I think is obvious, which is you did | 14:35:51 |
| 19 | not sue Triumph Merchant Solutions, LLC; correct? | 14:35:53 |
| 20 | A.  Right. | 14:35:57 |
| 21 | Q.  The actual entity who placed the telephone | 14:35:57 |
| 22 | call; correct? | 14:36:00 |
| 23 | A.  On behalf of TMS, yes. | 14:36:01 |
| 24 | Q.  And neither did you sue Christopher Judy; | 14:36:03 |
| 25 | correct? | 14:36:06 |

| | | |
|---|---|---|
| 1 | A. Right. | 14:36:08 |
| 2 | Q. So the actual telemarketers who placed the | 14:36:08 |
| 3 | call, for whatever reason, you elected not to sue; | 14:36:12 |
| 4 | correct? | 14:36:15 |
| 5 | A. They were working on behalf of TMS. | 14:36:15 |
| 6 | Q. Well, that's what you're alleging, but -- | 14:36:18 |
| 7 | my -- | 14:36:21 |
| 8 | A. That's what the document shows. | 14:36:21 |
| 9 | Q. My question to you, though, is just having | 14:36:23 |
| 10 | you confirm that you chose, for whatever reason, not | 14:36:27 |
| 11 | to sue the actual entities that placed the telephone | 14:36:31 |
| 12 | call; correct? | 14:36:35 |
| 13 | A. Right. Correct. Because they were working | 14:36:36 |
| 14 | on behalf of TMS. | 14:36:38 |
| 15 | Q. So when it comes to stopping the | 14:36:41 |
| 16 | telemarketers, you're not actually taking action | 14:36:42 |
| 17 | against the people calling you; right? | 14:36:46 |
| 18 | A. No, Lawren, that's -- that's not a true | 14:36:51 |
| 19 | statement. The people that are calling are working | 14:36:53 |
| 20 | on behalf of Total Merchant Services. | 14:36:56 |
| 21 | Q. So by suing Total Merchant Services, do you | 14:36:59 |
| 22 | think that is a detriment to Triumph from placing | 14:37:03 |
| 23 | telephone calls in the future? | 14:37:07 |
| 24 | A. Definitely because according to Todd | 14:37:09 |
| 25 | Anderson, he said that he's going to tell the Total | 14:37:13 |

Page 218